JAMES HOCHBERG (HI Bar No. 3686)
ATTORNEY AT LAW, LLLC
700 Bishop St., Ste. 2100, Honolulu, HI 96813
Telephone: (808) 256-7382
E-mail: jim@jameshochberglaw.com

C.D. MICHEL*
SEAN A. BRADY*
MATTHEW D. CUBEIRO*
MICHEL & ASSOCIATES, P.C.
180 E. Ocean Blvd., Ste. 200, Long Beach, CA 90802
Telephone: (562) 216-4444
E-mail: cmichel@michellawyers.com
*(APPLICATION FOR ADMISSION *pro hac vice forthcoming*)
*Counsel for Plaintiffs*

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| RONALD G. LIVINGSTON; MICHAEL J. BOTELLO; KITIYA M. SHIROMA; JACOB STEWART; and HAWAII RIFLE ASSOCIATION,<br><br>   *Plaintiffs*,<br><br>  v.<br><br>SUSAN BALLARD, in her official capacity as Police Chief of the City & County of Honolulu; CITY & COUNTY OF HONOLULU; and CLARE E. CONNORS, in her official capacity as Attorney General of Hawaii,<br><br>   *Defendants*. | Case No.<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

## <u>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF</u>

1

## PRELIMINARY STATEMENT

1.      Plaintiffs are responsible, law-abiding Hawaii residents who seek to protect themselves against violent crime by carrying a handgun, either concealed or openly, outside their homes. They satisfy all applicable background, training, and safety requirements. But because Hawaii law allows a carry license to be issued only in "urgen[t]" or "exceptional" cases, and because defendants do not consider the general need for self-defense to be urgent or exceptional, defendants denied carry licenses to plaintiffs. H.R.S. §134-9(a). Plaintiffs therefore cannot lawfully carry a handgun outside their homes in any manner. And they are not alone. Hawaii *has not granted a single carry license to an ordinary citizen* since 2013.

2.      Hawaii's de facto ban on all manner of carry by ordinary citizens both implicates and violates the Second Amendment. Hawaii's law implicates the Second Amendment because the right to "bear arms" for the "core lawful purpose of self-defense" necessarily extends beyond the home. *District of Columbia v. Heller*, 554 U.S. 570, 630-31 (2008). And Hawaii's law violates the Second Amendment because a de facto ban on beyond-the-home carry is not remotely (let alone reasonably) tailored to fit the objective of promoting public safety. Whatever difficult line-drawing problems may arise from other carry restrictions, banning *all* carry by *all* ordinary citizens cannot survive any level of constitutional scrutiny. *See Wrenn v. District of Columbia*, 864 F.3d 650 (D.C. Cir. 2017).

2

3.　　A three-judge panel of the Ninth Circuit recently adopted this very view and, in doing so, held Hawaii's practice of denying the ability to openly carry firearms in public to everyone other than persons engaged in protection of life and property violates the Second Amendment. *Young v. Hawaii*, 896 F.3d 1044 (9th Cir. 2018) (rehearing en banc granted). While the *Young* opinion has since been vacated due to the Ninth Circuit ordering the matter to be reheard en banc, plaintiffs here put to the test defendants State of Hawaii's and County of Honolulu's primary basis for seeking en banc review in *Young*—that Hawaii law does not limit issuance of open carry licenses to only private security officers. And, unlike Mr. Young, plaintiffs here do challenge the additional limitation in section 134-9 providing that an open carry license may only be granted "[w]here the urgency or the need has been sufficiently indicated." *Id*. at 1049-50 n.2. Accordingly, plaintiffs' challenge raises issues with section 134-9 beyond those addressed in *Young*.

4.　　Plaintiffs' requested relief nevertheless remains narrow.  They do not challenge Hawaii's myriad restrictions on the purchase, sale, and possession of firearms. They do not seek to carry in sensitive places, such as government buildings. They do not seek to carry dangerous and unusual weapons. They seek only to carry a handgun—the "quintessential self-defense weapon," *Heller*, 554 U.S. at 629—in some manner, *either* concealed *or* openly beyond their homes. Defendants may accommodate that right in many different ways. But denying all manner of carry to

3

all ordinary, law-abiding citizens is one policy choice the Constitution takes "off the table." *Id.* at 636.

## PARTIES

5.    Plaintiff Ronald Livingston is an adult resident of Honolulu, Hawaii, and United States citizen who presently seeks to carry—and if authorized, immediately would carry—a handgun for self-defense. Plaintiff Livingston satisfies all applicable age, citizenship, safety, training, mental health, criminal record, and other background requirements to possess a handgun and obtain a carry license. Plaintiff Livingston applied to the City and County of Honolulu Police Department seeking both an open and/or concealed carry license. On February 11, 2019, Chief of Police Susan Ballard formally denied Plaintiff Livingston's application, stating that it "does not sufficiently meet the immediacy, urgency, or need necessary for protection of life and property" as required under Hawaii law for the issuance of a license to carry an open/concealed firearm.

6.    Plaintiff Michael J. Botello is an adult resident of Honolulu, Hawaii, and United States citizen who presently seeks to carry—and if authorized, immediately would carry—a handgun for self-defense. Plaintiff Botello satisfies all applicable age, citizenship, safety, training, mental health, criminal record, and other background requirements to possess a handgun and obtain a carry license. Plaintiff Botello applied to the City and County of Honolulu Police Department seeking both

4

an open and/or concealed carry license. On January 4, 2019, Chief of Police Susan Ballard formally denied Plaintiff Botello's application, stating that it "does not sufficiently meet the immediacy, urgency, or need necessary for protection of life and property" as required under Hawaii law for the issuance of a license to carry an open/concealed firearm.

7. Plaintiff Kitiya M. Shiroma is an adult resident of Honolulu, Hawaii, and United States citizen who presently seeks to carry—and if authorized, immediately would carry—a handgun for self-defense. Plaintiff Shiroma satisfies all applicable age, citizenship, safety, training, mental health, criminal record, and other background requirements to possess a handgun and obtain a carry license. Plaintiff Shiroma applied to the City and County of Honolulu Police Department seeking both an open and/or concealed carry license. On December 7, 2018, Chief of Police Susan Ballard formally denied Plaintiff Shiroma's application, stating that it "does not sufficiently meet the immediacy, urgency, or need necessary for protection of life and property" as required under Hawaii law for the issuance of a license to carry an open/concealed firearm.

8. Plaintiff Jacob Stewart is an adult resident of Honolulu, Hawaii, and United States citizen who presently seeks to carry—and if authorized, immediately would carry—a handgun for self-defense. Plaintiff Stewart satisfies all applicable age, citizenship, safety, training, mental health, criminal record, and other

background requirements to possess a handgun and obtain a carry license. Plaintiff Stewart applied to the City and County of Honolulu Police Department seeking both an open and/or concealed carry license. On December 12, 2018, Chief of Police Susan Ballard formally denied Plaintiff Stewart's application, stating that it "does not sufficiently meet the immediacy, urgency, or need necessary for protection of life and property" as required under Hawaii law for the issuance of a license to carry an open/concealed firearm.

9. Plaintiff Hawaii Rifle Association ("HRA") is a membership organization with the stated mission "[t]o protect [members'] Second Amendment Right to Keep and Bear Arms, and protect Hawaii's hunting and shooting traditions." (Hawaii Rifle Ass'n, *About HRA*, http://bit.ly/2v7Iou3.) HRA fulfills its mission in numerous ways, including by promoting gun safety courses and hunter education; sponsoring shooting competitions; advocating for Second Amendment rights through administrative, legislative, and judicial channels; and publishing a newsletter to keep members informed about relevant legal developments. The Association includes numerous adult members who meet all applicable age, citizenship, safety, training, mental health, criminal record, and other background requirements to possess a handgun and obtain a carry license. These members presently seek to carry—and if authorized, immediately would carry—handguns for self-defense. In the same manner as each of the individual plaintiffs in this

matter, some members of HRA have applied for both open and concealed carry licenses with the Honolulu Police Department. Despite meeting all applicable eligibility criteria, all have likewise been denied a license.

10.    Defendant Susan Ballard is sued in her official capacity as police chief of the City and County of Honolulu. In her capacity as police chief, Defendant Ballard is responsible for enforcing Hawaii firearms laws and has authority to issue concealed-carry and open-carry licenses under H.R.S. §134-9(a).

11.    Defendant City and County of Honolulu is a political subdivision of the State of Hawaii. Through its police chief, Defendant City and County of Honolulu enforces Hawaii firearms laws and has authority to issue concealed-carry and open-carry licenses under H.R.S. §134-9(a).

12.    Defendant Clare E. Connors is sued in her official capacity as Attorney General of Hawaii. Defendant Connors is responsible for enforcing the laws of Hawaii, including H.R.S. §134-9(a), and issues detailed annual reports on application of that provision. In addition, in her capacity as Attorney General, Defendant Connors could criminally prosecute plaintiffs for carrying a handgun beyond the home without a carry license. *See* H.R.S. §§134-9(c), 134-25(b), 134-26.

## JURISDICTION AND VENUE

13.    This action seeks declaratory, injunctive, and other relief pursuant to 28 U.S.C. §§2201 and 2202 and 42 U.S.C. §§1983 and 1988.

14. This Court has subject-matter jurisdiction over plaintiffs' federal constitutional claims pursuant to 28 U.S.C. §§1331 and 1343(a)(3).

15. Venue is proper pursuant to 28 U.S.C. §1391(b)(2).

16. There is an active, justiciable controversy between the parties over whether defendants' denial of plaintiffs' applications for concealed-carry and open-carry licenses violates the Second Amendment.

17. Declaratory relief will resolve this controversy and eliminate the burden imposed on plaintiffs' Second Amendment rights.

18. A preliminary injunction against defendants preventing them from enforcing the challenged provisions of H.R.S. §134-9(a) will shield plaintiffs' Second Amendment rights from ongoing harm while this litigation is pending.

19. A permanent injunction against defendants preventing them from enforcing the challenged provisions of H.R.S. §134-9(a) will protect plaintiffs' rights prospectively after final resolution of this matter.

## FACTUAL ALLEGATIONS

### A.   Constitutional Background

20. The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.

21. In *District of Columbia v. Heller*, the Supreme Court held that the Second Amendment confers an "individual right to possess and carry weapons in case of confrontation," not a collective right to be exercised only by those in the militia. 554 U.S. at 592. The Court explained that the "core lawful purpose" of the Second Amendment is "self-defense," and that the handgun is "the quintessential self-defense weapon." *Id.* at 629-30.

22. In *McDonald v. City of Chicago*, 561 U.S. 742 (2010), the Supreme Court held that the Second Amendment's protection of the "right to keep and bear arms for the purpose of self-defense ... is fully applicable to the States" through the Fourteenth Amendment. *Id.* at 750. As a result, states and municipalities may not simply "enact any gun control law that they deem to be reasonable." *Id.* at 783 (plurality opinion).

23. *Heller* and *McDonald* did not expressly decide whether the Second Amendment applies beyond the home. But as virtually every court to consider the question has recognized, the right to bear arms for self-defense recognized in *Heller* and *McDonald* necessarily "implies a right to carry a loaded gun outside the home" because the need for self-defense is "not limited to the home." *Moore v. Madigan*, 702 F.3d 933, 936 (7th Cir. 2012); *see also Wrenn*, 864 F.3d at 657-64.

24. Indeed, the Supreme Court has at least implicitly rejected the suggestion that the Second Amendment is confined to the home by unanimously

9

vacating a state court opinion that held the Second Amendment inapplicable to a stun gun possessed by a woman *in a public parking lot*. *Caetano v. Massachusetts*, 136 S. Ct. 1027, 1027-28 (2016); *see also id.* at 1029 (Alito, J., concurring).

25.     On July 24, 2018, a three-judge panel of the Ninth Circuit confirmed that the Second Amendment extends beyond the home and, in doing so, held Hawaii's practice of denying the ability to openly carry firearms in public to everyone other than persons engaged in protection of life and property violated the Second Amendment. *Young v. State of Hawaii*, 896 F.3d 1044 (9th Cir. 2018) (rehearing en banc granted). In its ruling, the 9th Circuit noted that counsel for Hawaii acknowledged the states restrictive practice, stating to the court that "no one other than a security guard—or someone similarly employed—had ever been issued an open carry license." *Id.* at 1070. Because Mr. Young did not raise the issue, however, the 9th Circuit did not analyze the constitutionality of section 134-9's restriction that carry licenses can only issue "[w]here the urgency or the need has been sufficiently indicated." *Id.* at 1049-50 n.2. The *Young* opinion has since been vacated upon the Ninth Circuit ordering the matter to be reheard en banc. *Young v. Hawaii*, 915 F.3d 681 (9th Cir. 2019) (ordering case reheard "en banc").

26.     The only Ninth Circuit decision other than *Young* to squarely address the question of the Second Amendment's scope beyond the home likewise concluded that the Second Amendment does indeed extend beyond the home. *Peruta v. Cty. of*

*San Diego*, 742 F.3d 1144, 1150-67 (9th Cir. 2014), *vacated on other grounds*, 824 F.3d 919 (9th Cir. 2016) (en banc). And, based on that decision, the Ninth Circuit vacated a district court decision that concluded that the same Hawaii laws that Plaintiffs challenge here do not implicate protected Second Amendment activity. *Baker v. Kealoha*, 679 F. App'x 625, 626 (9th Cir. 2017).

### B.   Hawaii's Carry Laws

27.   Hawaii law generally permits handgun possession in a registered owner's place of "business, residence, or sojourn [a place of temporary stay or overnight accommodation]." H.R.S. §134-25(a).

28.   Hawaii law also permits transportation of a handgun—unloaded and in an enclosed container—to a place of repair, target range, licensed dealer's place of business, firearms show or exhibit, certain hunting or training place, or police station. *Id.*

29.   To carry a loaded handgun outside the home or place of business for self-defense—whether concealed or openly—Hawaii law generally requires a license issued by a county chief of police. H.R.S. §§134-9(a), 134-9(c). Certain individuals are exempted from the license requirement, but ordinary, law-abiding citizens are not. *See id.* §134-11 (exempting certain state and county law enforcement officers, members of the military while performing their duties, state employees with specified duties, and out-of-state police officers on assignment).

30.     If an individual carries a handgun in public outside the scope of these limited exceptions without obtaining a carry license, he is guilty of a Class B felony, H.R.S. §134-25(b), which is punishable by a prison term of up to 10 years, *id.* §706-660(1)(a). The same penalty applies to individuals who transport a loaded handgun on a public highway without a valid a carry license. *Id.* §134-26.

31.     Accordingly, an ordinary, law-abiding Hawaii resident seeking to lawfully carry a handgun outside the home or place of business for self-defense must obtain a license.

32.     County police chiefs "may" issue two kinds of carry licenses: concealed-carry licenses and open-carry licenses. H.R.S. §134-9(a).

33.     A county police chief "may" grant a *concealed-carry* license to "an applicant who is a citizen of the United States of the age of twenty-one years or more" only in "an exceptional case, when an applicant shows reason to fear injury to the applicant's person or property." H.R.S. §134-9(a).

34.     In addition, a county police chief "shall adopt procedures to require that any person granted a license to carry a concealed weapon on the person shall … [b]e qualified to use the firearm in a safe manner[,] … [a]ppear to be a suitable person to be so licensed[,] … [n]ot be prohibited under section 134-7 from the ownership or possession of a firearm; and … [n]ot have been adjudged insane or not appear to be mentally deranged." H.R.S. §134-9(b).

35. A county police chief "may" grant an *open-carry* license to "an applicant of good moral character who is a citizen of the United States of the age of twenty-one years or more" and "is engaged in the protection of life and property," "[w]here the urgency or the need has been sufficiently indicated" and the applicant is not disqualified under H.R.S. §134-7. H.R.S. §134-9(a). In turn, H.R.S. §134-7 prohibits firearms possession by, among others, fugitives from justice; people under indictment or convicted of certain crimes; people being treated for drug or alcohol dependence; people acquitted of crimes on the grounds of mental disease, disorder, or defect; people diagnosed with certain behavioral, emotional, or mental disorders; and people subject to restraining orders or other court orders under most circumstances.

36. Unless renewed, a carry "license shall expire one year from the date of issue." H.R.S. §134-9(a).

37. Upon information and belief, neither Hawaii law nor county police chiefs or other law enforcement officials (including defendants) publicly define the requirements for obtaining concealed carry licenses in further detail. They do not, for example, provide any formal guidance on what constitutes "an exceptional case, when an applicant shows reason to fear injury to the applicant's person or property" to obtain a concealed-carry license. *Id.*

13

38.     Upon information and belief, neither Hawaii law nor county police chiefs elaborate on the meaning of "engaged in the protection of life and property" or explain when "the urgency or the need has been sufficiently indicated" to obtain an open-carry license. *Id.* The former Hawaii Attorney General Russel Suzuki, however, authored a formal legal opinion following the three-judge panel decision in *Young*, confirming that section 134-9 does not limit open carry licenses to private security officers.[1] Former Attorney General Suzuki's opinion concludes that Hawaii law "authorizes the issuance of unconcealed-carry licenses to any qualified individual who demonstrates a sufficient 'urgency' or 'need' to carry a firearm and is 'engaged in the protection of life and property.' "[2]

39.     In petitioning for en banc review both Defendants State of Hawaii and County of Honolulu primarily pointed to what they contend was the panel's "fundamental misunderstanding of Hawaii law by construing section 134-9 as authorizing "open-carry licenses only for 'security guards' and other individuals whose job duties entail the protection of life and property." Pet. Reh'g En Banc at *8, *Young v. Hawaii*, No. 12-17808 (9th Cir. 2018). In making that argument, they

---

[1] State of Haw., Dep't of the Att'y Gen., Opinion Letter No. 18-1, *Availability of Unconcealed-Carry Licenses* (Sept. 11, 2018), attached hereto as Exhibit A, and also available online at https://ag.hawaii.gov/wp-content/uploads/2018/09/AG-Opinion-No.-18-1.pdf.

[2] *Id.* at *2.

primarily rely on former Attorney General Suzuki's opinion that open carry licenses are not limited to security guards but can lawfully be issued to any qualified individual.

40.    Reports compiled by the Hawaii Attorney General indicate, however, that in practice county police chiefs grant carry licenses *only* to employees of private security firms, while denying essentially all applications from ordinary citizens.

41.    For example, in 2016, the Attorney General reported that 225 of 229 carry license applications from "employees of private security firms" were granted, while all applications from "private citizens" were denied "by the respective county's chief of police." See Exhibit B attached here (Hawaii Dep't of the Attorney General, *Firearm Registrations in Hawaii, 2016*) at 9.

42.    Likewise, in 2015, the Attorney General reported that 221 of 229 carry license applications from "employees of private security firms" were granted, while all applications from "private citizens" were denied "by the respective county's chief of police." See Exhibit C attached here (Hawaii Dep't of the Attorney General, *Firearm Registrations in Hawaii, 2015*) at 9.

43.    In 2014, 218 of 220 applications by "employees of private security firms" were granted, while all applications from "private citizens" were denied at the discretion of the respective chief of police." See Exhibit D attached here (Hawaii Dep't of the Attorney General, *Firearm Registrations in Hawaii, 2014*) at 9.

44.     In 2013, 205 of 207 applications by "employees of private security firms" were granted, while nearly all applications by "private citizens" were denied, with the police chief in Kauai granting one carry license to a private citizen. See Exhibit E attached here (Hawaii Dep't of the Attorney General, *Firearm Registrations in Hawaii, 2013*) at 11.

45.     In 2012, 168 of 170 applications by "employees of private security firms" were granted, while all applications by "private citizens" were denied "at the discretion of the respective" chief of police. See Exhibit F attached here (Hawaii Dep't of the Attorney General, *Firearm Registrations in Hawaii, 2012*) at 11.

46.     The statistics compiled by the Attorney General—and the reports' express distinctions between "employees of private security firms" and "private citizens"—demonstrate that it has been functionally impossible for a private citizen in Hawaii to obtain a concealed-carry or open-carry license. Despite former Attorney General Suzuki's opinion, on information and belief, this still seems to be the case.

**C.     Plaintiffs' Attempts to Exercise Their Second Amendment Right**

47.     All individual plaintiffs seek to carry a firearm, either openly or concealed. Each plaintiff completed Hawaii's designated "Application for a License to Carry a Concealed Firearm" form. In addition, in light of former Attorney General Suzuki's opinion letter, each plaintiff inquired with the Honolulu Police Department as to what application form, if any, should be used when applying for an open carry

license.  With the exception of plaintiff Ronald Livingston, who was provided an application form that contemplated both concealed and open carry licenses, each plaintiff was informed by the Honolulu Police Department that no form existed for applications for open carry licenses. Each plaintiff therefore prepared a cover letter to accompany their form application. These cover letters asked the Honolulu Police Department to treat the application as requesting either a concealed or open carry license. The cover letters specifically referenced Hawaii laws regarding open carry licenses and former Attorney General Suzuki's opinion letter clarifying the requirements for such licenses.

48.    To demonstrate that they satisfy all background requirements necessary for the issuance of a carry license, each of plaintiff's applications also included two passport photos; a copy of their U.S. Passport or other citizenship documentation; a document detailing the reasons each plaintiff was seeking a license to carry; and proof of completion of a hunter education or firearms safety training course, as required under Hawaii law and Honolulu Police Department policies.

49.    All plaintiffs were denied licenses to carry in any manner.

50.    In sum, under current law, Plaintiffs, members of HRA, and ordinary citizens in Hawaii are effectively banned from carrying handguns outside their homes or places of business for self-defense in any manner, whether concealed or openly under H.R.S. §134-9(a).

**COUNT ONE**
**(SECOND AND FOURTEENTH AMENDMENTS, 42 U.S.C. §1983)**

51.    Plaintiffs hereby re-allege and incorporate by reference the allegations of each of the preceding paragraphs.

52.    Plaintiffs lawfully own handguns, and, if licensed to do so, would carry those handguns in non-sensitive public locations for the core lawful purpose of self-defense in any manner allowed, either concealed or openly.

53.    Plaintiffs are not exempted from Hawaii's firearms restrictions, and are therefore prohibited from carrying handguns in public for self-defense without obtaining a carry license.

54.    Plaintiffs meet all applicable age, citizenship, safety, mental health, criminal record, and other background requirements for a carry license.

55.    Plaintiff Livingston completed and submitted the form provided to him by the Honolulu Police Department titled "Application for a License to Carry an Open/Concealed Firearm" and prepared an accompanying cover letter asking the Honolulu Police Department to treat his application as requesting either a concealed or open carry license. The cover letter specifically referenced Hawaii laws regarding open carry licenses and former Attorney General Suzuki's opinion letter clarifying the requirements for such licenses.

18

56.   All other individual plaintiffs completed and submitted the form provided to them by the Honolulu Police Department titled "Application for a License to Carry a Concealed Firearm" and prepared an accompanying cover letter asking the Honolulu Police Department to treat their applications as requesting either a concealed or open carry license. The cover letters specifically referenced Hawaii laws regarding open carry licenses and former Attorney General Suzuki's opinion letter clarifying the requirements for such licenses.

57.   Defendants or their agents denied plaintiffs' applications for a license to carry in any manner.

58.   The Second Amendment guarantees ordinary, law-abiding citizens like plaintiffs the right to bear arms for the core lawful purpose of self-defense, which includes the right to carry a handgun for self-defense outside the home in some manner, either concealed or openly.

59.   Defendants' denial of plaintiffs' requests for carry licenses prevents plaintiffs from lawfully carrying handguns for self-defense outside the home in any manner, either concealed or openly.

60.   Defendants' denial of plaintiffs' requests for carry license violates their Second Amendment rights.

61.    Preventing plaintiffs and other ordinary law-abiding citizens from exercising their Second Amendment right to carry handguns outside the home for self-defense inflicts irreparable harm on them and diminishes the public interest.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs respectfully request that this Court:

A.    Enter judgment in their favor;

B.    Declare that the Second Amendment protects the right of ordinary, law-abiding citizens to carry a handgun outside the home for self-defense in some manner, either concealed or openly;

C.    Declare that the provisions of H.R.S. §134-9(a) that prevent ordinary, law-abiding citizens from carrying handguns outside the home or place of business for self-defense in some manner, either concealed or openly, are unconstitutional facially and as applied to plaintiffs;

D.    Enter a preliminary injunction preventing defendants and their agents from enforcing §134-9(a) to prevent ordinary, law-abiding citizens from carrying handguns outside the home or place of business for self-defense in some manner, either concealed or openly, during the pendency of this litigation;

E.    Enter a permanent injunction enjoining defendants and their agents from enforcing §134-9(a) to prevent ordinary, law-abiding citizens from carrying

20

handguns outside the home or place of business for self-defense in some manner, either concealed or openly;

     F.    Award plaintiffs their costs of suit, including attorney fees and costs, pursuant to 42 U.S.C. §1988; and

     G.    Grant any other and further relief that the Court deems just and proper.

Dated: March 28, 2019

Respectfully submitted,

JAMES HOCHBERG (HI Bar No. 3686)
ATTORNEY AT LAW, LLLC
E-mail: jim@jameshochberglaw.com

C.D. Michel (pro hac vice)
Sean A. Brady (pro hac vice)
Matthew D. Cubeiro (pro hac vice)
MICHEL & ASSOCIATES, P.C.
E-mail: cmichel@michellawyers.com