JAMES HOCHBERG (HI Bar No. 3686)
ATTORNEY AT LAW, LLLC
700 Bishop St., Ste. 2100
Honolulu, HI 96813
Telephone: (808) 256-7382
E-mail: jim@jameshochberglaw.com

C.D. MICHEL*
SEAN A. BRADY*
MATTHEW D. CUBEIRO*
MICHEL & ASSOCIATES, P.C.
180 E. Ocean Blvd., Ste. 200
Long Beach, CA 90802
Telephone: (562) 216-4444
E-mail: cmichel@michellawyers.com
*(ADMITTED *pro hac vice*)

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| RONALD G. LIVINGSTON, et al.,<br><br>    *Plaintiffs*,<br><br>  v.<br><br>ARTHUR J. LOGAN, in his official capacity as Police Chief of the City & County of Honolulu, et al.,<br><br>    *Defendants*. | Case No. 1:19-cv-00157-JMS-RT<br><br>**FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES** |

1

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

### PRELIMINARY STATEMENT

1.      Plaintiffs are responsible, law-abiding Hawaii residents who seek to protect themselves against violent crime by carrying a handgun, either concealed or openly, outside their homes. Plaintiffs have not failed any applicable background, training, or safety requirements. But because Hawaii law allows a carry license to be issued only in "urgen[t]" or "exceptional" cases, and because defendants do not consider the general need for self-defense to be urgent or exceptional, defendants denied carry licenses to plaintiffs. H.R.S. §134-9(a). Plaintiffs therefore cannot lawfully carry a handgun outside their homes in any manner. And they are not alone. Hawaii *has not granted a single carry license to an ordinary citizen* since 2013.

2.      Hawaii's de facto ban on all manner of carry by ordinary citizens both implicates and violates the Second Amendment. Hawaii's law implicates the Second Amendment because "the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." *N.Y. State Rifle & Pistol Association v. Bruen*, 597 U.S. at __, 142 S. Ct. 2111, 2122 (2022). Whatever difficult line-drawing problems may arise from other carry restrictions, in light of *Bruen*, banning ordinary citizens like Plaintiffs from carrying in public at all cannot survive constitutional scrutiny.

3.      Plaintiffs' requested relief is narrow.  They do not challenge Hawaii's myriad restrictions on the purchase, sale, and possession of firearms. They do not seek to carry in traditionally sensitive places, such as certain government buildings. They do not seek to carry dangerous and unusual weapons. They seek only to carry a handgun—the "quintessential self-defense weapon," *Heller*, 554 U.S. at 629—in some manner, *either* concealed *or* openly beyond their homes. Defendants may accommodate that right in many different ways. But denying all manner of carry to ordinary, law-abiding citizens like Plaintiffs unless they prove to a government official's subjective satisfaction that they have "urgen[t]" or "exceptional" reason to do so is one policy choice that the Constitution takes "off the table." *Id.* at 636.

## PARTIES

4.      Plaintiff Ronald Livingston is an adult resident of Honolulu, Hawaii, and United States citizen who presently seeks to carry—and if authorized, immediately would carry—a handgun for self-defense. Plaintiff Livingston satisfies all applicable age, citizenship, safety, training, mental health, criminal record, and other background requirements to possess a handgun and obtain a carry license. Plaintiff Livingston applied to the City and County of Honolulu Police Department seeking both an open and/or concealed carry license. On February 11, 2019, Chief of Police Susan Ballard formally denied Plaintiff Livingston's application, stating that it "does not sufficiently meet the immediacy, urgency, or need necessary for

protection of life and property" as required under Hawaii law for the issuance of a license to carry an open/concealed firearm.

5.     Plaintiff Michael J. Botello is an adult resident of Honolulu, Hawaii, and United States citizen who presently seeks to carry—and if authorized, immediately would carry—a handgun for self-defense. Plaintiff Botello satisfies all applicable age, citizenship, safety, training, mental health, criminal record, and other background requirements to possess a handgun and obtain a carry license. Plaintiff Botello applied to the City and County of Honolulu Police Department seeking both an open and/or concealed carry license. On January 4, 2019, Chief of Police Susan Ballard formally denied Plaintiff Botello's application, stating that it "does not sufficiently meet the immediacy, urgency, or need necessary for protection of life and property" as required under Hawaii law for the issuance of a license to carry an open/concealed firearm.

6.     Plaintiff Kitiya M. Shiroma is an adult resident of Honolulu, Hawaii, and United States citizen who presently seeks to carry—and if authorized, immediately would carry—a handgun for self-defense. Plaintiff Shiroma satisfies all applicable age, citizenship, safety, training, mental health, criminal record, and other background requirements to possess a handgun and obtain a carry license. Plaintiff Shiroma applied to the City and County of Honolulu Police Department seeking both an open and/or concealed carry license. On December 7, 2018, Chief of Police Susan

Ballard formally denied Plaintiff Shiroma's application, stating that it "does not sufficiently meet the immediacy, urgency, or need necessary for protection of life and property" as required under Hawaii law for the issuance of a license to carry an open/concealed firearm.

7.     Plaintiff Jacob Stewart is an adult resident of Honolulu, Hawaii, and United States citizen who presently seeks to carry—and if authorized, immediately would carry—a handgun for self-defense. Plaintiff Stewart satisfies all applicable age, citizenship, safety, training, mental health, criminal record, and other background requirements to possess a handgun and obtain a carry license. Plaintiff Stewart applied to the City and County of Honolulu Police Department seeking both an open and/or concealed carry license. On December 12, 2018, Chief of Police Susan Ballard formally denied Plaintiff Stewart's application, stating that it "does not sufficiently meet the immediacy, urgency, or need necessary for protection of life and property" as required under Hawaii law for the issuance of a license to carry an open/concealed firearm.

8.     Plaintiff Hawaii Rifle Association ("HRA") is a membership organization with the stated mission "[t]o protect [members'] Second Amendment Right to Keep and Bear Arms, and protect Hawaii's hunting and shooting traditions." (Hawaii Rifle Ass'n, *About HRA*, http://bit.ly/2v7Iou3.) HRA fulfills its mission in numerous ways, including by promoting gun safety courses and hunter education;

sponsoring shooting competitions; advocating for Second Amendment rights through administrative, legislative, and judicial channels; and publishing a newsletter to keep members informed about relevant legal developments. The Association includes numerous adult members who meet all applicable age, citizenship, safety, training, mental health, criminal record, and other background requirements to possess a handgun and obtain a carry license. These members presently seek to carry—and if authorized, immediately would carry—handguns for self-defense. In the same manner as each of the individual plaintiffs in this matter, some members of HRA have applied for both open and concealed carry licenses with the Honolulu Police Department. Despite meeting all applicable eligibility criteria, all have likewise been denied a license.

9.      Defendant Arthur J. Logan is sued in his official capacity as police chief of the City and County of Honolulu. In his capacity as police chief, Defendant Logan is responsible for enforcing Hawaii firearms laws and has authority to issue concealed-carry and open-carry licenses under H.R.S. §134-9(a).

10.      Defendant City and County of Honolulu is a political subdivision of the State of Hawaii. Through its police chief, Defendant City and County of Honolulu enforces Hawaii firearms laws and has authority to issue concealed-carry and open-carry licenses under H.R.S. §134-9(a).

11.     Defendant Holly T. Shikada is sued in her official capacity as Attorney General of Hawaii. Defendant Shikada is responsible for enforcing the laws of Hawaii, including H.R.S. §134-9(a), and issues detailed annual reports on application of that provision. In addition, in her capacity as Attorney General, Defendant Shikada could criminally prosecute plaintiffs for carrying a handgun beyond the home without a carry license. *See* H.R.S. §§134-9(c), 134-25(b), 134-26.

## JURISDICTION AND VENUE

12.     This action seeks declaratory, injunctive, and other relief pursuant to 28 U.S.C. §§2201 and 2202 and 42 U.S.C. §§1983 and 1988.

13.     This Court has subject-matter jurisdiction over plaintiffs' federal constitutional claims pursuant to 28 U.S.C. §§1331 and 1343(a)(3).

14.     Venue is proper pursuant to 28 U.S.C. §1391(b)(2).

15.     There is an active, justiciable controversy between the parties over whether defendants' denial of plaintiffs' applications for concealed-carry and open-carry licenses violates the Second Amendment.

16.     Declaratory relief will resolve this controversy and eliminate the burden imposed on plaintiffs' Second Amendment rights.

17.     A preliminary injunction against defendants preventing them from enforcing the challenged provisions of H.R.S. §134-9(a) will shield plaintiffs' Second Amendment rights from ongoing harm while this litigation is pending.

18.    A permanent injunction against defendants preventing them from enforcing the challenged provisions of H.R.S. §134-9(a) will protect plaintiffs' rights prospectively after final resolution of this matter.

19.    An award of money damages for the unconstitutional deprivation of Plaintiffs' rights is appropriate pursuant to 42 U.S.C. 1983.

## FACTUAL ALLEGATIONS

### A.    Constitutional Background

20.    The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.

21.    In *District of Columbia v. Heller*, the Supreme Court held that the Second Amendment confers an "individual right to possess and carry weapons in case of confrontation," not a collective right to be exercised only by those in the militia. 554 U.S. at 592. The Court explained that the "core lawful purpose" of the Second Amendment is "self-defense," and that the handgun is "the quintessential self-defense weapon." *Id.* at 629-30.

22.    In *McDonald v. City of Chicago*, 561 U.S. 742 (2010), the Supreme Court held that the Second Amendment's protection of the "right to keep and bear arms for the purpose of self-defense … is fully applicable to the States" through the Fourteenth Amendment. *Id.* at 750. As a result, states and municipalities may not

simply "enact any gun control law that they deem to be reasonable." *Id.* at 783 (plurality opinion).

23.    Most recently, the Supreme Court confirmed and clarified *Heller*'s historical approach to analyzing the Second Amendment's scope:

> We reiterate that the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command".

*N.Y. State Rifle & Pistol Association v. Bruen*, 597 U.S. at __, 142 S. Ct. 2111, 2126 (2022) ("*Bruen*").

24.    In so holding, the Court explained that *Heller* had "necessarily rejected intermediate scrutiny" and was, indeed, a "rejection of means end scrutiny" altogether for analyzing the Second Amendment claims. *Id*. at 2129.

25.    In applying the correct test, the *Bruen* Court confirmed "that the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." *Id*. at 2122.

26.    To be sure, the Supreme Court has noted that the carrying of arms may be restricted in certain "sensitive places." But the Court has also cautioned that "the historical record yields relatively few 18th- and 19th-century 'sensitive places' where weapons were altogether prohibited . . . ." *Id*. at 2133. So far, the Court has

only identified schools and certain government buildings, including "legislative assemblies, polling places, and courthouses . . ." as being such "sensitive places." *Ibid*. Further, the Court cautioned that "expanding the category of 'sensitive places' simply to all places of public congregation that are not isolated from law enforcement defines the category of 'sensitive places' far too broadly…[it] would in effect exempt cities from the Second Amendment and would eviscerate the general right to publicly carry arms for self-defense." *Id*. at 2134.

27.    The Second and Fourteenth Amendments thus guarantee to all law-abiding, competent adults the right to carry firearms for self-defense in all public areas that have *not* historically been considered "sensitive places" or that are analogous to such places.

28.    The Supreme Court has not expressly established the universe of "sensitive places" where the right can be restricted. Beyond schools and certain government buildings, *Bruen*, 142 S. Ct at 2133, the Court has instructed courts to look to history in determining whether particular areas were considered "sensitive places" at either the time of our Nation's founding or the adoption of the Fourteenth Amendment. *Id*. at 2135-36. While it noted that there may be "new and analogous sensitive places" to those historically considered such, the Court also noted that the term could not be so broad as to "include all 'places where people typically congregate. . . .'" *Id.* at 2133 (citation omitted).

29.     While the *Bruen* Court  cautioned that nothing in its opinion "should be interpreted to suggest the unconstitutionality of the 43 States' 'shall-issue' licensing regimes, under which 'a general desire for self-defense is sufficient to obtain a [permit],'" acknowledging that "any permitting scheme can be put toward abusive ends," the Court expressly did "not rule out constitutional challenges to shall-issue regimes where, for example, lengthy wait times in processing license applications or exorbitant fees deny ordinary citizens their right to public carry." *Id*. at 2138.

**B.     Hawaii's Carry Laws**

30.     Hawaii law generally permits handgun possession in a registered owner's place of "business, residence, or sojourn [a place of temporary stay or overnight accommodation]." H.R.S. §134-25(a).

31.     Hawaii law also permits transportation of a handgun—unloaded and in an enclosed container—to a place of repair, target range, licensed dealer's place of business, firearms show or exhibit, certain hunting or training place, or police station. *Id.*

32.     To carry a loaded handgun outside the home or place of business for self-defense—whether concealed or openly—Hawaii law generally requires a license issued by a county chief of police. H.R.S. §§134-9(a), 134-9(c). Certain individuals are exempted from the license requirement, but ordinary, law-abiding citizens are not. *See id.* §134-11 (exempting certain state and county law

11

enforcement officers, members of the military while performing their duties, state employees with specified duties, and out-of-state police officers on assignment).

33.    If an individual carries a handgun in public outside the scope of these limited exceptions without obtaining a carry license, he is guilty of a Class B felony, H.R.S. §134-25(b), which is punishable by a prison term of up to 10 years, *id.* §706-660(1)(a). The same penalty applies to individuals who transport a loaded handgun on a public highway without a valid a carry license. *Id.* §134-26.

34.    Accordingly, an ordinary, law-abiding Hawaii resident seeking to lawfully carry a handgun outside the home or place of business for self-defense must obtain a license.

35.    County police chiefs "may" issue two kinds of carry licenses: concealed-carry licenses and open-carry licenses. H.R.S. §134-9(a).

36.    A county police chief "may" grant a *concealed-carry* license to "an applicant who is a citizen of the United States of the age of twenty-one years or more" only in "an exceptional case, when an applicant shows reason to fear injury to the applicant's person or property." H.R.S. §134-9(a).

37.    In addition, a county police chief "shall adopt procedures to require that any person granted a license to carry a concealed weapon on the person shall … [b]e qualified to use the firearm in a safe manner[,] … [a]ppear to be a suitable person to be so licensed[,] … [n]ot be prohibited under section 134-7 from the ownership or

possession of a firearm; and … [n]ot have been adjudged insane or not appear to be mentally deranged." H.R.S. §134-9(b).

38.     A county police chief "may" grant an *open-carry* license to "an applicant of good moral character who is a citizen of the United States of the age of twenty-one years or more" and "is engaged in the protection of life and property," "[w]here the urgency or the need has been sufficiently indicated" and the applicant is not disqualified under H.R.S. §134-7. H.R.S. §134-9(a). In turn, H.R.S. §134-7 prohibits firearms possession by, among others, fugitives from justice; people under indictment or convicted of certain crimes; people being treated for drug or alcohol dependence; people acquitted of crimes on the grounds of mental disease, disorder, or defect; people diagnosed with certain behavioral, emotional, or mental disorders; and people subject to restraining orders or other court orders under most circumstances.

39.     Unless renewed, a carry "license shall expire one year from the date of issue." H.R.S. §134-9(a).

40.     Upon information and belief, neither Hawaii law nor county police chiefs or other law enforcement officials (including defendants) publicly define the requirements for obtaining concealed carry licenses in further detail. They do not, for example, provide any formal guidance on what constitutes "an exceptional case,

when an applicant shows reason to fear injury to the applicant's person or property"
to obtain a concealed-carry license. *Id.*

41.     Upon information and belief, neither Hawaii law nor county police
chiefs elaborate on the meaning of "engaged in the protection of life and property"
or explain when "the urgency or the need has been sufficiently indicated" to obtain
an open-carry license. *Id*. The former Hawaii Attorney General Russel Suzuki,
however, authored a formal legal opinion following the three-judge panel decision
in *Young*, confirming that section 134-9 does not limit open carry licenses to private
security officers.[1] Former Attorney General Suzuki's opinion concludes that Hawaii
law "authorizes the issuance of unconcealed-carry licenses to any qualified
individual who demonstrates a sufficient 'urgency' or 'need' to carry a firearm and
is 'engaged in the protection of life and property.' "[2]

42.     In petitioning for en banc review, the State of Hawaii, represented by
the Attorney General, primarily pointed to what it contended was the panel's
"fundamental misunderstanding of Hawaii law by construing section 134-9 as
authorizing "open-carry licenses only for 'security guards' and other individuals

---

[1] State of Haw., Dep't of the Att'y Gen., Opinion Letter No. 18-1, *Availability of Unconcealed-Carry Licenses* (Sept. 11, 2018), attached hereto as Exhibit A, and also available online at https://ag.hawaii.gov/wp-content/uploads/2018/09/AG-Opinion-No.-18-1.pdf.

[2] *Id*. at *2.

whose job duties entail the protection of life and property." Pet. Reh'g En Banc at *8, *Young v. Hawaii*, No. 12-17808 (9th Cir. 2018).[3] In making that argument, Hawaii primarily relied on former Attorney General Suzuki's opinion that open carry licenses are not limited to security guards but can lawfully be issued to any qualified individual.

43.     Reports compiled by the Hawaii Attorney General indicate, however, that in practice county police chiefs grant carry licenses *only* to employees of private security firms, while denying essentially all applications from ordinary citizens.

44.     For example, in 2016, the Attorney General reported that 225 of 229 carry license applications from "employees of private security firms" were granted, while all applications from "private citizens" were denied "by the respective county's chief of police." See Exhibit B attached here (Hawaii Dep't of the Attorney General, *Firearm Registrations in Hawaii, 2016*) at 9.

45.     Likewise, in 2015, the Attorney General reported that 221 of 229 carry license applications from "employees of private security firms" were granted, while all applications from "private citizens" were denied "by the respective county's chief of police." See Exhibit C attached here (Hawaii Dep't of the Attorney General, *Firearm Registrations in Hawaii, 2015*) at 9.

---

[3] The County of Hawaii joined the State in taking that position.

15

46.     In 2014, 218 of 220 applications by "employees of private security firms" were granted, while all applications from "private citizens" were denied at the discretion of the respective chief of police." See Exhibit D attached here (Hawaii Dep't of the Attorney General, *Firearm Registrations in Hawaii*, *2014*) at 9.

47.     In 2013, 205 of 207 applications by "employees of private security firms" were granted, while nearly all applications by "private citizens" were denied, with the police chief in Kauai granting one carry license to a private citizen. See Exhibit E attached here (Hawaii Dep't of the Attorney General, *Firearm Registrations in Hawaii*, *2013*) at 11.

48.     In 2012, 168 of 170 applications by "employees of private security firms" were granted, while all applications by "private citizens" were denied "at the discretion of the respective" chief of police. See Exhibit F attached here (Hawaii Dep't of the Attorney General, *Firearm Registrations in Hawaii*, *2012*) at 11.

49.     The statistics compiled by the Attorney General—and the reports' express distinctions between "employees of private security firms" and "private citizens"—demonstrate that it has been functionally impossible for a private citizen in Hawaii to obtain a concealed-carry or open-carry license. Despite former Attorney General Suzuki's opinion, on information and belief, this still seems to be the case.

**C.    Plaintiffs' Attempts to Exercise Their Second Amendment Right**

50.    All individual plaintiffs seek to carry a firearm, either openly or concealed. Each plaintiff completed Hawaii's designated "Application for a License to Carry a Concealed Firearm" form. In addition, in light of former Attorney General Suzuki's opinion letter, each plaintiff inquired with the Honolulu Police Department as to what application form, if any, should be used when applying for an open carry license.  With the exception of plaintiff Ronald Livingston, who was provided an application form that contemplated both concealed and open carry licenses, each plaintiff was informed by the Honolulu Police Department that no form existed for applications for open carry licenses. Each plaintiff therefore prepared a cover letter to accompany their form application. These cover letters asked the Honolulu Police Department to treat the application as requesting either a concealed or open carry license. The cover letters specifically referenced Hawaii laws regarding open carry licenses and former Attorney General Suzuki's opinion letter clarifying the requirements for such licenses.

51.    To demonstrate that they satisfy all background requirements necessary for the issuance of a carry license, each of plaintiff's applications also included two passport photos; a copy of their U.S. Passport or other citizenship documentation; a document detailing the reasons each plaintiff was seeking a license to carry; and

proof of completion of a hunter education or firearms safety training course, as required under Hawaii law and Honolulu Police Department policies.

52.     All plaintiffs were denied licenses to carry in any manner.

53.     In sum, under current law, Plaintiffs, members of HRA, and ordinary citizens in Hawaii are effectively banned from carrying handguns outside their homes or places of business for self-defense in any manner, whether concealed or openly under H.R.S. §134-9(a).

**COUNT ONE**

**(SECOND AND FOURTEENTH AMENDMENTS, 42 U.S.C. §1983)**

54.     Plaintiffs hereby re-allege and incorporate by reference the allegations of each of the preceding paragraphs.

55.     Plaintiffs lawfully own handguns, and, if licensed to do so, would carry those handguns in non-sensitive public locations for the core lawful purpose of self-defense in any manner allowed, either concealed or openly.

56.     Plaintiffs are not exempted from Hawaii's firearms restrictions, and are therefore prohibited from carrying handguns in public for self-defense without obtaining a carry license.

57.     Despite *Bruen*'s unequivocal condemnation of "may-issue" carry-license regimes like Hawaii's H.R.S. §134-9(a), that require applicants to prove a special need to the satisfaction of the government to qualify for a carry-license, the

State of Hawaii has not repealed nor amended H.R.S. §134-9(a) to remove that requirement.

58.    Plaintiffs meet all applicable age, citizenship, safety, mental health, criminal record, and other background requirements for a carry license.[4]

59.    Plaintiff Livingston completed and submitted the form provided to him by the Honolulu Police Department titled "Application for a License to Carry an Open/Concealed Firearm" and prepared an accompanying cover letter asking the Honolulu Police Department to treat his application as requesting either a concealed or open carry license. The cover letter specifically referenced Hawaii laws regarding open carry licenses and former Attorney General Suzuki's opinion letter clarifying the requirements for such licenses.

60.    All other individual plaintiffs completed and submitted the form provided to them by the Honolulu Police Department titled "Application for a License to Carry a Concealed Firearm" and prepared an accompanying cover letter asking the Honolulu Police Department to treat their applications as requesting either a concealed or open carry license. The cover letters specifically referenced Hawaii

---

[4] As of the date of this filing, the County of Honolulu has commenced, but not completed, its formal rulemaking process with the purpose of adopting administrative rules governing the requirements and criteria one must meet to qualify for a carry license issued from the Honolulu Police Department. The County is currently accepting comments from the public as part of that process, here: https://www.honolulupd.org/public-hearing-proposed-amendment-to-firearms-rules

laws regarding open carry licenses and former Attorney General Suzuki's opinion letter clarifying the requirements for such licenses.

61.     Defendants or their agents denied plaintiffs' applications for a license to carry in any manner.

62.     The Second Amendment guarantees ordinary, law-abiding citizens like plaintiffs the right to bear arms for the core lawful purpose of self-defense, which includes the right to carry a handgun for self-defense outside the home in some manner, either concealed or openly.

63.     Defendants' denial of plaintiffs' requests for carry licenses prevents plaintiffs from lawfully carrying handguns for self-defense outside the home in any manner, either concealed or openly.

64.     Defendants' denial of plaintiffs' requests for carry license violates their Second Amendment rights.

65.     Preventing plaintiffs and other ordinary law-abiding citizens from exercising their Second Amendment right to carry handguns outside the home for self-defense inflicts irreparable harm on them and diminishes the public interest.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs respectfully request that this Court:

A.     Enter judgment in their favor;

B.      Declare that the Second Amendment protects the right of ordinary, law-abiding citizens to carry a handgun outside the home for self-defense in some manner, either concealed or openly;

C.      Declare that the provisions of H.R.S. §134-9(a) that prevent ordinary, law-abiding citizens from carrying handguns outside the home or place of business for self-defense in some manner, either concealed or openly, are unconstitutional facially and as applied to plaintiffs;

D.      Enter a preliminary injunction preventing defendants and their agents from enforcing §134-9(a) to prevent ordinary, law-abiding citizens from carrying handguns outside the home or place of business for self-defense in some manner, either concealed or openly, during the pendency of this litigation;

E.      Enter a permanent injunction enjoining defendants and their agents from enforcing §134-9(a) to prevent ordinary, law-abiding citizens from carrying handguns outside the home or place of business for self-defense in some manner, either concealed or openly;

F.      Award plaintiffs their costs of suit, including attorney fees and costs, pursuant to 42 U.S.C. §1988;

G.      Award damages according to proof; and

/ / /

/ / /

H.      Grant any other and further relief that the Court deems just and proper.


Dated: September 27, 2022                    Respectfully submitted,

                                             */s/James Hochberg*
                                             JAMES HOCHBERG (HI Bar No. 3686)
                                             ATTORNEY AT LAW, LLLC
                                             E-mail: jim@jameshochberglaw.com

                                             C.D. MICHEL (pro hac vice)
                                             SEAN A. BRADY (pro hac vice)
                                             MATTHEW D. CUBEIRO (pro hac vice)
                                             MICHEL & ASSOCIATES, P.C.
                                             E-mail: cmichel@michellawyers.com

22

# EXHIBIT A



DAVID Y. IGE
GOVERNOR

RUSSELL A. SUZUKI
ATTORNEY GENERAL

DANA O. VIOLA
DEPUTY ATTORNEY GENERAL

**STATE OF HAWAIʻI**
DEPARTMENT OF THE ATTORNEY GENERAL
425 QUEEN STREET
HONOLULU, HAWAIʻI 96813
(808) 586-1500

September 11, 2018

The Honorable Douglas S. Chin
Lieutenant Governor
State of Hawaiʻi
State Capitol, Executive Chambers
415 South Beretania Street
Honolulu, Hawaiʻi  96813

Dear Lieutenant Governor Chin:

Re:  Availability of Unconcealed-Carry Licenses

This letter responds to your request for a formal legal
opinion clarifying the authority of chiefs of police to issue
licenses permitting the unconcealed carry of firearms.

Your inquiry arises from ongoing litigation challenging the
constitutionality of a portion of section 134-9, Hawaiʻi Revised
Statutes (HRS), which provides that "[w]here the urgency or the
need has been sufficiently indicated, the respective chief of
police" may issue a license authorizing an otherwise-qualified
applicant who "is engaged in the protection of life and property"
to carry an unconcealed firearm within the county.  In *Young v.
Hawaii*, a divided panel of the Ninth Circuit construed this
provision as "[r]estricting open carry to those whose job entails
protecting life or property," such as "security guard[s]."  896
F.3d 1044, 1071 (9th Cir. 2018).  The panel held that, so
construed, the unconcealed-carry provision violates the Second
Amendment.  *Id*.  Both the County of Hawaiʻi and the State of
Hawaiʻi have announced that they intend to seek panel rehearing or
rehearing en banc of that decision.

For the reasons set forth below, we advise that the *Young*
panel's construction of section 134-9, HRS, is overly restrictive.
By its plain text, section 134-9 does not limit unconcealed-carry

Op. No. 18-1

The Honorable Douglas S. Chin
September 11, 2018
Page 2

licenses to persons whose job entails the protection of life and
property, but authorizes the issuance of such licenses to anyone
"engaged in the protection of life and property" who demonstrates
a sufficient "urgency" or "need" to carry a weapon.  Furthermore,
without attempting to set forth a comprehensive list of eligible
recipients, we advise that a private individual would likely
satisfy the statutory criteria for an unconcealed-carry license
where he or she identifies a need for protection that
significantly exceeds that held by an ordinary law-abiding
citizen, and otherwise satisfies the statutory requirements for
possessing and carrying a firearm.

I.   **QUESTIONS PRESENTED AND SHORT ANSWERS.**

     1.   Does section 134-9, HRS, limit the issuance of
unconcealed-carry licenses to private security officers and other
individuals whose jobs entail protecting life and property?

     **SHORT ANSWER:**  No.  Section 134-9, HRS, authorizes the
issuance of unconcealed-carry licenses to any qualified individual
who demonstrates a sufficient "urgency" or "need" to carry a
firearm and is "engaged in the protection of life and property."

     2.   What standards should chiefs of police apply in
adjudicating applications for unconcealed-carry licenses?

     **SHORT ANSWER:**  An applicant must satisfy four criteria to
obtain an unconcealed-carry license:  He or she must (1) meet the
objective qualifications for possessing and carrying a firearm;
(2) demonstrate a sufficient need to carry a firearm for the
purpose of protecting life and property; (3) be of good moral
character; and (4) present no other reason justifying the
discretionary denial of a license.  To satisfy these requirements,
an applicant must demonstrate, among other things, that he or she
has a need for protection that substantially exceeds that held by
ordinary law-abiding citizens.

II.  **BACKGROUND.**

     Hawai'i has imposed limits on the public carry of firearms
for over 150 years.  In 1852, the Legislative Council enacted a
statute making it a criminal offense for "[a]ny person not
authorized by law" to "carry, or be found armed with, any . . .
pistol . . . or other deadly weapon . . . unless good cause be
shown for having such dangerous weapons."  1852 Haw. Sess. Laws
Act of May 25, 1852, § 1 at 19; *see Republic of Hawaii v. Clark*,
10 Haw. 585, 587-88 (1897).  In 1927, the territorial legislature
enacted a statute, modeled on the Uniform Firearms Act, that
required individuals to obtain a license in order to "carry a

The Honorable Douglas S. Chin
September 11, 2018
Page 3

pistol or revolver," and provided that individuals could obtain
such a license upon showing "good reason to fear an injury to his
person or property" or "other proper reason for carrying" a
firearm.  1927 Haw. Sess. Laws Act 206, §§ 5, 7 at 209; *see* S.
Stand. Comm. Rep. No. 322, in 1927 Senate Journal, at 1023.  In
1934 and 1961, the Legislature amended the statute to
substantially its present form.  *See* 1933 (Special Sess.) Haw.
Sess. Laws Act 26, § 8 at 39 (Jan. 9, 1934); 1961 Haw. Sess. Laws
Act 163, § 1 at 215 (July 8, 1961).

     Today, Hawai'i law provides that, subject to a number of
exceptions, "[a]ll firearms shall be confined to the possessor's
place of business, residence, or sojourn."  HRS §§ 134-23, 134-24,
134-25.  It is generally unlawful "for any person on any public
highway to carry on the person, or to have in the person's
possession, or to carry in a vehicle any firearm loaded with
ammunition."  HRS § 134-26; *see* HRS § 134-9(c).  Members of the
armed forces, mail carriers, and persons employed by the State or
its subdivisions are exempt from this limit "while in the
performance of their respective duties."  HRS § 134-11(a).
Individuals may also carry lawfully acquired firearms "while
actually engaged in hunting or target shooting."  HRS § 134-5(a);
*see* HRS § 134-5(c).

     In addition, individuals may lawfully carry a pistol or
revolver within a county if they obtain a license from the
county's chief of police.  HRS § 134-9.  Section 134-9, HRS,
authorizes police chiefs to issue two types of carry licenses.  A
chief of police may issue a *concealed*-carry license "[i]n an
exceptional case, when an applicant shows reason to fear injury to
the applicant's person or property" and satisfies certain age,
citizenship, and other statutory requirements.  HRS § 134-9(a)-
(b).  A chief of police may also grant a *unconcealed*-carry license
to a qualified applicant "[w]here the urgency or the need has been
sufficiently indicated," the applicant "is engaged in the
protection of life and property," and the applicant is "of good
moral character."  HRS § 134-9(a).

III. **ANALYSIS**.

     A.   **Section 134-9, HRS, Does Not Limit Unconcealed-Carry
          Licenses To Private Security Officers.**

     We advise that section 134-9, HRS, does not limit the
issuance of unconcealed-carry licenses to individuals whose jobs
entail protecting life and property.  The plain text of the
statute, the legislative history, and the applicable case law all
support this conclusion.

                                                  Op. No. 18-1

The Honorable Douglas S. Chin
September 11, 2018
Page 4

        Our analysis begins with the statute's text.  *See Del Monte Fresh Produce (Hawaii), Inc. v. Int'l Longshore & Warehouse Union, Local 142, AFL-CIO*, 112 Hawai'i 489, 499, 146 P.3d 1066, 1076 (2006).  As relevant, section 134-9, HRS, imposes two requirements that an otherwise qualified applicant must satisfy in order to obtain an unconcealed-carry license:  the applicant must (1) "sufficiently indicate[]" "the urgency or the need" to carry an unconcealed firearm, and (2) be "engaged in the protection of life and property."  HRS § 134-9(a).

        It is plain that the first of these requirements does not limit unconcealed-carry licenses to private security officers.  A private individual, no less than a security guard, may identify an "urgen[t]" or compelling "need" to carry an unconcealed firearm.  Indeed, the statute's use of the disjunctive phrase "the urgency *or* the need" indicates that the Legislature intended to permit the issuance of unconcealed-carry licenses for multiple reasons.  Construing the statute to authorize such licenses for one reason only -- that the applicant's job duties require a firearm -- would contravene that textual choice.

        Nor does the requirement that an applicant be "engaged in the protection of life and property" limit unconcealed-carry licenses to private security officers.  The words "engage in" mean simply "to do or take part in something."  Merriam Webster's Dictionary (2018).  In ordinary usage, an individual may "take part in" an activity even though his job duties do not require it.  *See Sierra Club v. Castle & Cooke Homes Hawai'i, Inc.*, 132 Hawai'i 184, 191-92, 320 P.3d 849, 856-57 (2013) ("Under general principles of statutory construction, courts give words their ordinary meaning unless something in the statute requires a different interpretation." (citation omitted)).  And other provisions of the statute use the words "engaged in" to refer to non-professional activities in this way.  Section 134-5(c), HRS, authorizes a person to "carry unconcealed and use a lawfully acquired pistol or revolver while actually *engaged in* hunting game mammals."  HRS § 134-5(c) (emphasis added).  Likewise, sections 134-3 and 134-5(a), HRS, authorize the use or carrying of firearms while "engage[d] in" hunting or target shooting.  HRS §§ 134-3(a)(3), 134-5(a).

        Furthermore, when the Legislature wished to limit firearms to individuals engaged in the performance of their professional duties, it expressly said so.  Section 134-11(a), HRS, authorizes a variety of officers to carry firearms "while in the performance of their respective duties."  HRS § 134-11(a)(2), (4)-(5).  Similarly, section 134-31, HRS, requires individuals to obtain a license in order to "engage in *the business* to sell and manufacture firearms."  HRS § 134-31 (emphasis added).  The

The Honorable Douglas S. Chin
September 11, 2018
Page 5

Legislature notably did not include similar language in section 134-9, HRS, and it would be improper in our view to read such limits implicitly into the statute's text.

The legislative history of section 134-9, HRS, reinforces this interpretation.  For several decades prior to 1961, section 134-9 only authorized chiefs of police to issue *concealed*-carry licenses.  *See* 1933 (Special Sess.) Haw. Sess. Laws Act 26, §8 at 39.  In 1961, the Legislature amended the statute to authorize the issuance of unconcealed-carry licenses, as well.  1961 Haw. Sess. Laws Act 163, § 1 at 215.  In the committee report accompanying that amendment, the Senate Judiciary Committee explained that this change was "designed to extend the permit provisions to those employed as guards or watchman *and/or to persons engaged in the protection of life and property* and to further authorize such licensees to carry the described firearms unconcealed on their persons."  S. Stand. Comm. Rep. No. 558, in 1961 Senate Journal, at 874 (emphasis added).  This report thus makes clear that the drafters intended to reach not only "those employed as guards or watchman" but, more broadly, any "persons engaged in the protection of life and property."  Although "guards" and "watchm[e]n" may have been the principal persons the Legislature had in mind, legislation is not limited to the principal mischief it is designed to address, and that is particularly so where the drafters expressly contemplated it would extend more broadly.

The limited case law discussing section 134-9, HRS, and analogous statutes is also consistent with our understanding.  To our knowledge, prior to the Ninth Circuit panel decision in *Young*, no court suggested that section 134-9 limits open-carry licenses to private security officers.  To the contrary, in *Baker v. Kealoha*, the District Court for the District of Hawai'i observed that section 134-9 "provides for exceptions in cases where an individual demonstrates an urgency or need for protection in public places."  2012 WL 12886818, at *18 (D. Haw. Apr. 30, 2012), *vacated and remanded on other grounds*, 679 F. App'x 625 (9th Cir. 2017).  Moreover, courts and agencies in other states have construed comparable statutes -- which likewise permit issuance of carry licenses upon a showing of adequate "need" or "cause" -- to authorize licenses for private individuals, and not just professional security guards and the like.  *See, e.g., Woollard v. Gallagher*, 712 F.3d 865, 870 (4th Cir. 2013) (Maryland); *Drake v. Filko*, 724 F.3d 426, 428 (3d Cir. 2013) (New Jersey); *Kachalsky v. County of Westchester*, 701 F.3d 81, 86-87 (2d Cir. 2012) (New York).

Nor does past practice justify a different conclusion.  The *Young* panel placed substantial weight on the premise that, to its knowledge, "no one other than a security guard -- or someone

Op. No. 18-1

The Honorable Douglas S. Chin
September 11, 2018
Page 6

similarly employed -- ha[s] ever been issued an open carry
license." 896 F.3d at 1070. But even if that premise were
correct, a practice of that kind would not justify adopting a
reading that the statute's text cannot bear. Moreover, there is
little evidence in the court record to back up the panel's
assertion. Although the Department of the Attorney General has
published statistics on firearm license applications, those
reports date back only to the year 2000 -- 39 years after the
statute was enacted, and nearly 150 years after the first
restriction on public carry was imposed. *See* Dep't of Attorney
Gen., Crime Prevention & Justice Assistance Div., *Research &
Statistics Branch*, http://ag.hawaii.gov/cpja/rs/ (last visited
Sept. 10, 2018) (collecting reports). And those reports, starting
in 2004, state only the number of private individuals who applied
for (and were granted or denied) a *concealed*-carry license; they
do not state the number of private individuals who applied for
(and were granted or denied) an unconcealed-carry license. What
is more, out of the handful of instances before 2004 in which the
reports state simply that private individuals applied for "carry
license[s]," without specifying that the license was for
concealed- or unconcealed-carry, individuals were *granted* such
licenses in two cases. *See* Dep't of Attorney Gen., *Firearm
Registrations in Hawaii, 2001*, at 7,
http://ag.hawaii.gov/cpja/files/2013/01/Firearms-Registration-
2001.pdf (last visited Sept. 10, 2018).

In short, the plain text of the statute does not limit
unconcealed-carry licenses to individuals employed as private
security officers. And other indicia of statutory meaning support
that straightforward reading. Accordingly, we advise that private
individuals as well as security officers are eligible to obtain
licenses to carry unconcealed firearms under section 134-9, HRS.

**B.    Standards For Adjudicating Unconcealed-Carry
       Applications.**

You have also asked us to clarify the standards that police
chiefs should apply in adjudicating applications for unconcealed-
carry licenses. By its text, section 134-9, HRS, establishes four
basic criteria that an applicant must satisfy to obtain an
unconcealed-carry license: An applicant must (1) meet the
objective qualifications for possessing and carrying a firearm;
(2) demonstrate a sufficient need to carry a firearm in order to
protect life and property; (3) be of good moral character; and

Op. No. 18-1

The Honorable Douglas S. Chin
September 11, 2018
Page 7

(4) present no other reason that justifies the exercise of
discretion to deny a license.  We consider each of these criteria
in turn below.

### 1.  Objective Qualifications.

As an initial matter, section 134-9, HRS, requires every
applicant for an unconcealed-carry license to meet three
objective qualifications.  Every applicant must (1) be "a citizen
of the United States," (2) be "of the age of twenty-one years or
more," and (3) not be "prohibited under section 134-7 from the
ownership or possession of a firearm."  HRS § 134-9(a).  Section
134-7, HRS, further provides that an individual may not own,
possess, or control a firearm if he is barred from possessing a
firearm by federal law, is a fugitive from justice, or fails to
satisfy the statute's other prerequisites.  HRS § 134-7; see 18
U.S.C. § 922(g)(1)-(9), (n) (listing federal requirements).

An application for an unconcealed-carry license must
therefore be denied if the applicant fails to satisfy any of
these objective criteria.  And the statute specifies, in part,
the procedures a police chief or his designated representative
must follow prior to making that determination.  It states that
such officials "shall perform an inquiry on [the] applicant by
using the National Instant Criminal Background Check System, to
include a check of the Immigration and Customs Enforcement
databases where the applicant is not a citizen of the United
States, before any determination to grant a license is made."
HRS § 134-9(a).

### 2.  Sufficient Need To Carry A Firearm.

Section 134-9, HRS, further requires that each applicant
must "sufficiently indicate[]" that he or she has an "urgency" or
"need" to carry a firearm and is "engaged in the protection of
life and property."  Id.  As we have explained, this language
does not limit carry licenses to private security officers.  See
supra section III.A.  Case law from other states is instructive,
however, in discerning what it does require.  Courts interpreting
virtually identical laws have held that "a simple desire to carry
a weapon is not enough" to satisfy their substantive
requirements.  Kachalsky, 701 F.3d at 86-87.  "Nor is living or
being employed in a 'high crime area[].'"  Id. at 87.  Rather,
an applicant typically must demonstrate that he or she has a need
to carry a firearm for protection that substantially exceeds the
need possessed by ordinary law-abiding citizens.  See Drake, 724
F.3d at 428 & n.2; Woollard, 712 F.3d at 870; Kachalsky, 701 F.3d
at 86-87.

Op. No. 18-1

The Honorable Douglas S. Chin
September 11, 2018
Page 8

        In our view, a similar standard is appropriate in
interpreting section 134-9, HRS.  Section 134-9 requires that an
applicant "sufficiently" demonstrate an "urgency" or "need" to
carry a firearm -- all words that connote an immediate, pressing,
and heightened interest in carrying a firearm.  Furthermore, the
applicant must be "*engaged in* the protection of life and
property," language that requires that the individual be actively
"tak[ing] part in" such protection, not merely exhibit a
generalized concern for safety.  Particularly given that Hawaii's
modern firearm laws were designed to mirror the uniform firearm
laws adopted by many other states, *see* S. Stand. Comm. Rep. No.
322, in 1927 Senate Journal, at 1023, we therefore believe that
much the same standard adopted by those states is appropriate in
interpreting section 134-9.  This provision, we conclude,
requires applicants for an unconcealed-carry license to
demonstrate that they have a need to carry a firearm for
protection that substantially exceeds the need possessed by
ordinary law-abiding citizens.

        Without attempting to offer an exhaustive list of applicants
who could satisfy this standard, we believe that the following
illustrative examples could present a sufficient urgency or need
for protection under the statute:

    (a)   A person who has suffered serious domestic abuse from a
          former partner who has violated previous protective
          orders;

    (b)   A victim of stalking who has received credible threats
          of death or serious bodily harm from his or her
          stalker;

    (c)   A political activist who has received credible threats
          of death or serious bodily harm due to his or her
          political activity;

    (d)   A witness to a crime who has received credible threats,
          or is testifying against an organization known to use
          violence to intimidate witnesses;

    (e)   A person who faces heightened risk of attack or
          violence due to his or her profession, such as a
          private security officer, a psychiatrist or physician
          with an obsessive or threatening patient, an attorney
          with a former client or opposing party who has made
          credible threats of death or serious bodily harm, a
          business owner with a violent former employee who has
          made credible threats of death or serious bodily harm,

                                                    Op. No. 18-1

The Honorable Douglas S. Chin
September 11, 2018
Page 9

> an entertainer with an obsessive fan who has made
> credible threats of death or serious bodily harm and
> engaged in stalking; or a person who faces a high risk
> of armed robbery because his or her job requires
> stocking ATMs or otherwise transporting large
> quantities of cash.

### 3.   Good Moral Character.

An applicant for an unconcealed-carry license must also be a
person "of good moral character."  HRS § 134-9.  As courts in
other jurisdictions have concluded, we think it plain that a
person does not demonstrate "good moral character" where there is
reliable and credible evidence that, if issued a license, the
applicant may create a risk to public safety.  *See Caputo v.
Kelly*, 117 A.D.3d 644, 644 (N.Y. App. Div. 2014); *Hider v. Chief
of Police, City of Portland*, 628 A.2d 158, 161 (Maine 1993).
That is, we advise that a chief of police should deny an
application when the applicant exhibits specific and articulable
indicia that the applicant poses a heightened risk to public
safety.  Such indicia could include, but are not limited to:

(a)   Recent incidents of alleged domestic violence, even if
      not leading to charges or the issuance of a protective
      order;

(b)   Recent incidents of careless handling or storage of a
      firearm, especially if involving children;

(c)   Recent incidents of alcohol or drug abuse, especially
      involving violence, even when not leading to criminal
      charges or mental health treatment;

(d)   Other recent violent conduct, even if not resulting in
      criminal charges or serious injury.

### 4.   No Other Reasons That Justify The Exercise Of Discretion To Deny A License.

Finally, section 134-9, HRS, provides that where an
applicant satisfies the statute's express requirements, "the
respective chief of police *may* grant" an unconcealed-carry
license.  HRS § 134-9(a) (emphasis added).  Accordingly, we
advise that chiefs of police may exercise reasonable discretion
to deny licenses to otherwise-qualified applicants, but that
discretion may not be exercised in an arbitrary or capricious
manner.  Chiefs of police should exercise their discretion to

Op. No. 18-1

The Honorable Douglas S. Chin
September 11, 2018
Page 10

deny unconcealed-carry licenses to qualified applicants only
where an applicant's characteristics or circumstances render the
applicant unsuitable to carry an unconcealed firearm for reasons
not captured by the express statutory requirements.  Discretion
may not be used to effectively nullify the authorization for
unconcealed-carry licenses contained in section 134-9.  Nor may
discretion be used to impose categorical restrictions on
unconcealed-carry licenses -- such as limiting them to private
security officers -- that the Legislature did not enact.  When a
chief of police denies a firearm for discretionary reasons, he or
she should document the reasons and report them to the Attorney
General as provided in section 134-14, HRS.


**IV.   CONCLUSION.**

     We advise that section 134-9, HRS, does not limit
unconcealed-carry licenses to private security officers.
Furthermore, we advise police chiefs to administer the statute's
requirements in accordance with the standards set forth in this
Opinion.

                         Very truly yours,


                         Russell A. Suzuki
                         Attorney General

# EXHIBIT B

# Firearm Registrations in Hawaii, 2016

**Department of the Attorney General    •    Crime Prevention & Justice Assistance Division    •    ag.hawaii.gov/cpja**

Douglas S. Chin, Attorney General

Julie Ebato, Administrator<br>May 2017

*Prepared by*
*Paul Perrone, Chief of Research & Statistics*

Hawaii Revised Statutes (HRS) § 134-14 requires the county police departments to provide to the Department of the Attorney General a monthly report of firearm registration activity. The data from these reports were compiled in order to provide the statistics presented herein for Calendar Year 2016. This is the seventeenth annual publication of *Firearm Registrations in Hawaii*.

## Permit Applications Processed, Issued, Voided, and Denied

A total of 21,408 personal/private firearm permit applications were processed statewide during 2016, marking an 8.4% increase from 19,752 applications processed in 2015. Of the applications processed in 2016, 95.7% were approved and resulted in issued permits; 2.8% were approved but subsequently voided after the applicants failed to return for their permits within the specified time period; and 1.5% were denied due to one or more disqualifying factors. Figure 1 reveals additional information. Denials are described in greater detail throughout this report.

### Figure 1:  Firearm Permit Application Outcomes, State of Hawaii, 2016

21,408 Applications Processed



Applications Denied
328 (1.5%)

Applications Approved/
Permits Issued
20,488 (95.7%)

Applications Approved/
Permits Voided
592 (2.8%)

## Registrations and Importations

The 20,488 permits issued statewide in 2016 cover a total of 53,400 firearms registered throughout the year, resulting in a 14.1% increase from the 46,813 firearms registered during 2015. Slightly under half (26,616, or 49.8%) of the firearms registered during 2016 were imported from out-of-state, with the balance accounted for by transfers of firearms that were previously registered in Hawaii. Independent estimates made during the late-1990s by the Department of the Attorney General and the City & County of Honolulu Police Department conservatively placed the number of privately owned firearms in Hawaii at "at least" one million. Adding to that rough tally during the 2000 through 2016 period, a total of 520,622 firearms were registered (including some more than once) and 255,835 were imported, but there is no way to track the number of firearms that permanently leave the state.

## Permits and Registrations, by Firearm Type

In the State of Hawaii, annual permits are issued in order to acquire an unlimited number of longarms (rifles and shotguns), while single-use permits are issued to acquire specific handguns. By firearm type, 52.7% (10,793) of the permits issued during 2016 were to acquire longarms, while 47.3% (9,695) were handgun permits. The tally of handgun permits is perennially confounded, however, as some of the county police departments issue a single permit listing all handguns that will be acquired simultaneously from the same source (i.e., one permit per transaction, per HRS § 134-2(e)), while the other departments issue one permit per handgun even if they are acquired in the same transaction.

Longarms accounted for 59.3% (31,648) of all firearms registered during 2016 (53,400). Broken out further, rifles and shotguns comprised 47.7% (25,461) and 11.6% (6,187) of total registrations, respectively. The remaining 40.7% (21,752) of firearms registered throughout 2016 were handguns.

## County Comparisons and Registration Trends

Table 1 shows the distribution of firearm registration activity during 2016 across the four counties and for the State of Hawaii overall. Record high levels of firearm registration activity were reported by Kauai County (see page 6 for more information).

**Table 1:  Firearm Registration Activity,
State of Hawaii and Counties, 2016**

|  | C&C of Honolulu | Hawaii County | Maui County | Kauai County | State Total |
|---|---|---|---|---|---|
| Applications Processed | 12,599 | 4,669 | 2,251 | 1,889 | **21,408** |
| Applications Approved/ Permits Issued | 12,204 | 4,491 | 2,115 | 1,678 | **20,488** |
| Applications Approved/ Permits Voided | 290 | 30 | 84 | 188 | **592** |
| Applications Denied | 105 | 148 | 52 | 23 | **328** |
| Denial Rate | 0.8% | 3.2% | 2.3% | 1.2% | **1.5%** |
| Firearms Registered | 31,613 | 11,585 | 5,660 | 4,542 | **53,400** |
| Firearms Imported | 16,856 | 5,545 | 2,403 | 1,812 | **26,616** |

As compared to Hawaii's resident population distribution, firearm registration activity occurred disproportionately across the four counties during 2016 (see Figure 2). (If the counties' registration activity occurred in equal proportion to their respective population sizes, then the three bars depicted for each county in Figure 2 would be of equal height and value.)

**Figure 2:  County Distribution of Permit Applications Processed and Denied (2016) versus Resident Population Distribution (2015)**



Figure 3 (next page) presents historical data on permit application denial rates for the State of Hawaii and each of its four counties. Notable are the consistently higher denial rates reported by Hawaii County and Maui County, as compared to the lower rates reported by Kauai County and the City & County of Honolulu.

3



**Figure 3: Firearm Permit Application Denial Rates,
State of Hawaii and Counties, 2000-2016**

|  | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ◆ City & County of Honolulu | 1.4 | 1.3 | 0.6 | 1.0 | 0.3 | 0.2 | 0.4 | 0.4 | 0.6 | 0.6 | 0.5 | 0.6 | 0.4 | 0.4 | 0.2 | 0.3 | 0.8 |
| ■ Hawaii County | 2.4 | 2.3 | 2.9 | 2.5 | 4.9 | 4.0 | 2.4 | 2.1 | 1.8 | 1.1 | 1.7 | 3.8 | 3.0 | 1.9 | 1.4 | 2.2 | 3.2 |
| ▲ Maui County | 3.7 | 5.6 | 4.4 | 4.2 | 2.9 | 4.5 | 2.3 | 2.0 | 2.9 | 3.8 | 2.6 | 2.5 | 1.7 | 2.0 | 1.9 | 2.3 | 1.7 |
| ◆ Kauai County | 1.5 | 0.3 | 0.7 | 1.3 | 0.4 | 0.2 | 0.1 | 0.6 | 0.2 | 0.1 | 0.1 | 1.3 | 0.9 | 1.4 | 1.4 | 1.7 | 1.2 |
| ✳ State of Hawaii (Total) | 1.8 | 2.0 | 1.5 | 1.7 | 1.5 | 1.3 | 1.0 | 0.9 | 1.1 | 1.1 | 1.0 | 1.5 | 1.0 | 1.0 | 0.8 | 1.1 | 1.5 |

Firearm registration activity increased dramatically over the course of the 17 years for which these data have been systematically compiled and reported (see Figure 4). From 2000 through 2016, the number of statewide permit applications annually processed increased 341.1%, the number of firearms annually registered surged 392.2%, and the number of firearms annually imported climbed 368.2%.



**Figure 4: Firearm Registration Trends,
State of Hawaii, 2000-2016**

|  | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ◆ Applications Processed | 6,489 | 6,829 | 6,990 | 6,792 | 6,842 | 8,695 | 8,049 | 8,835 | 10,527 | 12,606 | 12,801 | 15,375 | 21,864 | 22,765 | 19,365 | 19,752 | 21,408 |
| ▲ Firearms Registered | 13,617 | 14,305 | 15,822 | 14,924 | 14,661 | 17,982 | 19,971 | 21,784 | 25,996 | 33,678 | 31,390 | 36,804 | 50,394 | 60,757 | 48,324 | 46,813 | 53,400 |
| ■ Firearms Imported | 7,228 | 6,567 | 7,416 | 6,778 | 7,595 | 8,563 | 9,830 | 10,401 | 11,978 | 16,897 | 15,212 | 17,949 | 23,548 | 30,802 | 25,772 | 22,683 | 26,616 |

4

Figure 5 shows that, between 2000 and 2016 in the City & County of Honolulu, the annual tally of permits processed increased 309.9%, the number of firearms annually registered rose 383.8%, and the number of firearms annually imported climbed 342.8%.

**Figure 5: Firearm Registration Trends,**
**City & County of Honolulu, 2000-2016**



| | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Applications Processed | 4,065 | 4,377 | 4,383 | 4,248 | 4,208 | 5,833 | 4,855 | 5,120 | 6,397 | 7,736 | 7,738 | 9,452 | 13,927 | 12,903 | 11,075 | 11,604 | 12,599 |
| Firearms Registered | 8,237 | 9,057 | 10,129 | 9,079 | 8,524 | 11,307 | 12,452 | 13,641 | 16,641 | 21,631 | 19,853 | 23,470 | 30,289 | 35,081 | 28,851 | 28,165 | 31,613 |
| Firearms Imported | 4,917 | 4,361 | 4,948 | 4,360 | 4,886 | 5,580 | 6,388 | 7,069 | 8,266 | 11,450 | 10,167 | 11,869 | 13,900 | 18,729 | 16,505 | 14,029 | 16,856 |

As shown in Figure 6, the number of permits processed annually in Hawaii County during the 2000-2016 period surged 407.4%, the number of firearms annually registered jumped 399.1%, and the number of firearms annually imported skyrocketed 446.8%.

**Figure 6: Firearm Registration Trends,**
**Hawaii County, 2000-2016**



| | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Applications Processed | 1,146 | 1,172 | 1,155 | 1,381 | 1,283 | 1,389 | 1,595 | 1,794 | 1,979 | 2,426 | 2,420 | 2,975 | 3,881 | 5,355 | 4,463 | 4,377 | 4,669 |
| Firearms Registered | 2,903 | 2,753 | 2,973 | 3,290 | 3,138 | 3,382 | 3,976 | 4,377 | 5,106 | 6,727 | 5,886 | 6,603 | 10,134 | 14,458 | 10,930 | 10,228 | 11,585 |
| Firearms Imported | 1,241 | 1,196 | 1,286 | 1,376 | 1,344 | 1,615 | 1,768 | 1,813 | 2,327 | 3,183 | 2,732 | 2,990 | 5,272 | 7,036 | 5,413 | 4,985 | 5,545 |

Figure 7 reveals that, between 2000 and 2016 in Maui County, the number of permits processed annually increased 374.8%, the number of firearms annually registered climbed 386.1%, and the tally of firearms annually imported rose 374.9%.



**Figure 7: Firearm Registration Trends, Maui County, 2000-2016**

| | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Applications Processed | 795 | 894 | 870 | 784 | 851 | 867 | 825 | 1,018 | 1,264 | 1,568 | 1,796 | 1,965 | 2,777 | 2,794 | 2,086 | 2,178 | 2,980 |
| Firearms Registered | 1,466 | 1,486 | 1,482 | 1,700 | 2,022 | 1,889 | 2,098 | 2,251 | 2,634 | 3,316 | 3,982 | 4,569 | 6,791 | 7,567 | 4,736 | 5,055 | 5,660 |
| Firearms Imported | 641 | 594 | 635 | 699 | 936 | 935 | 993 | 972 | 780 | 1,533 | 1,661 | 2,108 | 3,124 | 3,357 | 2,052 | 2,162 | 2,403 |

As shown in Figure 8, the number of permits processed annually in Kauai County from 2000 through 2016 climbed 391.1%, the number of firearms registered skyrocketed 449.3%, and the number of firearms imported soared 422.4%. For 2016, Kauai County reported its record high tallies for all three categories.

**Figure 8: Firearm Registration Trends, Kauai County, 2000-2016**

| | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Applications Processed | 483 | 386 | 582 | 379 | 500 | 606 | 774 | 903 | 887 | 876 | 847 | 983 | 1,279 | 1,713 | 1,741 | 1,593 | 1,889 |
| Firearms Registered | 1,011 | 1,009 | 1,238 | 855 | 977 | 1,404 | 1,445 | 1,515 | 1,615 | 2,004 | 1,669 | 2,099 | 2,679 | 3,651 | 3,807 | 3,365 | 4,542 |
| Firearms Imported | 429 | 416 | 547 | 343 | 429 | 433 | 681 | 547 | 605 | 731 | 652 | 982 | 1,252 | 1,680 | 1,802 | 1,507 | 1,812 |

**Permit Application Denials**

As noted earlier, 1.5% (328) of all permit applications in Hawaii during 2016 were denied for cause. Hawaii's 2016 denial rate is less than half of the 4.0% denial rate reported for all state and local agencies conducting background checks for firearm permits and transfers in 2014 (Bureau of Justice Statistics, 2016; the most current national data as of April 2017).

The vast majority of the 328 total denials in Hawaii during 2016 were for longarm (260, or 79.3%) rather than handgun (68, or 20.7%) permit applications. Following a trend since this annual report was first published, longarm permit applications in 2016 were denied at a rate (2.3%) that is several times greater than the denial rate for handgun permit applications (0.7%).

Approximately two-fifths (133, or 40.5%) of the denials in 2016 were due to the applicants' prior criminal convictions, while 7.0% (23) were due to pending cases.

It is a misdemeanor in the State of Hawaii to provide falsified information on firearm permit applications, unless the falsified information pertains to criminal or mental health histories, in which case it is a felony offense (HRS § 134-17).  In 2016, falsified criminal or mental health information or both were provided in 60.1% (197) of the 328 denial cases; falsified information pertaining to anything other than criminal or mental health histories was provided in 1.5% (5) of the cases; and no falsified information was provided in 38.4% (126) of the cases.

Table 2 presents broad categorical data on the reasons for denied permit applications.

### Table 2:  Reasons for Denied Firearm Permit Applications, State of Hawaii, 2016

| | # | %* |
|---|---|---|
| Mental Incompetence/Impairment** | 147 | 44.8 |
| "Other" Criminal Offense | 124 | 37.8 |
| Domestic Violence*** | 44 | 13.4 |
| Drug Offense | 16 | 4.9 |
| Restraining/Protective Order | 11 | 3.4 |
| Other (e.g., non-U.S. citizen, dishonorable discharge from military) | 11 | 3.4 |
| Disqualifying Juvenile Offense | 3 | 0.9 |

  *  Figures do not total 100% due to multiple reasons for some denials.

  **  Includes mental health issues and treatment; drug/alcohol abuse, addiction, and  treatment; and medical marijuana patients. Denials for mental health and drug/alcohol problems and treatment can be satisfactorily resolved with a verified doctor's note stating that the applicant is no longer adversely affected. While an original denial cannot be appealed or overturned, a new application may be submitted and the appropriate permit will be issued. Former medical marijuana patients can successfully apply one year after the expiration of their medical marijuana approval cards.

  ***  Includes domestic violence-related offenses and counseling/treatment.

7

Table 3 provides a breakdown of information entered into a description field for each denial.

**Table 3:  Descriptions of Firearm Permit Application Denials,
State of Hawaii, 2016**

| [328 Total Denials] | # | %* |
|---|---|---|
| abuse of family/household member | 19 | 5.8 |
| abuse of family/household member (x2) | 2 | 0.6 |
| abuse of family/household member (x2) + restraining order | 1 | 0.3 |
| abuse of family/household member + mental health issue/treatment | 5 | 1.5 |
| abuse of family/household member + mental health issue/treatment + substance abuse treatment | 1 | 0.3 |
| abuse of family/household member + motor vehicle theft | 1 | 0.3 |
| abuse of family/household member + weapon offense + criminal property damage | 1 | 0.3 |
| active APB from 2014 (unspecified offense) | 1 | 0.3 |
| alcohol abuse treatment | 8 | 2.4 |
| alcohol and substance abuse treatment | 1 | 0.3 |
| assault | 34 | 10.4 |
| assault (x2) | 2 | 0.6 |
| assault (x2) + abuse of family/household member | 1 | 0.3 |
| assault (x2) + mental health issue/treatment | 1 | 0.3 |
| assault + abuse of family/household member + harassment | 1 | 0.3 |
| assault + disqualifying juvenile offense | 1 | 0.3 |
| assault + harassment | 1 | 0.3 |
| assault + mental health issue/treatment | 2 | 0.6 |
| assault + warrant (unspecified) | 1 | 0.3 |
| assault with deadly weapon (mainland) | 1 | 0.3 |
| battery | 4 | 1.2 |
| battery (x3) + assault | 1 | 0.3 |
| battery + domestic violence (mainland) | 1 | 0.3 |
| battery on police | 1 | 0.3 |
| burglary | 2 | 0.6 |
| burglary (x2) | 1 | 0.3 |
| crime of violence (unspecified misdemeanor) | 1 | 0.3 |
| disorderly conduct | 14 | 4.3 |
| disorderly conduct + alcohol abuse treatment | 1 | 0.3 |
| dispositions n/a for military arrests 1968-69 | 1 | 0.3 |
| disqualifying juvenile offense + mental health issue/treatment | 2 | 0.6 |
| doctor denied approval | 2 | 0.6 |
| domestic violence (mainland) | 1 | 0.3 |
| domestic violence intervention counseling | 3 | 0.9 |
| drug offense | 6 | 1.8 |
| drug paraphernalia | 1 | 0.3 |
| felony (unspecified) | 7 | 2.1 |
| felony arrest (unspecified) + mental health issue/treatment + drug and alcohol addiction | 1 | 0.3 |
| harassment | 15 | 4.6 |
| insane suspect case | 1 | 0.3 |
| kidnapping + assault | 1 | 0.3 |
| mainland indictments for racketeering, organized crime, money laundering, tax evasion, drug and other offenses (27 total) | 1 | 0.3 |
| marijuana possession (felony level) | 1 | 0.3 |
| medical marijuana patient | 42 | 12.8 |
| mental health issue/treatment | 69 | 21.0 |
| mental health issue/treatment + alcohol addiction | 1 | 0.3 |
| mental health issue/treatment + medical marijuana patient | 1 | 0.3 |
| mental health issue/treatment + substance abuse treatment | 1 | 0.3 |
| no response from California re disturbing the peace | 1 | 0.3 |
| no response from California re marijuana cultivation and sales | 1 | 0.3 |
| nonsupport (felony level) | 1 | 0.3 |
| not a U.S. citizen | 3 | 0.9 |
| positive field test for drugs | 2 | 0.6 |
| prior law enforcement contact and their observations | 3 | 0.9 |
| refused to complete necessary forms | 1 | 0.3 |
| refused to enroll in "Rap Back" program | 1 | 0.3 |
| restraining order | 10 | 3.0 |
| robbery | 1 | 0.3 |

*(Table 3 continues on next page)*

**Table 3**
*(continued from previous page)*

| | | |
|---|---|---|
| sexual assault | 1 | 0.3 |
| substance abuse treatment | 2 | 0.6 |
| suicide attempt | 2 | 0.6 |
| suicide attempt (x2) | 1 | 0.3 |
| suicide attempt + mental health issues/treatment | 1 | 0.3 |
| terroristic threatening (x2) + abuse of family/household member | 1 | 0.3 |
| terroristic threatening (x2) | 1 | 0.3 |
| theft | 6 | 1.8 |
| theft + fraud | 1 | 0.3 |
| theft + mental health issue/treatment | 1 | 0.3 |
| violent crime (unspecified) | 6 | 1.8 |
| violent crime (unspecified) + harassment | 1 | 0.3 |
| warrant (unspecified) | 5 | 1.5 |
| warrant (unspecified) + abuse of family/household member | 1 | 0.3 |
| warrant (unspecified) + assault | 1 | 0.3 |
| warrant (unspecified) + medical clearance needed | 1 | 0.3 |
| warrant (unspecified) + mental health issue/treatment | 1 | 0.3 |
| warrant (unspecified) + opioid use | 2 | 0.6 |

\* Due to rounding, figures may not total 100%.

## Licenses to Carry Firearms

Hawaii's county police departments also process license applications for the open and/or concealed carry of firearms in public. Statewide in 2016, 225 employees of private security firms were issued carry licenses, and five (2.2%) were denied for cause. A total of 27 private citizens applied for a concealed carry license in 2016, including 16 in the City & County of Honolulu, six in Hawaii County, and five in Kauai County; all applicants were denied by the respective county's chief of police.

## Confiscations

Three legally prohibited firearms were confiscated by registration personnel statewide in 2016. All three were "assault pistols" as defined by state law.

## Acknowledgements

This report was prepared with input and assistance from the county police departments' firearm registration personnel: **Debra Agena** (August through December), Statistics Clerk, and **Melanie Wong** (January through July), Firearms Registration Clerk, Maui County Police Department; **Lori Hara**, Firearms Registration Clerk, and **Arlene Young**, Senior Police Records Clerk, Hawaii County Police Department; **Jeaneth Panoy**, Weapons Registration Clerk, Kauai County Police Department; and the Firearms Registration Section, in particular **Suzy Yamasaki**, Firearms Registration Clerk, City & County of Honolulu Police Department. As the volume of registration activity documented in this report demonstrates, these dedicated professionals work hard to serve their communities.

## Reference

Bureau of Justice Statistics (June 2016). *Background checks for firearms transfers, 2013-14: Statistical Tables.* U.S. Department of Justice: Office of Justice Programs. NCJ 249849.

# EXHIBIT C

# Firearm Registrations in Hawaii, 2015

**Department of the Attorney General**  •  **Crime Prevention & Justice Assistance Division**  •  **ag.hawaii.gov/cpja**

Douglas S. Chin, Attorney General

Julie Ebato, Administrator
March 2016

*Prepared by*
*Paul Perrone, Chief of Research & Statistics*

Hawaii Revised Statutes section 134-14 requires the county police departments to provide to the Department of the Attorney General a monthly report of firearm registration activity. The data from these reports were compiled in order to provide the statistics presented herein for Calendar Year 2015. This is the sixteenth annual publication of *Firearm Registrations in Hawaii*.

## Permit Applications Processed, Issued, Voided, and Denied

A total of 19,752 personal/private firearm permit applications were processed statewide during 2015, marking a 2.0% increase from the number of applications processed in 2014. Of the applications processed in 2015, 94.9% were approved and resulted in issued permits; 4.1% were approved but subsequently voided after the applicants failed to return for their permits within the specified time period; and 1.1% were denied due to one or more disqualifying factors. Figure 1 reveals additional information.  Denials are described in greater detail throughout this report.

### Figure 1:  Firearm Permit Application Outcomes, State of Hawaii, 2015

(N = 19,752 Total Applications Processed)



Applications Denied
212 (1.1%)

Applications Approved/
Permits Issued
18,737 (94.9%)

Applications Approved/
Permits Voided
803 (4.1%)

## Registrations and Importations

The 18,737 permits issued statewide in 2015 cover a total of 46,813 firearms registered throughout the year, resulting in a 3.1% decrease from the number of firearms registered during 2014.  A little under half (22,683, or 48.5%) of the firearms registered in 2015 were imported from out-of-state, with the balance (24,130, or 51.5%) accounted for by transfers of firearms that were previously registered in Hawaii. Although there is no way to track the number of firearms that permanently leave the state, independent estimates made during the late-1990s by the Department of the Attorney General and the City & County of Honolulu Police Department conservatively placed the total number of privately owned firearms in Hawaii at roughly one million. Subsequently, during the 2000 through 2015 period, a total of 467,222 firearms were registered (including some more than once) and 229,219 were imported.

## Permits and Registrations, by Firearm Type

In the State of Hawaii, annual permits are issued in order to acquire an unlimited number of longarms (rifles and shotguns), while single-use permits are issued to acquire specific handguns. By firearm type, 52.1% (9,771) of the 18,737 total permits issued during 2015 were to acquire longarms, while 47.9% (8,966) were handgun permits. The tally of handgun permits is perennially confounded, however, as some of the county police departments issue a single permit listing all handguns that will be acquired simultaneously from the same source (i.e., one permit per transaction, per Hawaii Revised Statutes section 134-2(e)), while the other departments issue one permit per handgun even if they are acquired in the same transaction.

Longarms accounted for 54.1% (25,349) of all firearms registered in 2015 (48,813).  Broken out further, rifles and shotguns comprised 43.1% (20,199) and a record low of 11.0% (5,150) of total registrations, respectively.  A record high 45.9% (21,464) of firearms registered in 2015 were handguns.

## County Comparisons and Registration Trends

Table 1 shows the distribution of firearm registration activity during 2015 across the four counties and for the State of Hawaii overall.

### Table 1:  Firearm Registration Activity, State of Hawaii and Counties, 2015

|  | C&C of Honolulu | Hawaii County | Maui County | Kauai County | State Total |
|---|---|---|---|---|---|
| Applications Processed | 11,604 | 4,377 | 2,178 | 1,593 | **19,752** |
| Applications Approved/ Permits Issued | 10,993 | 4,261 | 2,045 | 1,438 | **18,737** |
| Applications Approved/ Permits Voided | 571 | 21 | 83 | 128 | **803** |
| Applications Denied | 40 | 95 | 50 | 27 | **212** |
| Denial Rate | 0.3% | 2.2% | 2.3% | 1.7% | **1.1%** |
| Firearms Registered | 28,165 | 10,228 | 5,055 | 3,365 | **46,813** |
| Firearms Imported | 14,029 | 4,985 | 2,162 | 1,507 | **22,683** |

As compared to Hawaii's resident population distribution, firearm registration activity occurred disproportionately across the four counties during 2015 (see Figure 2). (If the counties' registration activity occurred in equal proportion to their respective population sizes, then the three bars depicted for each county in Figure 2 would be of equal height and value.)

Based on its population size, fewer permit applications were processed in the City & County of Honolulu during 2015 than would be expected, and far fewer denials were recorded. Hawaii County reported more processed applications and far more denials than expected. Maui County processed as many applications as would be expected for its population size, and denied many more applications. Kauai County processed more applications and denied many more than anticipated.

**Figure 2:  County Distribution of Permit Applications Processed and Denied (2015) versus Resident Population Distribution (2014)**



Figure 3 (next page) presents historical data on denial rates for the State of Hawaii and each of its four counties. Notable are the consistently higher denial rates reported by Hawaii County and Maui County, as compared to the lower rates reported by Kauai County and the City & County of Honolulu.

**Figure 3: Firearm Permit Application Denial Rates,
State of Hawaii and Counties, 2000-2015**



Firearm registration activity increased dramatically over the course of the 16 years for which these data have been systematically compiled and reported (see Figure 4). From 2000 through 2015, the number of statewide permit applications processed annually climbed 204.4% (i.e., more than tripled), the number of firearms registered rose 243.8%, and the number of firearms imported surged 213.8%.

**Figure 4: Firearm Registration Trends,
State of Hawaii, 2000-2015**



|  | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Applications Processed | 6,489 | 6,829 | 6,990 | 6,792 | 6,842 | 8,695 | 8,049 | 8,835 | 10,527 | 12,606 | 12,801 | 15,375 | 21,864 | 22,765 | 19,365 | 19,752 |
| Firearms Registered | 13,617 | 14,305 | 15,822 | 14,924 | 14,661 | 17,982 | 19,971 | 21,784 | 25,996 | 33,678 | 31,390 | 36,804 | 50,394 | 60,757 | 48,324 | 46,813 |
| Firearms Imported | 7,228 | 6,567 | 7,416 | 6,778 | 7,595 | 8,563 | 9,830 | 10,401 | 11,978 | 16,897 | 15,212 | 17,949 | 23,548 | 30,802 | 25,772 | 22,683 |

4

Figure 5 shows that, between 2000 and 2015 in the City & County of Honolulu, the annual tally of permits processed increased 185.5%, the number of firearms registered rose 241.9%, and the number of firearms imported climbed 185.3%.



**Figure 5: Firearm Registration Trends,
City & County of Honolulu, 2000-2015**

| | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Applications Processed | 4,065 | 4,377 | 4,383 | 4,248 | 4,208 | 5,833 | 4,855 | 5,120 | 6,397 | 7,736 | 7,738 | 9,452 | 13,927 | 12,903 | 11,075 | 11,604 |
| Firearms Registered | 8,237 | 9,057 | 10,129 | 9,079 | 8,524 | 11,307 | 12,452 | 13,641 | 16,641 | 21,631 | 19,853 | 23,470 | 30,289 | 35,081 | 28,851 | 28,165 |
| Firearms Imported | 4,917 | 4,361 | 4,948 | 4,360 | 4,886 | 5,580 | 6,388 | 7,069 | 8,266 | 11,450 | 10,167 | 11,869 | 13,900 | 18,729 | 16,505 | 14,029 |

As shown in Figure 6, the number of permits processed annually in Hawaii County during the 2000-2015 period surged 281.9%, the number of firearms registered rose 252.3%, and the number of firearms imported skyrocketed 301.7% (i.e., more than quadrupled).

**Figure 6: Firearm Registration Trends,
Hawaii County, 2000-2015**

| | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Applications Processed | 1,146 | 1,172 | 1,155 | 1,381 | 1,283 | 1,389 | 1,595 | 1,794 | 1,979 | 2,426 | 2,420 | 2,975 | 3,881 | 5,355 | 4,463 | 4,377 |
| Firearms Registered | 2,903 | 2,753 | 2,973 | 3,290 | 3,138 | 3,382 | 3,976 | 4,377 | 5,106 | 6,727 | 5,886 | 6,603 | 10,134 | 14,458 | 10,930 | 10,228 |
| Firearms Imported | 1,241 | 1,196 | 1,286 | 1,376 | 1,344 | 1,615 | 1,768 | 1,813 | 2,327 | 3,183 | 2,732 | 2,990 | 5,272 | 7,036 | 5,413 | 4,985 |

5

Figure 7 reveals that, between 2000 and 2015 in Maui County, the number of permits processed annually increased 174.0%, the number of firearms registered climbed 244.8%, and the tally of firearms imported rose 237.3%.



**Figure 7: Firearm Registration Trends, Maui County, 2000-2015**

|  | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Applications Processed | 795 | 894 | 870 | 784 | 851 | 867 | 825 | 1,018 | 1,264 | 1,568 | 1,796 | 1,965 | 2,777 | 2,794 | 2,086 | 2,178 |
| Firearms Registered | 1,466 | 1,486 | 1,482 | 1,700 | 2,022 | 1,889 | 2,098 | 2,251 | 2,634 | 3,316 | 3,982 | 4,569 | 6,791 | 7,567 | 4,736 | 5,055 |
| Firearms Imported | 641 | 594 | 635 | 699 | 936 | 935 | 993 | 972 | 780 | 1,533 | 1,661 | 2,108 | 3,124 | 3,357 | 2,052 | 2,162 |

As shown in Figure 8, the number of permits processed annually in Kauai County from 2000 through 2015 jumped 229.8%, the number of firearms registered surged 232.8%, and the number of firearms imported soared 251.3%.

**Figure 8: Firearm Registration Trends, Kauai County, 2000-2015**

|  | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Applications Processed | 483 | 386 | 582 | 379 | 500 | 606 | 774 | 903 | 887 | 876 | 847 | 983 | 1,279 | 1,713 | 1,741 | 1,593 |
| Firearms Registered | 1,011 | 1,009 | 1,238 | 855 | 977 | 1,404 | 1,445 | 1,515 | 1,615 | 2,004 | 1,669 | 2,099 | 2,679 | 3,651 | 3,807 | 3,365 |
| Firearms Imported | 429 | 416 | 547 | 343 | 429 | 433 | 681 | 547 | 605 | 731 | 652 | 982 | 1,252 | 1,680 | 1,802 | 1,507 |

6

## Permit Application Denials

As noted earlier, 1.1% (212) of all permit applications in Hawaii during 2015 were denied for cause. Hawaii's 2015 denial rate is less than half of the 2.3% rate reported for all state and local agencies conducting background checks for firearm permits and transfers in 2012 (Bureau of Justice Statistics, 2014; the most current national data as of March 2016).

The vast majority of denials in Hawaii during 2015 were for longarm (179, or 84.4%) rather than handgun (33, or 15.6%) permit applications. Following a trend since this annual report was first published, longarm permit applications in 2015 were denied at a rate (1.7%) that is several times greater than the denial rate for handgun permit applications (0.4%).

Over one-third (80, or 37.7%) of the denials in 2015 were due to applicants' prior criminal convictions, while 11.3% (24) were due to pending cases.

It is a misdemeanor in the State of Hawaii to provide falsified information on firearm permit applications, unless the falsified information pertains to criminal or mental health histories, in which case it is a felony offense (Hawaii Revised Statutes section 134-17). In 2015, falsified criminal or mental health information or both were provided in 67.5% (143) of the 212 denial cases; falsified information pertaining to anything other than criminal or mental health histories was provided in 0.9% (2) of the cases; and no falsified information was provided in 31.6% (67) of the cases.

Table 2 presents broad categorical data on the reasons for denied permit applications.

### Table 2:  Reasons for Denied Firearm Permit Applications, State of Hawaii, 2015

|  | # | %* |
|---|---|---|
| "Other" Offense | 85 | 40.1 |
| Mental Health Issues/Treatment** | 71 | 33.5 |
| Drug Offense | 29 | 13.7 |
| Domestic Violence Offense | 24 | 11.3 |
| Restraining/Protective Order | 15 | 7.1 |
| Other (e.g., non-U.S. citizen, dishonorable discharge from military) | 15 | 7.1 |
| Disqualifying Juvenile Offense | 3 | 1.4 |

  *   Figures do not total 100% due to multiple reasons for some denials.

  **   Denials for mental health issues or treatment can be satisfactorily resolved with a verified doctor's note stating that the applicant is no longer adversely affected.  While an original denial cannot be appealed or overturned, a new application may be submitted and the appropriate permit will be issued. It is unknown how many applicants who are initially denied for mental health reasons successfully reapply for permits.

Table 3 (next page) provides a breakdown of information entered into a description field for each denial.

**Table 3:  Descriptions of Firearm Permit Application Denials,
State of Hawaii, 2015**

| [N = 212] | # | %* |
|---|---|---|
| abuse of family/household member | 10 | 4.7 |
| abuse of family/household member + harassment + alcohol treatment | 1 | 0.5 |
| alcohol abuse treatment | 5 | 2.4 |
| alcohol addiction | 1 | 0.5 |
| assault | 27 | 12.7 |
| assault + abuse of family/household member | 1 | 0.5 |
| assault + abuse of family/household member + mental health treatment | 1 | 0.5 |
| assault + burglary + motor vehicle theft + harassment | 1 | 0.5 |
| assault + mental health issue/treatment | 1 | 0.5 |
| assault/battery on police + abuse of family/household member | 2 | 0.9 |
| battery | 6 | 2.8 |
| criminal property damage | 3 | 1.4 |
| deferred acceptance plea (current) | 2 | 0.9 |
| disorderly conduct | 7 | 3.3 |
| disqualifying juvenile offense(s) | 2 | 0.9 |
| disqualifying juvenile offense(s) + mental health issue/treatment | 1 | 0.5 |
| domestic battery | 1 | 0.5 |
| drug addiction | 1 | 0.5 |
| drug offense(s) | 3 | 1.4 |
| drug offense(s) + mental health issue/treatment | 2 | 0.9 |
| felony conviction (unspecified) | 1 | 0.5 |
| felony disposition info needed + substance abuse treatment | 1 | 0.5 |
| harassment | 6 | 2.8 |
| harassment + alcohol abuse treatment | 2 | 0.9 |
| insane suspect case | 1 | 0.5 |
| interference with a flight crew | 1 | 0.5 |
| medical clearance needed | 5 | 2.4 |
| medical marijuana patient | 17 | 8.0 |
| mental health issue/treatment | 40 | 18.9 |
| mental health issue/treatment + substance abuse treatment | 1 | 0.5 |
| motor vehicle theft | 2 | 0.9 |
| motor vehicle theft + substance abuse treatment | 1 | 0.5 |
| murder + mental health issue/treatment | 1 | 0.5 |
| no response from Florida re criminal property damage | 1 | 0.5 |
| no response from Arizona re drug offense | 1 | 0.5 |
| no response from California re battery, resisting arrest, drug offense(s), disorderly conduct | 2 | 0.9 |
| no response from California re fight/challenge case | 1 | 0.5 |
| no response from Colorado re assault, domestic violence, and harassment charges | 1 | 0.5 |
| no response from Guam re assault + family violence | 1 | 0.5 |
| no response from Indiana re theft case | 1 | 0.5 |
| no response from Kansas re motor vehicle theft | 1 | 0.5 |
| positive field test for drug(s) | 2 | 0.9 |
| refused to sign mental health check authorization | 1 | 0.5 |
| resisting arrest + disorderly conduct | 1 | 0.5 |
| restraining order | 10 | 4.7 |
| restraining order + battery & domestic violence (mainland) | 1 | 0.5 |
| restraining order + domestic violence (mainland) + mental health issue/treatment | 1 | 0.5 |
| restraining order + drug offense(s) + weapon offense + alcohol abuse treatment | 1 | 0.5 |
| restraining order + medical clearance needed | 1 | 0.5 |
| restraining order + warrant (unspecified) | 1 | 0.5 |
| robbery | 2 | 0.9 |
| sex with a minor (felony) | 1 | 0.5 |
| sexual assault | 1 | 0.5 |
| substance abuse treatment | 1 | 0.5 |
| suicide attempt | 1 | 0.5 |
| terroristic threatening | 1 | 0.5 |
| terroristic threatening + resisting arrest + domestic violence (mainland) | 1 | 0.5 |
| theft | 6 | 2.8 |
| theft + drug & alcohol abuse treatment | 1 | 0.5 |
| theft + provided false DOB and SSN | 1 | 0.5 |
| warrant (California) | 1 | 0.5 |
| warrant (DUI) | 1 | 0.5 |
| warrant (traffic) | 3 | 1.4 |
| warrant (unspecified) | 4 | 1.9 |
| warrant (unspecified) + alcohol abuse treatment | 1 | 0.5 |
| weapon offense | 1 | 0.5 |

* Due to rounding, figures may not total 100%.

## Licenses to Carry Firearms

Hawaii's county police departments also process license applications for the open and/or concealed carry of firearms in public.  Statewide in 2015, 221 employees of private security firms were issued carry licenses, and eight (3.5%) were denied.   A statewide total of 44 private citizens applied for a concealed carry license in 2015, including 27 in the City & County of Honolulu, 12 in Hawaii County, three in Kauai County, and two in Maui County; all applicants were denied by the respective county's chief of police.

In early-2015, it was learned that the Hawaii County Police Department had previously (2000-2014) not correctly reported its processing of private citizen-type concealed carry license applications. Their reporting procedures have since been corrected, and their historical data are presented below.

**Table 4:  Private Citizen-type Concealed Carry License
Applications and Approvals, Hawaii County
Police Department, 2000-2014**

| Year | Applications | Approvals |
|------|-------------:|----------:|
| **2000** | 11 | 0 |
| **2001** | 1 | 0 |
| **2002** | 2 | 0 |
| **2003** | 3 | 0 |
| **2004** | 1 | 0 |
| **2005** | 2 | 0 |
| **2006** | 1 | 0 |
| **2007** | 1 | 0 |
| **2008** | 2 | 0 |
| **2009** | 2 | 0 |
| **2010** | 4 | 0 |
| **2011** | 9 | 0 |
| **2012** | 8 | 0 |
| **2013** | 7 | 0 |
| **2014** | 14 | 0 |

## Confiscations

One legally prohibited weapon–an inoperable automatic rifle in Maui County–was confiscated by registration personnel statewide in 2015.

## Acknowledgements

This report was prepared with input and assistance from the county police departments' firearm registration personnel: **Jeaneth Panoy**, Records Clerk, Kauai County Police Department; **Melanie Wong**, Records Clerk, Maui County Police Department; the Firearm Registration Section, in particular **Suzy Yamasaki**, Records Clerk, City & County of Honolulu Police Department; and **Arlene Young**, Records Clerk, Hawaii County Police Department.  As the volume of registration activity documented in this report demonstrates, these dedicated professionals work hard to serve their communities.

## Reference

Bureau of Justice Statistics (December 2014). *Background checks for firearms transfers, 2012.* <http://www.bjs.gov/content/pub/pdf/bcft12st.pdf>. U.S. Department of Justice: Office of Justice Programs.  NCJ 247815.

9

# EXHIBIT D

# Firearm Registrations in Hawaii, 2014

**Department of the Attorney General    •    Crime Prevention & Justice Assistance Division    •    ag.hawaii.gov/cpja**

Russell A. Suzuki, Attorney General

Julie Ebato, Administrator
March 2015

*Prepared by*
*Paul Perrone, Chief of Research & Statistics*

Hawaii Revised Statutes section 134-14 requires the county police departments to provide to the Department of the Attorney General a monthly report of firearm registration activity. The data from these reports were compiled in order to provide the statistics presented herein for Calendar Year 2014. This is the fifteenth annual publication of *Firearm Registrations in Hawaii*.

## Permit Applications Processed, Issued, Voided, and Denied

A total of 19,365 personal/private firearm permit applications were processed statewide during 2014, marking the first decrease since 2006 and a 14.9% decline from the record high of 22,765 applications processed in 2013. Of the applications processed in 2014, 94.5% were approved and resulted in issued permits; 4.8% were approved but subsequently voided after the applicants failed to return for their permits within the specified time period; and a record low of 0.8% were denied due to one or more disqualifying factors. Figure 1 reveals additional information. Denials are described in greater detail throughout this report.

### Figure 1:  Firearm Permit Application Outcomes, State of Hawaii, 2014

(N = 19,365 Total Applications Processed)



Applications Denied
148 (0.8%)

Applications Approved/
Permits Issued
18,296 (94.5%)

Applications Approved/
Permits Voided
921 (4.8%)

## Registrations and Importations

The 18,296 permits issued statewide in 2014 cover a total of 48,324 firearms registered, marking a major, 20.5% decrease from the record high total of 60,757 firearms registered in 2013. Over half (25,772, or 53.3%) of the firearms registered during 2014 were imported from out-of-state, with the remainder (22,552 or 46.7%) accounted for by transfers of firearms that were previously registered in Hawaii. Although there is no way to track the number of firearms that permanently leave the state, independent estimates made during the late-1990s by the Department of the Attorney General and the City & County of Honolulu Police Department conservatively placed the total number of privately owned firearms in Hawaii at roughly one million. From 2000 through 2014, a total of 420,409 firearms were registered (including some more than once) and 206,536 were imported.

## Permits and Registrations, by Firearm Type

In the State of Hawaii, annual permits are issued in order to acquire an unlimited number of longarms (rifles and shotguns), while single-use permits are issued to acquire specific handguns. By firearm type, 53.3% (9,746) of the 18,296 total permits issued during 2014 were to acquire longarms, while 46.7% (8,550) were handgun permits. The tally of handgun permits is perennially confounded, however, as some of the county police departments issue a single permit listing all handguns that will be acquired simultaneously from the same source (i.e., one permit per transaction, per Hawaii Revised Statutes section 134-2(e)), while the other departments issue one permit per handgun even if they are acquired in the same transaction.

Longarms accounted for 59.2% (28,620) of all firearms registered in 2014 (48,324). Broken out further, rifles and shotguns comprised 46.7% (22,548) and 12.6% (6,072) of total registrations, respectively. The remaining 40.8% (19,704) of firearms registered in 2014 were handguns.

## County Comparisons and Registration Trends

Table 1 shows the distribution of firearm registration activity during 2014 across the four counties and for the State of Hawaii overall.

### Table 1:  Firearm Registration Activity, State of Hawaii and Counties, 2014

|  | C&C of Honolulu | Hawaii County | Maui County | Kauai County | State Total |
|---|---|---|---|---|---|
| Applications Processed | 11,075 | 4,463 | 2,086 | 1,741 | **19,365** |
| Applications Approved/ Permits Issued | 10,418 | 4,376 | 1,939 | 1,563 | **18,296** |
| Applications Approved/ Permits Voided | 635 | 25 | 108 | 153 | **921** |
| Applications Denied | 22 | 62 | 39 | 25 | **148** |
| Denial Rate | 0.2% | 1.4% | 1.9% | 1.4% | **0.8%** |
| Firearms Registered | 28,851 | 10,930 | 4,736 | 3,807 | **48,324** |
| Firearms Imported | 16,505 | 5,413 | 2,052 | 1,802 | **25,772** |

2

As compared to Hawaii's resident population distribution, firearm registration activity occurred disproportionately across the four counties during 2014 (see Figure 2). (If the counties' registration activity occurred in equal proportion to their respective population sizes, then the three bars depicted for each county in Figure 2 would be of equal height and value.)

Based on its population size, 19% fewer permit applications were processed in the City & County of Honolulu during 2014 than would be expected, and 79% fewer denials were recorded. Hawaii County reported 64% more processed applications and 200% more denials than expected. Maui County processed as many applications as would be expected for its population size, and denied 136% more applications. Kauai County processed 80% more applications and denied 240% more applications than anticipated.

**Figure 2:  County Distribution of Permit Applications Processed and Rejected (2014) versus Resident Population Distribution (2013)**



Figure 3 (next page) presents historical data on denial rates for the State of Hawaii and each of its four counties. Notable are the consistently higher denial rates reported by Hawaii County and Maui County, as compared to the lower rates reported by Kauai County and the City & County of Honolulu.

3



**Figure 3: Firearm Permit Application Denial Rates,
State of Hawaii and Counties, 2000-2014**

Firearm registration activity increased dramatically over the course of the 14 years for which these data have been systematically compiled and reported (see Figure 4). From 2000 through 2014, the number of statewide permit applications processed annually climbed 298.4%, the number of firearms registered rose 354.9%, and the number of firearms imported surged 356.6%.



**Figure 4: Firearm Registration Trends,
State of Hawaii, 2000-2014**

| | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Applications Processed | 6,489 | 6,829 | 6,990 | 6,792 | 6,842 | 8,695 | 8,049 | 8,835 | 10,527 | 12,606 | 12,801 | 15,375 | 21,864 | 22,765 | 19,365 |
| Firearms Registered | 13,617 | 14,305 | 15,822 | 14,924 | 14,661 | 17,982 | 19,971 | 21,784 | 25,996 | 33,678 | 31,390 | 36,804 | 50,394 | 60,757 | 48,324 |
| Firearms Imported | 7,228 | 6,567 | 7,416 | 6,778 | 7,595 | 8,563 | 9,830 | 10,401 | 11,978 | 16,897 | 15,212 | 17,949 | 23,548 | 30,802 | 25,772 |

4

Figure 5 shows that, between 2000 and 2014 in the City & County of Honolulu, the annual tally of permits processed increased 272.4%, the number of firearms registered rose 350.3%, and the number of firearms imported climbed 335.7%.

**Figure 5: Firearm Registration Trends,
City & County of Honolulu, 2000-2014**



| | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Applications Processed | 4,065 | 4,377 | 4,383 | 4,248 | 4,208 | 5,833 | 4,855 | 5,120 | 6,397 | 7,736 | 7,738 | 9,452 | 13,927 | 12,903 | 11,075 |
| Firearms Registered | 8,237 | 9,057 | 10,129 | 9,079 | 8,524 | 11,307 | 12,452 | 13,641 | 16,641 | 21,631 | 19,853 | 23,470 | 30,289 | 35,081 | 28,851 |
| Firearms Imported | 4,917 | 4,361 | 4,948 | 4,360 | 4,886 | 5,580 | 6,388 | 7,069 | 8,266 | 11,450 | 10,167 | 11,869 | 13,900 | 18,729 | 16,505 |

As shown in Figure 6, the number of permits processed annually in Hawaii County during the 2000-2014 period surged 389.4%, the number of firearms registered rose 376.5%, and the number of firearms imported skyrocketed 436.2%.

**Figure 6: Firearm Registration Trends,
Hawaii County, 2000-2014**

| | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Applications Processed | 1,146 | 1,172 | 1,155 | 1,381 | 1,283 | 1,389 | 1,595 | 1,794 | 1,979 | 2,426 | 2,420 | 2,975 | 3,881 | 5,355 | 4,463 |
| Firearms Registered | 2,903 | 2,753 | 2,973 | 3,290 | 3,138 | 3,382 | 3,976 | 4,377 | 5,106 | 6,727 | 5,886 | 6,603 | 10,134 | 14,458 | 10,930 |
| Firearms Imported | 1,241 | 1,196 | 1,286 | 1,376 | 1,344 | 1,615 | 1,768 | 1,813 | 2,327 | 3,183 | 2,732 | 2,990 | 5,272 | 7,036 | 5,413 |

Figure 7 reveals that, between 2000 and 2014 in Maui County, the number of permits processed annually increased 262.4%, the number of firearms registered climbed 323.1%, and the tally of firearms imported rose 320.1%.



**Figure 7: Firearm Registration Trends, Maui County, 2000-2014**

| | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Applications Processed | 795 | 894 | 870 | 784 | 851 | 867 | 825 | 1,018 | 1,264 | 1,568 | 1,796 | 1,965 | 2,777 | 2,794 | 2,086 |
| Firearms Registered | 1,466 | 1,486 | 1,482 | 1,700 | 2,022 | 1,889 | 2,098 | 2,251 | 2,634 | 3,316 | 3,982 | 4,569 | 6,791 | 7,567 | 4,736 |
| Firearms Imported | 641 | 594 | 635 | 699 | 936 | 935 | 993 | 972 | 780 | 1,533 | 1,661 | 2,108 | 3,124 | 3,357 | 2,052 |

As shown in Figure 8, the number of permits processed annually in Kauai County from 2000 through 2014 jumped 360.5%, the number of firearms registered surged 376.6%, and the number of firearms imported soared 420.0%.

**Figure 8: Firearm Registration Trends, Kauai County, 2000-2014**

| | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Applications Processed | 483 | 386 | 582 | 379 | 500 | 606 | 774 | 903 | 887 | 876 | 847 | 983 | 1,279 | 1,713 | 1,741 |
| Firearms Registered | 1,011 | 1,009 | 1,238 | 855 | 977 | 1,404 | 1,445 | 1,515 | 1,615 | 2,004 | 1,669 | 2,099 | 2,679 | 3,651 | 3,807 |
| Firearms Imported | 429 | 416 | 547 | 343 | 429 | 433 | 681 | 547 | 605 | 731 | 652 | 982 | 1,252 | 1,680 | 1,802 |

6

**Permit Application Denials**

As noted earlier, a record low of 0.8% (148) of all permit applications in Hawaii during 2014 were denied for cause. Hawaii's 2014 denial rate is 65.2% (1.5 percentage points) below the 2.3% rate reported for all state and local agencies conducting background checks for firearm permits and transfers in 2012 (Bureau of Justice Statistics, 2014; the most current national data as of February 2015).

The vast majority of denials in Hawaii during 2014 were for longarm (122, or 82.4%) rather than handgun (26, or 17.6%) permit applications. Following a trend since this annual report was first published, longarm permit applications in 2014 were denied at a rate (1.2%) that is several times greater than the denial rate for handgun permit applications (0.3%).

Over half (83, or 56.1%) of the denials in 2014 were due to applicants' prior criminal convictions, while 8.8% (13) were due to pending charges.

It is a misdemeanor in the State of Hawaii to provide falsified information on firearm permit applications, unless the falsified information pertains to criminal or mental health histories, in which case it is a felony offense (Hawaii Revised Statutes section 134-17). In 2014, falsified criminal or mental health information or both were provided in 79.7% (118) of the 148 denial cases; falsified information pertaining to anything other than criminal or mental health histories was provided in 2.0% (3) of the cases; and no falsified information was provided in 18.2% (27) of the cases.

Table 2 presents broad categorical data on the reasons for denied permit applications.

**Table 2:  Reasons for Denied Firearm Permit
Applications, State of Hawaii, 2014**

|  | # | %* |
|---|---|---|
| "Other" Offense | 72 | 48.6 |
| Mental Health Issues/Treatment** | 33 | 22.3 |
| Drug Offense | 25 | 16.9 |
| Domestic Violence Offense | 19 | 12.8 |
| Restraining/Protective Order | 8 | 5.4 |
| Disqualifying Juvenile Offense | 7 | 4.7 |
| Other (e.g., non-U.S. citizen, dishonorable discharge from military) | 5 | 3.4 |

   *   Figures do not total 100% due to multiple denial reasons for some applicants.

   **   Denials for mental health issues or treatment can be satisfactorily resolved with a verified doctor's note stating that the applicant is no longer adversely affected.  While an original denial cannot be appealed or overturned, a new application may be submitted and the appropriate permit will be issued. It is unknown how many applicants who are initially denied for mental health reasons successfully reapply for permits.

Table 3 (next page) provides a breakdown of information entered into a description field for each denial.

**Table 3:  Descriptions of Firearm Permit Application Denials,
State of Hawaii, 2014**

| [N = 148] | # | %* |
|---|---|---|
| abuse of family/household member | 11 | 7.4 |
| abuse of family/household member + harassment | 1 | 0.7 |
| accidental death/injury | 1 | 0.7 |
| affray (mainland) | 1 | 0.7 |
| alcohol/substance abuse treatment | 1 | 0.7 |
| arson | 1 | 0.7 |
| assault | 25 | 16.9 |
| assault + abuse of family/household member + restraining order | 1 | 0.7 |
| assault + alcohol and substance abuse treatment + felony DUIs | 1 | 0.7 |
| assault + disqualifying juvenile offenses | 1 | 0.7 |
| assaults | 1 | 0.7 |
| assaults + anger management treatment | 1 | 0.7 |
| breaking and entering | 1 | 0.7 |
| burglary | 1 | 0.7 |
| criminal property damage | 1 | 0.7 |
| disorderly conduct | 4 | 2.7 |
| disqualifying juvenile offense(s) | 4 | 2.7 |
| doctor's recommendation | 2 | 1.4 |
| domestic violence conviction (mainland) | 1 | 0.7 |
| drug addiction | 3 | 2.0 |
| drug offense | 6 | 4.1 |
| drug offense + alcohol abuse treatment | 1 | 0.7 |
| drug possession | 1 | 0.7 |
| DUI (felony) | 1 | 0.7 |
| felony conviction (unspecified) | 1 | 0.7 |
| firearm applied for is not legally registered | 2 | 1.4 |
| harassment | 12 | 8.1 |
| medical clearance needed | 3 | 2.0 |
| medical marijuana patient | 4 | 2.7 |
| mental health issue (unspecified) | 2 | 1.4 |
| mental health treatment | 9 | 6.1 |
| mental health treatment + substance abuse treatment | 3 | 2.0 |
| motor vehicle theft | 1 | 0.7 |
| no response from California and Ohio re assault cases | 1 | 0.7 |
| no response from California re juvenile drug offense | 1 | 0.7 |
| obstructing police | 2 | 1.4 |
| positive field test (drugs) | 2 | 1.4 |
| reckless endangerment | 1 | 0.7 |
| resisting arrest | 1 | 0.7 |
| resisting arrest + disorderly conduct | 1 | 0.7 |
| restraining order | 7 | 4.7 |
| sexual assault | 2 | 1.4 |
| substance abuse treatment | 2 | 1.4 |
| suicide attempt | 2 | 1.4 |
| suicide threat | 1 | 0.7 |
| terroristic threatening | 4 | 2.7 |
| terroristic threatening + disorderly conduct | 1 | 0.7 |
| terroristic threatening + mental health treatment | 1 | 0.7 |
| theft | 2 | 1.4 |
| warrant | 2 | 1.4 |
| warrant + drug offenses | 2 | 1.4 |
| warrant + mental health treatment | 1 | 0.7 |
| weapons offense | 2 | 1.4 |
| weapons offense + mental health treatment | 1 | 0.7 |

* Due to rounding, figures may not total 100%.

**Licenses to Carry Firearms**

Hawaii's county police departments also process license applications for the open and/or concealed carry of firearms in public. Statewide in 2014, 218 employees of private security firms were issued carry licenses, and two (0.9%) were denied. Nineteen private citizens applied for a concealed carry license in the City & County of Honolulu, and two applied in Kauai County; all 21 applicants were denied at the discretion of the respective chief of police.

**Confiscations**

The county police departments reported that no prohibited firearms (e.g., machine guns, firearms with defaced serial numbers, longarms below the legal barrel length, "assault pistols") were confiscated by firearm registration personnel during 2014.

**Acknowledgements**

This report was prepared with input and assistance from the county police departments' firearm registration personnel: **Jeaneth Panoy**, Records Clerk, Kauai County Police Department; **Melanie Wong**, Records Clerk, Maui County Police Department; the Firearm Registration Section, in particular **Suzy Yamasaki**, Records Clerk, City & County of Honolulu Police Department; and **Arlene Young**, Records Clerk, Hawaii County Police Department. As the volume of registration activity documented in this report demonstrates, these dedicated professionals work hard to serve their communities.

**Reference**

Bureau of Justice Statistics (December 2014). *Background checks for firearms transfers, 2012*. <http://www.bjs.gov/content/pub/pdf/bcft12st.pdf>. U.S. Department of Justice: Office of Justice Programs. NCJ 247815.

---

*This report is available in PDF format from the Crime
Prevention & Justice Assistance Division's web site:*
**ag.hawaii.gov/cpja**

---

# EXHIBIT E

# Firearm Registrations in Hawaii, 2013

**Department of the Attorney General    ●    Crime Prevention & Justice Assistance Division    ●    ag.hawaii.gov/cpja**

David M. Louie, Attorney General
Russell A. Suzuki, First Deputy Attorney General

Julie Ebato, Administrator
March 2014

*Prepared by*
*Paul Perrone, Chief of Research & Statistics*

Hawaii Revised Statutes section 134-14 requires the county police departments to provide to the Department of the Attorney General a monthly report of firearm registration activity. The data from these reports were compiled in order to provide the statistics presented herein for Calendar Year 2013. This is the fourteenth annual publication of *Firearm Registrations in Hawaii*. Given very large increases in statewide registration activity during the past several years, a variety of new figures and analyses were added to the report, starting with last year's edition (see pages 5-8).

### Permit Applications Processed, Issued, Voided, and Denied

A record high total of 22,765 personal/private firearm permit applications were processed statewide during 2013, marking a 4.6% increase from the previous record high of 21,864 applications processed in 2012. Of the applications processed in 2013, 94.6% were approved and resulted in issued permits; 4.3% were approved but subsequently voided after the applicants failed to return for their permits within the specified time period; and 1.0% were denied due to one or more disqualifying factors. Figure 1 reveals additional information.  Denials are described in greater detail throughout this report.

## Figure 1:  Firearm Permit Application Outcomes, State of Hawaii, 2013

(N = 22,765 Total Applications Processed)



Applications Denied
232 (1.0%)

Applications Approved/
Permits Issued
21,544 (94.6%)

Applications Approved/
Permits Voided
989 (4.3%)

## Registrations and Importations

The 21,544 permits issued statewide in 2013 cover a record high total of 60,757 firearms registered, marking a major, 20.6% increase from the previous record high of 50,394 firearms registered in 2012. Just over half (30,802, or 50.7%) of the firearms registered during 2013 were imported from out-of-state, with the remainder (29,955, or 49.3%) accounted for by transfers of firearms that were previously registered in Hawaii. Although there is no way to track the number of firearms that permanently leave the state, independent estimates made during the late-1990s by the Department of the Attorney General and the City & County of Honolulu Police Department placed the total number of privately owned firearms in Hawaii at roughly one million. A total of 180,764 firearms were registered (some more than once) from 2000 through 2012.

## Permits and Registrations, by Firearm Type

In the State of Hawaii, annual permits are issued in order to acquire an unlimited number of longarms (rifles and shotguns), while single-use permits are issued to acquire specific handguns. By firearm type, 52.5% (11,314) of the 21,544 total permits issued during 2013 were to acquire longarms, while 47.5% (10,230) were handgun permits. The tally of handgun permits is perennially confounded, however, as some of the county police departments issue a single permit listing all handguns that will be acquired simultaneously from the same source (i.e., one permit per transaction, per Hawaii Revised Statutes section 134-2(e)), while the other departments issue one permit per handgun even if they are acquired in the same transaction.

Longarms accounted for 62.1% (37,728) of all firearms registered in 2013 (60,757). Broken out further, rifles and shotguns comprised 49.9% (30,329) and 12.2% (7,399) of total registrations, respectively. The remaining 37.9% (23,029) of registered firearms were handguns.

## County Comparisons and Registration Trends

Table 1 shows the distribution of firearm registration activity during 2013 across the four counties and for the State of Hawaii overall.

### Table 1:  Firearm Registration Activity, State of Hawaii and Counties, 2013

|  | C&C of Honolulu | Hawaii County | Maui County | Kauai County | State Total |
|---|---|---|---|---|---|
| Applications Processed | 12,903 | 5,355 | 2,794 | 1,713 | 22,765 |
| Applications Approved/ Permits Issued | 12,144 | 5,212 | 2,631 | 1,557 | 21,544 |
| Applications Approved/ Permits Voided | 709 | 41 | 107 | 132 | 989 |
| Applications Denied | 50 | 102 | 56 | 24 | 232 |
| Denial Rate | 0.4% | 1.9% | 2.0% | 1.4% | 1.0% |
| Firearms Registered | 35,081 | 14,458 | 7,567 | 3,651 | 60,757 |
| Firearms Imported | 18,729 | 7,036 | 3,357 | 1,680 | 30,802 |

As compared to Hawaii's resident population distribution, firearm registration activity occurred disproportionately across the four counties during 2013 (see Figure 2). (If the counties' registration activity occurred in equal proportion to their respective population sizes, then the three bars depicted for each county in Figure 2 would be of equal height and value.)

Based on its population size, 19% fewer permit applications were processed in the City & County of Honolulu during 2013 than would be expected, and 69% fewer denials were reported.  Hawaii County recorded 71% more processed applications and 214% more denials than expected. Maui County processed 9% more applications and denied 118% more applications than anticipated. Kauai County processed 60% more applications and denied 100% more applications than expected.

**Figure 2:  County Distribution of Permit Applications Processed and Rejected (2013) versus Resident Population Distribution (2012)**



Figure 3 (next page) presents historical data on denial rates for the State of Hawaii and each of its four counties. Notable are the comparatively high denial rates reported by Hawaii County and Maui County throughout the entire 2000-2013 time period.

3

**Figure 3: Firearm Permit Application Denial Rates,
State of Hawaii and Counties, 2000-2013**



Firearm registration activity increased dramatically over the course of the 14 years for which these data have been systematically compiled and reported (see Figure 4).  From 2000 through 2013, the number of statewide permit applications processed annually climbed 350.8%, the number of firearms registered soared 446.2%, and the number of firearms imported surged 426.1%.

**Figure 4: Firearm Registration Trends,
State of Hawaii, 2000-2013**



| | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Applications Processed | 6,489 | 6,829 | 6,990 | 6,792 | 6,842 | 8,695 | 8,049 | 8,835 | 10,527 | 12,606 | 12,801 | 15,375 | 21,864 | 22,765 |
| Firearms Registered | 13,617 | 14,305 | 15,822 | 14,924 | 14,661 | 17,982 | 19,971 | 21,784 | 25,996 | 33,678 | 31,390 | 36,804 | 50,394 | 60,757 |
| Firearms Imported | 7,228 | 6,567 | 7,416 | 6,778 | 7,595 | 8,563 | 9,830 | 10,401 | 11,978 | 16,897 | 15,212 | 17,949 | 23,548 | 30,802 |

4

**Figure 5: Firearm Registration Trends,
City & County of Honolulu, 2000-2013**



|  | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ◆ Applications Processed | 4,065 | 4,377 | 4,383 | 4,248 | 4,208 | 5,833 | 4,855 | 5,120 | 6,397 | 7,736 | 7,738 | 9,452 | 13,927 | 12,903 |
| ▲ Firearms Registered | 8,237 | 9,057 | 10,129 | 9,079 | 8,524 | 11,307 | 12,452 | 13,641 | 16,641 | 21,631 | 19,853 | 23,470 | 30,289 | 35,081 |
| ■ Firearms Imported | 4,917 | 4,361 | 4,948 | 4,360 | 4,886 | 5,580 | 6,388 | 7,069 | 8,266 | 11,450 | 10,167 | 11,869 | 13,900 | 18,729 |

Figure 5 shows that, between 2000 and 2013 in the City & County of Honolulu, the annual tally of permits processed increased 317.4%, the number of firearms registered rose 425.9%, and the number of firearms imported climbed 380.9%.

**Figure 6: Firearm Registration Trends,
Hawaii County, 2000-2013**



|  | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ◆ Applications Processed | 1,146 | 1,172 | 1,155 | 1,381 | 1,283 | 1,389 | 1,595 | 1,794 | 1,979 | 2,426 | 2,420 | 2,975 | 3,881 | 5,355 |
| ▲ Firearms Registered | 2,903 | 2,753 | 2,973 | 3,290 | 3,138 | 3,382 | 3,976 | 4,377 | 5,106 | 6,727 | 5,886 | 6,603 | 10,134 | 14,458 |
| ■ Firearms Imported | 1,241 | 1,196 | 1,286 | 1,376 | 1,344 | 1,615 | 1,768 | 1,813 | 2,327 | 3,183 | 2,732 | 2,990 | 5,272 | 7,036 |

As shown in Figure 6, the number of permits processed annually in Hawaii County from 2000 through 2013 surged 467.3%, the number of firearms registered soared 498.0%, and the number of firearms imported skyrocketed 567.0%.



**Figure 7: Firearm Registration Trends,**
**Maui County, 2000-2013**

| | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ◆ Applications Processed | 795 | 894 | 870 | 784 | 851 | 867 | 825 | 1,018 | 1,264 | 1,568 | 1,796 | 1,965 | 2,777 | 2,794 |
| ▲ Firearms Registered | 1,466 | 1,486 | 1,482 | 1,700 | 2,022 | 1,889 | 2,098 | 2,251 | 2,634 | 3,316 | 3,982 | 4,569 | 6,791 | 7,567 |
| ■ Firearms Imported | 641 | 594 | 635 | 699 | 936 | 935 | 993 | 972 | 780 | 1,533 | 1,661 | 2,108 | 3,124 | 3,357 |

Figure 7 reveals that, between 2000 and 2013 in Maui County, the number of permits processed annually increased 351.4%, the number of firearms registered soared 516.2%, and the tally of firearms imported surged 487.4%.



**Figure 8: Firearm Registration Trends,**
**Kauai County, 2000-2013**

| | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ◆ Applications Processed | 483 | 386 | 582 | 379 | 500 | 606 | 774 | 903 | 887 | 876 | 847 | 983 | 1,279 | 1,713 |
| ▲ Firearms Registered | 1,011 | 1,009 | 1,238 | 855 | 977 | 1,404 | 1,445 | 1,515 | 1,615 | 2,004 | 1,669 | 2,099 | 2,679 | 3,651 |
| ■ Firearms Imported | 429 | 416 | 547 | 343 | 429 | 433 | 681 | 547 | 605 | 731 | 652 | 982 | 1,252 | 1,680 |

As shown in Figure 8, the number of permits processed annually in Kauai County from 2000 through 2013 increased 354.7%, the number of firearms registered rose 361.1%, and the number of firearms imported climbed 391.6%.

6

**Firearm Registration Trends and Firearm-Related Violent Crime Trends**

Given the tremendous increases in statewide firearm registration activity throughout the 2000-2013 period, and in particular the major increases reported for the post-2008 period, it is understandable that some readers might at first glance be alarmed, fearing that these increases have necessarily resulted in commensurate increases in firearm-related violent crime trends. However, as shown in the following figures, such has not been the case.  Figure 9 (below) overlays the trend for firearm registrations atop the trend data for firearm-related violent crimes reported to the State's Uniform Crime Reporting Program (which is also directed by this Department). This analysis reveals that, while firearm registration activity has increased dramatically, the trend for firearm-related violent crimes has remained fairly stable within a narrow range, and decreased substantially during the same period (2008-2012*) in which registration activity increased the most sharply.

Figure 9:  Violent Crimes Committed With Firearms and
Firearms Registered, State of Hawaii, 1994-2013*
Source: Hawaii Department of the Attorney General



\* Notes:

- Per Uniform Crime Reporting Program definition, violent crimes include murders, aggravated assaults,

  and robberies.  Weapon data are not reported for the remaining violent crime category, forcible rape.

- CY 1994 was the first year that statewide crime weapon data were readily available in electronic format.

- Crime data for CY 2013 were not yet available at the time of this report's completion.

- Hawaii's firearm registration statistics reporting program was initiated in CY 2000.

Figures 10 and 11 (next page) demonstrate that, relative to other weapon types, the low prevalence of firearm use during the commission of violent crimes in Hawaii has remained stable for at least the past 18 years in Hawaii, with evidence of becoming even less prevalent since 2007.

**Figure 10:  Violent Crimes Committed With Firearms
and Other Weapons, State of Hawaii, 1994-2012**

Source: Hawaii Department of the Attorney General



**Figure 11:  Proportions of Violent Crimes Committed With
Firearms and Other Weapons, State of Hawaii, 1994-2012**

Source: Hawaii Department of the Attorney General



8

**Permit Application Denials**

As noted earlier, 1.0% (232) of all permit applications in Hawaii during 2013 were denied for cause. Hawaii's 2013 denial rate is 44.5% (0.8 percentage points) below the 1.8% rate reported for all state and local agencies conducting background checks for firearm permits and transfers in 2010 (Bureau of Justice Statistics, 2013; the most current national data as of March 2014).

The vast majority of denials in Hawaii during 2013 were for longarm (190, or 81.9%) rather than handgun (42, or 18.1%) permit applications. Following a trend since this annual report was first published, longarm permit applications in 2013 were denied at a rate that is several times greater than the denial rate for handgun permit applications (1.6% for longarm permit applications versus 0.4% for handgun permit applications).

Over half (130, or 56.0%) of the denials in 2013 were due to applicants' prior criminal convictions, while 11.2% (26) were due to pending charges. The remaining 32.8% (76) of denials in 2013 were not based on the criminal histories of the applicants.

It is a misdemeanor in the State of Hawaii to provide falsified information on firearm permit applications, unless the falsified information pertains to criminal or mental health histories, in which case it is a felony offense (Hawaii Revised Statutes section 134-17). In 2013, falsified criminal or mental health information or both were provided in 75.4% (175) of the 232 denial cases; falsified information pertaining to anything other than criminal or mental health histories was provided in 0.4% (1) of the cases; and no falsified information was provided in 24.1% (56) of the cases.

Table 2 presents broad categorical data on the reasons for denied permit applications.

**Table 2:  Reasons for Denied Firearm Permit Applications, State of Hawaii, 2013**

|  | # | %* |
|---|---|---|
| "Other" Offense | 111 | 47.8 |
| Mental Health Issues/Treatment** | 50 | 21.6 |
| Domestic Violence Offense | 37 | 15.9 |
| Drug Offense | 33 | 14.2 |
| Restraining/Protective Order | 9 | 3.9 |
| Disqualifying Juvenile Offense | 5 | 2.2 |
| Other (e.g., non-U.S. citizen) | 4 | 1.7 |

\*   Figures do not total 100% due to multiple denial reasons for some applicants.

\*\*   Denials for mental health issues or treatment can be satisfactorily resolved with a verified doctor's note stating that the applicant is no longer adversely affected.  While an original denial cannot be appealed or overturned, a new application may be submitted and the appropriate permit will be issued. It is unknown how many applicants who are initially denied for mental health reasons successfully reapply for permits.

Table 3 (next page) provides a breakdown of information entered into a description field for each denial.

**Table 3:  Descriptions of Firearm Permit Application Denials,
State of Hawaii, 2013**

| [N = 232 Denials] | # | %* |
|---|---|---|
| abuse of family/household member | 23 | 9.9 |
| abuse of family/household member + mental health treatment | 2 | 0.9 |
| abuse of family/household member + weapons offense | 1 | 0.4 |
| answered "yes" to three mental health questions | 1 | 0.4 |
| assault | 41 | 17.7 |
| assault + abuse of family/household member | 2 | 0.9 |
| assault + abuse of family/household member + substance abuse treatment | 1 | 0.4 |
| assault + drug offense | 2 | 0.9 |
| assault + harassment | 1 | 0.4 |
| assault + motor vehicle theft | 1 | 0.4 |
| assault + resisting arrest | 1 | 0.4 |
| assault + substance abuse treatment | 1 | 0.4 |
| burglary | 6 | 2.6 |
| coercion + weapons offense | 1 | 0.4 |
| criminal property damage | 1 | 0.4 |
| custodial interference | 1 | 0.4 |
| disorderly conduct | 9 | 3.9 |
| disqualifying juvenile offense(s) | 3 | 1.3 |
| disturbing the peace | 1 | 0.4 |
| drug offense | 22 | 9.5 |
| drug offense + felony offense (unspecified) | 1 | 0.4 |
| gambling offense | 1 | 0.4 |
| harassment | 9 | 3.9 |
| kidnapping + abuse of family/household member + mental health treatment | 1 | 0.4 |
| medical clearance needed | 6 | 2.6 |
| medical marijuana patient | 4 | 1.7 |
| mental health treatment + substance abuse treatment | 1 | 0.4 |
| mental health issue (unspecified) | 1 | 0.4 |
| mental health treatment | 22 | 9.5 |
| misdemeanor crime of violence (unspecified; mainland) | 1 | 0.4 |
| misdemeanor offense (unspecified; mainland) | 1 | 0.4 |
| motor vehicle theft | 1 | 0.4 |
| negligent homicides (2) | 1 | 0.4 |
| no response from California re disposition of drug case | 1 | 0.4 |
| no response from California re disposition of robbery case | 1 | 0.4 |
| no response from California re disposition of spousal abuse case | 1 | 0.4 |
| no response from California re disposition of theft case | 1 | 0.4 |
| no response from Illinois re disposition of assault case | 1 | 0.4 |
| no response from Maryland re disposition of drug case | 1 | 0.4 |
| no response from Vermont re disposition of assault case | 1 | 0.4 |
| no response from Washington re disposition of theft case | 2 | 0.9 |
| refused to submit medical waiver form | 1 | 0.4 |
| resisting arrest | 3 | 1.3 |
| restraining order | 8 | 3.4 |
| restraining order + mental health treatment | 1 | 0.4 |
| robbery | 1 | 0.4 |
| sexual assault | 2 | 0.9 |
| substance abuse treatment | 10 | 4.3 |
| substance abuse treatment as a juvenile | 2 | 0.9 |
| terroristic threatening | 3 | 1.3 |
| terroristic threatening + mental health treatment | 1 | 0.4 |
| theft | 11 | 4.7 |
| theft + mental health treatment | 1 | 0.4 |
| warrant(s) | 3 | 1.3 |
| warrant(s) + substance abuse treatment | 1 | 0.4 |
| weapons offense | 2 | 0.9 |

* Due to rounding, figures may not total 100%.

## Licenses to Carry Firearms

Hawaii's county police departments also process license applications for the open and/or concealed carry of firearms in public. Statewide in 2013, 205 employees of private security firms were issued carry licenses, and two were denied. Seven private citizens applied for a concealed carry license in the City & County of Honolulu; all were denied by the chief of police. One private citizen applied in Kauai County and was approved by the chief.

## Confiscations

During 2013, the Maui Police Department's firearm registration section confiscated two legally prohibited firearms; both were handguns with defaced serial numbers.

## Acknowledgements

This report was prepared with input and assistance from the county police departments' firearm registration personnel: **Debra Agena**, Records Clerk, Maui County Police Department; **Emily Fabro**, Firearms Clerk (January-February), and **Jeaneth Panoy**, Records Clerk (February-December), Kauai County Police Department; the Firearm Registration Section, in particular **Suzy Yamasaki**, Records Clerk, City & County of Honolulu Police Department; and **Arlene Young**, Records Clerk, Hawaii County Police Department. As the volume of registration activity documented in this report demonstrates, these dedicated professionals work hard to serve their communities.

## Reference

Bureau of Justice Statistics (February 2013). *Background checks for firearms transfers, 2010.* <http://www.bjs.gov/content/pub/pdf/bcft10st.pdf>. U.S. Department of Justice: Office of Justice Programs.

---

*This report is available in PDF format from the Crime Prevention & Justice Assistance Division's web site:*
**ag.hawaii.gov/cpja**

---

# EXHIBIT F

# Firearm Registrations in Hawaii, 2012

**Department of the Attorney General  ●  Crime Prevention & Justice Assistance Division  ●  ag.hawaii.gov/cpja**

David M. Louie, Attorney General
Russell A. Suzuki, First Deputy Attorney General

Julie Ebato, Administrator
March 2013

*Prepared by*
*Paul Perrone, Chief of Research & Statistics*

Hawaii Revised Statutes §134-14 requires the county police departments to provide to the Department of the Attorney General a monthly report of firearm registration activity. The data from these reports were compiled in order to provide the statistics presented herein for Calendar Year 2012. This is the thirteenth annual publication of *Firearm Registrations in Hawaii*.  Given very large increases in statewide registration activity during the past several years, and in particular during 2012, several new figures and analyses were added to this year's edition of the report (see pages 5-8).

### Permit Applications Processed, Issued, Voided, and Denied

A record high total of 21,864 personal/private firearm permit applications were processed statewide during 2012, marking a major, 42.2% increase from the previous record high of 15,375 applications processed in 2011. Of the applications processed in 2012, 94.1% were approved and resulted in issued permits; 4.9% were approved but subsequently voided after the applicants failed to return for their permits within the specified time period; and 1.0% were denied due to one or more disqualifying factors. Figure 1 reveals additional information.  Denials are described in greater detail throughout this report.

## Figure 1:  Firearm Permit Application Outcomes, State of Hawaii, 2012

(N = 21,864 Total Applications Processed)



Applications Denied
227 (1.0%)

Applications Approved/
Permits Issued
20,572 (94.1%)

Applications Approved/
Permits Voided
1,065 (4.9%)

## Registrations and Importations

The 20,572 permits issued statewide in 2012 cover a record high total of 50,394 firearms registered, marking a 36.9% increase from the previous record high of 36,804 firearms registered in 2011. Nearly half (23,548, or 46.7%) of the firearms registered during 2012 were imported from out-of-state, with the remainder (26,846, or 53.3%) accounted for by transfers of firearms that were previously registered in Hawaii. Although there is no way to track the number of firearms that permanently leave the state, independent estimates made during the late-1990s by the Department of the Attorney General and the City & County of Honolulu Police Department placed the total number of privately owned firearms in Hawaii at roughly one million.

## Permits and Registrations, by Firearm Type

In the State of Hawaii, annual permits are issued in order to acquire an unlimited number of longarms (rifles and shotguns), while one-time permits are issued to acquire specific handguns. By firearm type, 53.9% (11,079) of the 20,572 total permits issued during 2012 were to acquire longarms, while 46.1% (9,493) were handgun permits. The tally of handgun permits is perennially confounded, however, as some of the county police departments issue a single permit listing all handguns that will be acquired simultaneously from the same source (i.e., one permit per transaction, per Hawaii Revised Statutes section 134-2(e)), while the other departments issue one permit per handgun even if they are acquired in the same transaction.

Longarms accounted for 61.3% (30,911) of all firearms registered in 2012 (50,394).  Broken out further, rifles and shotguns comprised 48.6% (24,469) and 12.8% (6,442) of total registrations, respectively. The remaining 38.7% (19,483) of registered firearms were handguns.

## County Comparisons and Registration Trends

Table 1 shows the distribution of firearm registration activity during 2012 across the four counties and for the State of Hawaii overall.

### Table 1:  Firearm Registration Activity, State of Hawaii and Counties, 2012

|  | C&C of Honolulu | Hawaii County | Maui County | Kauai County | State Total |
|---|---|---|---|---|---|
| Applications Processed | 13,927 | 3,881 | 2,777 | 1,279 | **21,864** |
| Applications Approved/ Permits Issued | 13,052 | 3,715 | 2,640 | 1,165 | **20,572** |
| Applications Approved/ Permits Voided | 821 | 50 | 91 | 55 | **1,065** |
| Applications Denied | 54 | 116 | 46 | 11 | **227** |
| Denial Rate | 0.4% | 3.0% | 1.7% | 0.9% | **1.0%** |
| Firearms Registered | 30,289 | 10,134 | 6,791 | 2,679 | **50,394** |
| Firearms Imported | 13,900 | 5,272 | 3,124 | 1,252 | **23,548** |

As compared to Hawaii's resident population distribution, firearm registration activity occurred disproportionately across the four counties during 2012 (see Figure 2). (If the counties' registration activity occurred in equal proportion to their respective population sizes, then the three bars depicted for each county in Figure 2 would be of equal height and value.)

Based on its population size, 9% fewer permit applications were processed in the City & County of Honolulu during 2012 than would be expected, and 65% fewer denials were reported.  Hawaii County recorded 29% more processed applications and 264% more denials than expected. Maui County processed 18% more applications and denied 82% more applications than anticipated. Kauai County processed and denied permit applications at rates that are roughly commensurate with its share of the State's resident population.

**Figure 2:  County Distribution of Permit Applications Processed and Rejected versus Resident Population Distribution, 2012**



Figure 3 (next page) presents historical data on denial rates for the State of Hawaii and each of its four counties. Notable are the comparatively high denial rates reported by Hawaii County and Maui County throughout the entire 2000-2012 time period.



Figure 3: Firearm Permit Application Denial Rates,
State of Hawaii and Counties, 2000-2012

Firearm registration activity increased dramatically over the course of the 13 years for which these data have been systematically compiled and reported (see Figure 4). From 2000 through 2012, the number of statewide permit applications processed annually climbed 336.9%, the number of firearms registered soared 370.1%, and the number of firearms imported surged 325.8%.



Figure 4: Firearm Registration Trends,
State of Hawaii, 2000-2012

| | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Applications Processed | 6,489 | 6,829 | 6,990 | 6,792 | 6,842 | 8,695 | 8,049 | 8,835 | 10,527 | 12,606 | 12,801 | 15,375 | 21,864 |
| Firearms Registered | 13,617 | 14,305 | 15,822 | 14,924 | 14,661 | 17,982 | 19,971 | 21,784 | 25,996 | 33,678 | 31,390 | 36,804 | 50,394 |
| Firearms Imported | 7,228 | 6,567 | 7,416 | 6,778 | 7,595 | 8,563 | 9,830 | 10,401 | 11,978 | 16,897 | 15,212 | 17,949 | 23,548 |

4



**Figure 5: Firearm Registration Trends,
City & County of Honolulu, 2000-2012**

| | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Applications Processed | 4,065 | 4,377 | 4,383 | 4,248 | 4,208 | 5,833 | 4,855 | 5,120 | 6,397 | 7,736 | 7,738 | 9,452 | 13,927 |
| Firearms Registered | 8,237 | 9,057 | 10,129 | 9,079 | 8,524 | 11,307 | 12,452 | 13,641 | 16,641 | 21,631 | 19,853 | 23,470 | 30,289 |
| Firearms Imported | 4,917 | 4,361 | 4,948 | 4,360 | 4,886 | 5,580 | 6,388 | 7,069 | 8,266 | 11,450 | 10,167 | 11,869 | 13,900 |

Figure 5 shows that, between 2000 and 2012 in the City & County of Honolulu, the annual tally of permits processed increased 342.6%, the number of firearms registered rose 367.7%, and the number of firearms imported climbed 282.7%.



**Figure 6: Firearm Registration Trends,
Hawaii County, 2000-2012**

| | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Applications Processed | 1,146 | 1,172 | 1,155 | 1,381 | 1,283 | 1,389 | 1,595 | 1,794 | 1,979 | 2,426 | 2,420 | 2,975 | 3,881 |
| Firearms Registered | 2,903 | 2,753 | 2,973 | 3,290 | 3,138 | 3,382 | 3,976 | 4,377 | 5,106 | 6,727 | 5,886 | 6,603 | 10,134 |
| Firearms Imported | 1,241 | 1,196 | 1,286 | 1,376 | 1,344 | 1,615 | 1,768 | 1,813 | 2,327 | 3,183 | 2,732 | 2,990 | 5,272 |

As shown in Figure 6, the number of permits processed annually in Hawaii County from 2000 through 2012 climbed 338.7%, the number of firearms registered increased 349.1%, and the number of firearms imported surged 424.8%.

5



**Figure 7: Firearm Registration Trends,
Maui County, 2000-2012**

| | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Applications Processed | 795 | 894 | 870 | 784 | 851 | 867 | 825 | 1,018 | 1,264 | 1,568 | 1,796 | 1,965 | 2,777 |
| Firearms Registered | 1,466 | 1,486 | 1,482 | 1,700 | 2,022 | 1,889 | 2,098 | 2,251 | 2,634 | 3,316 | 3,982 | 4,569 | 6,791 |
| Firearms Imported | 641 | 594 | 635 | 699 | 936 | 935 | 993 | 972 | 780 | 1,533 | 1,661 | 2,108 | 3,124 |

Figure 7 reveals that, between 2000 and 2012 in Maui County, the number of permits processed annually increased 349.3%, the number of firearms registered surged 457.0%, and the tally of firearms imported soared 487.4%.



**Figure 8: Firearm Registration Trends,
Kauai County, 2000-2012**

| | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Applications Processed | 483 | 386 | 582 | 379 | 500 | 606 | 774 | 903 | 887 | 876 | 847 | 983 | 1,279 |
| Firearms Registered | 1,011 | 1,009 | 1,238 | 855 | 977 | 1,404 | 1,445 | 1,515 | 1,615 | 2,004 | 1,669 | 2,099 | 2,679 |
| Firearms Imported | 429 | 416 | 547 | 343 | 429 | 433 | 681 | 547 | 605 | 731 | 652 | 982 | 1,252 |

As shown in Figure 8, the number of permits processed annually in Kauai County from 2000 through 2012 increased 264.8%, the number of firearms registered rose 265.0%, and the number of firearms imported climbed 291.8%.

6

**Firearm Registration Trends and Firearm-Related Violent Crime Trends**

Given the tremendous increases in statewide firearm registration activity throughout the 2000-2012 period, and in particular the major increases reported for the post-2008 period, it is understandable that some readers might at first glance be alarmed, fearing that these increases have necessarily resulted in commensurate increases in firearm-related violent crime trends. However, as shown in the following figures, such has not been the case.  Figure 9 (below) overlays the trend for firearm registrations atop the trend data for firearm-related violent crimes reported to the State's Uniform Crime Reporting Program (which is also directed by this Department). This analysis reveals that, while firearm registration activity has increased dramatically, the trend for firearm-related violent crimes has remained fairly stable within a narrow range, and decreased substantially during the same period (2008-2012*) during which registration activity increased the most sharply.

Figure 9:  Violent Crimes Committed With Firearms and
Firearms Registered, State of Hawaii, 1994-2012*
Source: Hawaii Department of the Attorney General



* Notes:

- Per Uniform Crime Reporting Program definition, violent crimes include murders, aggravated assaults,

  and robberies.  Weapon data are not reported for the remaining violent crime category, forcible rape.

- CY 1994 was the first year that statewide crime weapon data were readily available in electronic format.

- Crime data for CY 2012 were not yet available at the time of this report's completion.

- Hawaii's firearm registration statistics reporting program was initiated in CY 2000.

Figures 9 and 10 (next page) demonstrate that, relative to other weapon types, the low prevalence of firearm use during the commission of violent crimes in Hawaii has remained stable for at least the past 18 years in Hawaii, with evidence of becoming even less prevalent since 2007.

**Figure 10:  Violent Crimes Committed With Firearms
and Other Weapons, State of Hawaii, 1994-2011**

Source: Hawaii Department of the Attorney General



**Figure 11:  Proportions of Violent Crimes Committed With
Firearms and Other Weapons, State of Hawaii, 1994-2011**

Source: Hawaii Department of the Attorney General



**Permit Application Denials**

As noted earlier, 1.0% (227) of all permit applications in Hawaii during 2012 were denied for cause. Hawaii's 2012 denial rate is 44.5% (0.8 percentage points) below the 1.8% rate reported for all state and local agencies conducting background checks for firearm permits and transfers in 2010 (Bureau of Justice Statistics, 2013).

The vast majority of denials in Hawaii during 2012 were for longarm (190, or 83.7%) rather than handgun (37, or 16.3%) permit applications. Following a trend since this annual report was first published, longarm permit applications in 2012 were denied at a rate that is several times greater than the denial rate for handgun permit applications (1.6% for longarm permit applications versus 0.4% for handgun permit applications).

Over half (127, or 55.9%) of the denials in 2012 were due to applicants' prior criminal convictions, while 11.0% (25) were due to pending charges. The remaining 33.1% (75) of denials in 2012 were not based on the criminal histories of the applicants.

It is a misdemeanor in the State of Hawaii to provide falsified information on firearm permit applications, unless the falsified information pertains to criminal or mental health histories, in which case it is a felony offense (Hawaii Revised Statutes section 134-17). In 2012, falsified criminal or mental health information or both were provided in 69.2% (157) of the 227 denial cases; falsified information pertaining to anything other than criminal or mental health histories was provided in 4.0% (9) of the cases; and no falsified information was provided in 26.9% (61) of the denial cases.

Table 2 presents broad categorical data on the reasons for denied permit applications.

**Table 2: Reasons for Denied Firearm Permit Applications, State of Hawaii, 2012**

|  | # | %* |
|---|---|---|
| "Other" Offense | 112 | 49.3 |
| Other (e.g., non-U.S. citizen) | 33 | 14.5 |
| Drug Offense | 31 | 13.7 |
| Mental Health Issues/Treatment** | 31 | 13.7 |
| Domestic Violence Offense | 30 | 13.2 |
| Restraining/Protective Order | 11 | 4.8 |
| Disqualifying Juvenile Offense | 2 | 0.9 |

\*   Figures do not total 100% due to multiple denial reasons for some applicants.

\*\*   Denials for mental health issues or treatment can be satisfactorily resolved with a verified doctor's note stating that the applicant is no longer adversely affected. While an original denial cannot be appealed or overturned, a new application may be submitted and the appropriate permit will be issued. It is unknown how many applicants who are initially denied for mental health reasons successfully reapply for permits.

Table 3 (next page) provides a breakdown of information entered into a description field for each denial.

9

**Table 3:  Descriptions of Firearm Permit Application Denials,
State of Hawaii, 2012**

| [N = 227 Denials] | # | %* |
|---|---|---|
| abuse of family/household member | 19 | 8.4 |
| abuse of family/household member + disorderly conduct | 1 | .4 |
| abuse of family/household member x 2 + mental health treatment | 1 | .4 |
| accidental death felony | 1 | .4 |
| adjudicated mental defective | 1 | .4 |
| admitted illegal drug use | 1 | .4 |
| assault | 29 | 12.8 |
| assault + mental health treatment | 3 | 1.3 |
| assault + restraining order | 1 | .4 |
| assault + substance abuse treatment | 1 | .4 |
| assault + weapons offense + drug offense + restraining order | 1 | .4 |
| assault x 2 | 4 | 1.8 |
| assault x 2 + abuse of family/household member | 1 | .4 |
| assault x 2 + abuse of family/household member + burglary | 1 | .4 |
| assault x 3 + mental health treatment | 1 | .4 |
| assault x 6 + mental health treatment | 1 | .4 |
| bail jumping | 1 | .4 |
| burglary + forgery | 1 | .4 |
| child abuse + mental health treatment + no response from California re burglary arrest | 1 | .4 |
| crime of violence (unspecified) | 1 | .4 |
| dishonorable discharge from U.S. military | 1 | .4 |
| disorderly conduct | 7 | 3.1 |
| disorderly conduct x 2 | 1 | .4 |
| disqualifying juvenile offense + substance abuse treatment | 1 | .4 |
| disqualifying juvenile offense(s) | 2 | .9 |
| drug offense | 17 | 7.5 |
| drug offense + medical marijuana patient | 6 | 2.6 |
| evading an officer | 1 | .4 |
| felonies (unspecified) | 1 | .4 |
| felony (unspecified) | 8 | 3.5 |
| felony convictions x 15 | 1 | .4 |
| harassment | 15 | 6.6 |
| identity theft | 1 | .4 |
| medical clearance needed | 7 | 3.1 |
| medical marijuana patient | 4 | 1.8 |
| mental health treatment | 10 | 4.4 |
| motor vehicle theft | 1 | .4 |
| motor vehicle theft + theft x 2 | 1 | .4 |
| murder + weapons offense | 1 | .4 |
| mutual affray | 1 | .4 |
| negligent homicide | 1 | .4 |
| no response from California re assault + burglary arrests | 1 | .4 |
| no response from California re sexual assault arrest | 1 | .4 |
| no response from California re status of marijuana arrest | 1 | .4 |
| no response from California re theft arrest | 1 | .4 |
| no response from Honolulu PD re harassment arrest | 1 | .4 |
| no response from Pennsylvania re explosives arrest | 1 | .4 |
| no response from Utah re status of drug arrest | 1 | .4 |
| not a U.S. citizen | 4 | 1.8 |
| refused to provide complete information on application | 1 | .4 |
| resides with disqualified person | 13 | 5.7 |
| restraining order | 7 | 3.1 |
| restraining order + mental health treatment | 1 | .4 |
| restraining order + no response from Florida re fraud arrest | 1 | .4 |
| restraining order x 2 | 1 | .4 |
| robbery | 1 | .4 |
| sexual assault | 3 | 1.3 |
| sexual assault x 2 | 2 | .9 |
| sexual offense (unspecified) | 1 | .4 |
| substance abuse treatment | 3 | 1.3 |
| suicide attempt | 1 | .4 |
| theft | 6 | 2.6 |
| violent crime (unspecified) | 10 | 4.4 |
| violent crime (unspecified) + theft + mental health treatment | 1 | .4 |
| warrant | 2 | .9 |
| weapons offense | 3 | 1.3 |

* Due to rounding, figures may not total 100%.

## Licenses to Carry Firearms

Hawaii's county police departments also process license applications for the open and/or concealed carry of firearms in public.  Statewide in 2012, 168 employees of private security firms were issued carry licenses, and two were denied. Four private citizens applied for a concealed carry license in the City & County of Honolulu, and one applied in Maui County, and all five were denied at the discretion of the respective county police chief.

## Confiscations

During 2012, the Maui Police Department's firearm registration section confiscated one legally prohibited firearm; a rifle with a defaced serial number.

## Acknowledgements

This report was prepared with input and assistance from the county police departments' firearm registration personnel: **Debra Agena**, Records Clerk, Maui County Police Department; **Emily Fabro**, Firearms Clerk, Kauai County Police Department; the Firearm Registration Section, in particular **Suzy Yamasaki**, Records Clerk, City & County of Honolulu Police Department; and **Arlene Young**, Records Clerk, Hawaii County Police Department. As the volume of registration activity documented in this report demonstrates, these dedicated professionals work hard to serve their communities.

## Reference

Bureau of Justice Statistics (February 2013). *Background checks for firearms transfers, 2010.* <http://www.bjs.gov/content/pub/pdf/bcft10st.pdf>. U.S. Department of Justice: Office of Justice Programs.

*This report is available in PDF format from the Crime Prevention & Justice Assistance Division's web site:*
**ag.hawaii.gov/cpja**

## CERTIFICATE OF SERVICE

I hereby certify that on the date first stated below, and in compliance with the rules of this Court, I did serve a true and exact copy of the following documents:

## FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

via this Court's electronic filing system and in accordance with the Rules of this Court upon the following:

Holly T. Shikada, Attorney General of Hawai'i
Kimberly T. Guidry, Solicitor General of Hawai'i
E-mail: kimberly.t.guidry@hawaii.gov
Robert T. Nakatsuji, Deputy Attorney General
E-mail: robert.t.nakatsuji@hawaii.gov
Kaliko'onalani D. Fernandes, Deputy Attorney General
E-mail: kaliko.d.fernandes@hawaii.gov
Kendall J. Moser, Deputy Attorney General
E-mail: kendall.j.moser@hawaii.gov
Department of the Attorney General, State of Hawai'i
425 Queen Street
Honolulu, Hawai'i 96813

Attorneys for Defendant HOLLY T. SHIKADA, in her official capacity as Attorney General of Hawai'i

DANA M. O. VIOLA, Corporation Counsel
DANIEL M. GLUCK
E-mail: daniel.gluck@honolulu.gov
ROBERT M. KOHN
E-mail: robert.kohn@honolulu.gov
NICOLETTE WINTER
E-mail: nwinter@honolulu.gov
Deputies Corporation Counsel
City and County of Honolulu
530 S. King Street, Room 110
Honolulu, Hawai'i 96813

Attorneys for Defendants ARTHUR J. LOGAN, in his official capacity as Police Chief of the City & County of Honolulu and CITY AND COUNTY OF HONOLULU

Dated: September 27, 2022                    /s/James Hochberg
                                             James Hochberg