IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| RONALD G. LIVINGSTON; MICHAEL J. BOTELLO; KITIYA M. SHIROMA; JACOB STEWART; and HAWAII RIFLE ASSOCIATION,<br><br>        Plaintiffs,<br><br>    v.<br><br>ARTHUR J. LOGAN, in his official capacity as Police Chief of the City & County of Honolulu; CITY & COUNTY OF HONOLULU; and HOLLY T. SHIKADA, in her official capacity as Attorney General of Hawai'i,<br><br>        Defendants. | Civil No. 1:19-cv-00157-JMS-RT<br><br>**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**<br><br><br><br>District Judge:<br>Hon. J. Michael Seabright<br><br>Magistrate Judge:<br>Hon. Rom Trader<br><br>No Trial Date Set |

# **TABLE OF CONTENTS**

INTRODUCTION...................................................................................1

BACKGROUND ...................................................................................3

LEGAL STANDARD ...........................................................................5

ARGUMENT ........................................................................................7

   **I.**  **Plaintiffs' Claims Against the Attorney General Are Barred by the Eleventh Amendment and Ex parte Young Does Not Apply.** ..................8

  **II.**  **Plaintiffs Lack Article III Standing and Any Pre-Enforcement Challenge to Criminal Provisions of Chapter 134 Is Not Ripe.** ..............13

      **A.**  **Regarding Plaintiffs' claims against the Attorney General based on HRS § 134-9(a), Plaintiffs lack Article III standing because they have not alleged—and cannot establish—the causation/traceability and redressability elements.**..............................................................14

      **B.**  **Regarding Plaintiffs' claims against the Attorney General based on HRS §§ 134-9(c), 134-25, 134-26, or other criminal statutes, Plaintiffs lack standing and any challenge to criminal statutes is unripe.**.....................................................................................16

  **III.** **Any Claims Against the Attorney General Are Also Moot.** ....................21

CONCLUSION.....................................................................................24

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Aholelei v. Dep't of Pub. Safety*,
  488 F.3d 1144 (9th Cir. 2007)............................................................9

*Alaska Right to Life Pol. Action Comm. v. Feldman*,
  504 F.3d 840 (9th Cir. 2007)............................................................17

*Am. Cargo Transp., Inc. v. United States*,
  625 F.3d 1176 (9th Cir. 2010)..........................................................23

*Am. Rivers v. Nat'l Marine Fisheries Serv.*,
  126 F.3d 1118 (9th Cir. 1997)..........................................................23

*Amemiya v. Sapienza*,
  63 Haw. 424, 629 P.2d 1126 (1981)..................................................20

*Antonyuk v. Bruen*,
  No. 1:22-cv-0734-GTS-CFH, 2022 WL 3999791 (N.D.N.Y. Aug.
  31, 2022)..........................................................................................18

*Ass'n of Am. R.R. v. Cal. Off. of Spill Prevention & Response*,
  113 F. Supp. 3d 1052 (E.D. Cal. June 18, 2015)........................ *passim*

*Beram v. City of Sedona*,
  No. 3:21-cv-08063-DJH, 2022 WL 596796 (D. Ariz. Feb. 28, 2022)................16

*Bishop Paiute Tribe v. Inyo Cnty.*,
  863 F.3d 1144 (9th Cir. 2017)..................................................... 16-17

*Boating Industry Ass'ns v. Marshall*,
  601 F.2d 1376 (9th Cir. 1979)..........................................................19

*Borja v. Nago*,
  No. 1:20-cv-00433-JAO-RT, 2021 WL 4005990 (D. Haw. Sept. 2,
  2021) ....................................................................................... 5-6, 13

*Bosh v. United States*,
  831 F. App'x 834 (9th Cir. 2020) (unpublished) ...................................6

*Branstetter v. Lorenzo,*
   No. 1:20-cv-00573-HG-WRP, 2021 WL 5568155 (D. Haw. Nov. 29,
   2021) ........................................................................................................8

*Bristol v. Peters,*
   No. 3:17-CV-00788-SB, 2018 WL 6183274 (D. Or. Nov. 27, 2018) ...............11

*Ctr. for Biological Diversity v. Exp.-Imp. Bank of United States,*
   894 F.3d 1005 (9th Cir. 2018) ....................................................................15

*D'Agostino v. Arizona Dep't of Econ. Sec.,*
   No. 2:21-cv-01292-SPL, 2022 WL 3682003 (D. Ariz. Aug. 25,
   2022) ......................................................................................................10

*Disability Rts. S.C. v. McMaster,*
   24 F.4th 893 (4th Cir. 2022). ......................................................................14

*Ex parte Young,*
   209 U.S. 123 (1908) .................................................................... *passim*

*Gilroy v. Hawaii,*
   No. 1:20-cv-00037-JMS-RT, 2020 WL 622778 (D. Haw. Feb. 10,
   2020) ......................................................................................................23

*Grindling v. Hawaii,*
   No. 1:18-cv-00495-JMS-RT, 2019 WL 6255472 (D. Haw. Nov. 22,
   2019) ........................................................................................................6

*Halbach v. Hyatt Corp.,*
   No. 1:20-cv-00032-JAO-WRP, 2020 WL 898508 (D. Haw. Feb. 24,
   2020) ........................................................................................................6

*Hartnett v. Pennsylvania State Educ. Ass'n,*
   963 F.3d 301 (3d Cir. 2020). ......................................................................24

*Holder v. Humanitarian Law Project,*
   561 U.S. 1 (2010) ......................................................................................20

*Hornish v. King Cnty.,*
   899 F.3d 680 (9th Cir. 2018) ......................................................................14

*Koppers Indus. v. U.S.E.P.A.,*
   902 F.2d 756 (9th Cir. 1990) ......................................................................23

*Laird v. United Tchrs. Los Angeles*,
No. 2:21-cv-02313-FLA-ASX, 2022 WL 2976824 (C.D. Cal. July 20, 2022) ...................................................................................9

*Look v. Harris*, C 16-5465 CRB,
2017 WL 345992 (N.D. Cal. Jan. 24, 2017) ......................................11

*Los Angeles Cnty. Bar Ass'n v. Eu*,
979 F.2d 697 (9th Cir. 1992) ..............................................................10

*Lund v. Cowan*,
5 F.4th 964 (9th Cir. 2021) .......................................................... 2, 11

*Lyons v. City of Los Angeles*,
615 F.2d 1243 (9th Cir. 1980) ............................................................24

*Mecinas v. Hobbs*,
30 F.4th 890 (9th Cir. 2022) ..................................................... 9, 14-15

*Nakamura v. Honolulu Cmty. Coll.*,
No. 1:13-cv-00054-JMS-BMK, 2013 WL 3147266 (D. Haw. June 18, 2013) ...........................................................................................9

*New York State Rifle & Pistol Association, Inc. v. Bruen*,
142 S. Ct. 2111 (2022) ................................................................ *passim*

*Novak v. United States*,
795 F.3d 1012 (9th Cir. 2015) ............................................................15

*Oyama v. Univ. of Hawaii*,
No. 1:12-cv-00137-HG-BMK, 2013 WL 1767710 (D. Haw. Apr. 23, 2013) ...............................................................................................8

*Pistor v. Garcia*,
791 F.3d 1104 (9th Cir. 2015) ............................................................8

*Ritchie v. Nat'l Football League*,
No. 1:13-cv-00525-JMS-BMK, 2014 WL 6980236 (D. Haw. Dec. 8, 2014) .............................................................................................5, 6

*Roberson v. Recktenwald*,
No. 1:22-cv-00186-JAO-WRP, 2022 WL 3786828 (D. Haw. Aug. 30, 2022) ...........................................................................................6

*Safe Air for Everyone v. Meyer*,
  373 F.3d 1035 (9th Cir. 2004) .................................................................5

*San Diego Cnty. Gun Rts. Comm'n. v. Reno*,
  98 F.3d 1121, 1126 (9th Cir. 1996) ........................................... *passim*

*Sato v. Orange Cty. Dep't of Educ.*,
  861 F.3d 923 (9th Cir. 2017) ...................................................................6

*Seminole Tribe of Fla. v. Fla.*,
  517 U.S. 44 (1996) ...................................................................................9

*Spencer v. Kemna*,
  523 U.S. 1 (1998) ...................................................................................23

*Sperling v. Stein Mart, Inc.*,
  No. 5:15-cv-01411-AB-KK, 2016 WL 8925347 (C.D. Cal. Jan. 26,
  2016) .......................................................................................................22

*Steffel v. Thompson*,
  415 U.S. 452 (1974) ...............................................................................19

*Summitt Med. Assocs. P.C. v. Pryor*,
  180 F.3d 1326 (11th Cir. 1999) ....................................................... 11-12

*Thomas v. Anchorage Equal Rights Com;n*,
  220 F.3d 1134 (9th Cir. 2000) ........................................................ 12, 18

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021). ..........................................................................24

*Unified Data Servs., LLC v. Fed. Trade Comm'n*,
  39 F.4th 1200 (9th Cir. 2022) ......................................................... 18-19

*Viernes v. DNF Assocs.*, LLC,
  582 F. Supp. 3d 738 (D. Haw. 2022) .....................................................13

*Wash. Envtl. Council v. Bellon*,
  732 F.3d 1131 (9th Cir. 2013) ...............................................................14

*White v. Lee*,
  227 F.3d 1214 (9th Cir. 2000) ........................................................... 6, 24

*Will v. Michigan Dep't of State Police*,
  491 U.S. 58 (1989) ............................................................8, 9

*Wolfson v. Brammer*,
  616 F.3d 1045 (9th Cir. 2010) .................................... 16, 17

*Young v. Hawaii*,
  548 F. Supp. 2d 1151 (D. Haw. 2008) ...............................11

*Young v. Hawaii*,
  911 F. Supp. 2d 972 (D. Haw. 2012) .................................10

*Zentmyer v. United States*,
  No. 3:20-cv-02240-JAH-NLS, 2022 WL 959806 (S.D. Cal. Mar. 30,
  2022) ............................................................................ *passim*

## Statutes

U.S. Const., Eleventh Amendment .................................... *passim*

U.S. Const., Article III ........................................................ *passim*

42 U.S.C. § 1983 ................................................................4, 8

42 U.S.C. § 1988 ....................................................................5

HRS § 134-5......................................................................16

HRS § 134-9.................................................................. *passim*

HRS § 134-24......................................................................3

HRS § 134-25.................................................................. *passim*

HRS § 134-26.................................................................. *passim*

## Other Authorities

State of Haw., Dep't of the Att'y Gen., Opinion No. 22-02, *Public
  Carry Licensing Under Hawai'i Law Following* New York State
  Rifle & Pistol Association v. Bruen (July 7, 2022)............................22

**Rules**

Fed. R. Civ. P. Rule 12 ...................................................................... *passim*

Fed. R. Evid. Rule 201 ..............................................................................22

## INTRODUCTION

Plaintiffs' lawsuit against the Attorney General should be dismissed.  Not only has this litigation has been rendered moot by the Supreme Court's decision in *New York State Rifle & Pistol Association, Inc. v. Bruen*[1]—Plaintiffs challenge language in the firearms licensing statute that is no longer being applied—but even if this case were not moot, dismissal would still be required because the Attorney General is not a proper defendant.  Although Plaintiffs have sued the Attorney General in her official capacity, the licensing regime they challenge is administered by the counties—*not* the Attorney General.

There are three key reasons why Plaintiffs' claims against the Attorney General should be dismissed, each of which independently requires dismissal.  First, the Eleventh Amendment bars this suit against the Attorney General.  Second, Plaintiffs lack Article III standing (and, to the extent Plaintiffs seek to bring a pre-enforcement challenge to a criminal statute, the allegations in the Complaint also fail to satisfy standing and ripeness requirements).  Third, this case is moot.

First, the Eleventh Amendment bars Plaintiffs' claims against the Attorney General.  To begin, Plaintiffs' damages claim against the Attorney General is plainly barred.  Moreover, the Eleventh Amendment also bars Plaintiffs' claims because none of Plaintiffs' claims against the Attorney General fall within the *Ex parte Young* doctrine.  Insofar as Plaintiffs seek a declaration about the alleged

---

[1] 142 S. Ct. 2111 (2022).

unlawfulness of certain licensing decisions that took place in 2019 (based on statutory language that is not being applied going forward) Plaintiffs seek retrospective declaratory relief.  The *Ex parte Young* exception only permits claims for *prospective* declaratory and injunctive relief; "[t]he Eleventh Amendment does not permit retrospective declaratory relief."  *Lund v. Cowan*, 5 F.4th 964, 969 (9th Cir. 2021).  When, as here, the declaratory relief sought "involve[s] past conduct and past harm," *id.* at 970—rather than "serv[ing] directly to bring an end to a *present* violation of federal law," *id.* (quotation omitted; emphasis added)—the relief is retrospective in nature.  Plaintiffs' claims against the Attorney General for prospective declaratory and injunctive relief also fail because Plaintiffs have not alleged facts establishing that the Attorney General has a sufficient nexus to the enforcement of the challenged licensing provisions of HRS chapter 134.  In the absence of a sufficient enforcement nexus, the claims against the Attorney General are barred by the Eleventh Amendment since they do not fall within *Ex parte Young*.

Second, Plaintiffs' claims against the Attorney General should be dismissed because Plaintiffs have not alleged facts sufficient to establish Article III standing with respect to those claims.  Plaintiffs have failed to allege facts sufficient to satisfy the essential elements for Article III standing—injury-in-fact, causation, and redressability.  Crucially, with respect to firearms licensing decisions under HRS § 134-9(a), the Attorney General has *no role* in granting or denying licenses under that section.  Thus, because there is no constitutional injury that is caused by (or that

could be redressed by) the Attorney General, two of the three elements of Article III standing—causation and redressability—are absent.  Alternatively, to the extent the Complaint seeks to assert a pre-enforcement claim against the Attorney General based on the existence of certain criminal statutes (HRS §§ 134-9(c), 134-24, and 134-26), any such claims fail because Plaintiffs' complaint lacks factual allegations sufficient to establish injury-in-fact and ripeness.  When tested against the Ninth Circuit's rules for pre-enforcement challenges to criminal statutes, Plaintiffs have not alleged facts establishing a "*genuine* threat of *imminent* prosecution" by the Attorney General against Plaintiffs.  *San Diego Cnty. Gun Rts. Comm'n. v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996) [*San Diego Gun Rights*] (emphasis in original). Absent factual allegations establishing a genuine threat of imminent prosecution, Plaintiffs' challenge cannot succeed.

Third, even if the issues identified above did not independently require dismissal, Plaintiffs' claims against the Attorney General would in any event fail because they are moot.  The specific provisions of HRS § 134-9 that Plaintiffs challenge are not being applied on an ongoing basis.  This case is therefore moot.

## **BACKGROUND**

Plaintiffs filed an initial complaint on March 29, 2019, ECF No. 1, and filed a motion for a preliminary injunction on April 11, 2019, ECF No. 19.  On June 10, 2019, this case was stayed pending a final decision by the Ninth Circuit in *Young v.*

*Hawaii*, 9th Cir. No. 12-17808.  ECF No. 40.  On September 7, 2022, the stay was

lifted.  ECF No. 61.  Plaintiffs filed a First Amended Complaint (the current

operative complaint) on September 27, 2022.  ECF No. 64 ("**Complaint**").

The Complaint asserts a single count under 42 U.S.C. § 1983, alleging a

violation of the Second and Fourteenth Amendments.  Plaintiffs allege that under the

licensing system that was in place in 2019, Plaintiffs' applications for licenses to

carry firearms were denied, Complaint at ¶¶ 59-61, and further allege that

"Defendants' denial of plaintiffs' requests for carry licenses prevents plaintiffs from

lawfully carrying handguns for self-defense outside the home in any manner, either

concealed or openly."  Complaint at ¶ 63.  According to the Complaint, the "denial

of plaintiffs' requests for carry license[s] violates their Second Amendment rights."

Complaint at ¶ 64.  The Complaint asks this Court, in relevant part, for the following

relief:

> B. Declare that the Second Amendment protects the right of
> ordinary, law-abiding citizens to carry a handgun outside the home for
> self-defense in some manner, either concealed or openly;
> C. Declare that the provisions of H.R.S. §134-9(a) that prevent
> ordinary, law-abiding citizens from carrying handguns outside the home
> or place of business for self-defense in some manner, either concealed
> or openly, are unconstitutional facially and as applied to plaintiffs;
> D. Enter a preliminary injunction preventing defendants and their
> agents from enforcing §134-9(a) to prevent ordinary, law-abiding
> citizens from carrying handguns outside the home or place of business
> for self-defense in some manner, either concealed or openly, during the
> pendency of this litigation;
> E. Enter a permanent injunction enjoining defendants and their
> agents from enforcing §134-9(a) to prevent ordinary, law-abiding

> citizens from carrying handguns outside the home or place of business for self-defense in some manner, either concealed or openly;
>
> F. Award plaintiffs their costs of suit, including attorney fees and costs, pursuant to 42 U.S.C. §1988;
>
> G. Award damages according to proof . . . .

Complaint, Prayer at 20-21.

The Complaint names three defendants: the Chief of Police of the City and County of Honolulu (Complaint at ¶ 9), the City and County of Honolulu (Complaint at ¶ 10), and the Attorney General (Complaint at ¶ 11).  Regarding the Attorney General, Plaintiffs allege as follows:

> Defendant Holly T. Shikada is sued in her official capacity as Attorney General of Hawaii. Defendant Shikada is responsible for enforcing the laws of Hawaii, including H.R.S. §134-9(a), and issues detailed annual reports on application of that provision. In addition, in her capacity as Attorney General, Defendant Shikada could criminally prosecute plaintiffs for carrying a handgun beyond the home without a carry license. *See* H.R.S. §§134-9(c), 134-25(b), 134-26.

Complaint at ¶ 11.

## **LEGAL STANDARD**

"Under Federal Rule of Procedure ('FRCP') 12(b)(1), a district court must dismiss a complaint if it lacks subject matter jurisdiction to hear the claims alleged in the complaint."  *Borja v. Nago*, No. 1:20-cv-00433-JAO-RT, 2021 WL 4005990, at *3 (D. Haw. Sept. 2, 2021).  "A Rule 12(b)(1) jurisdictional attack may be facial or factual."  *Ritchie v. Nat'l Football League*, No. 1:13-cv-00525-JMS-BMK, 2014 WL 6980236, at *8 (D. Haw. Dec. 8, 2014) (quoting *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)).  In a facial jurisdictional attack like this, "[t]he

court must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party when ruling on a motion to dismiss." *Borja*, 2021 WL 4005990, at *3 (quotation omitted). "However, conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss." *Roberson v. Recktenwald*, No. 1:22-cv-00186-JAO-WRP, 2022 WL 3786828, at *4 (D. Haw. Aug. 30, 2022) (citations omitted). "Federal courts are presumed to lack subject-matter jurisdiction, and the plaintiff bears the burden of establishing that subject-matter jurisdiction is proper." *Halbach v. Hyatt Corp.*, No. 1:20-cv-00032-JAO-WRP, 2020 WL 898508, at *1 (D. Haw. Feb. 24, 2020).

"Because standing and mootness both pertain to a federal court's subject-matter jurisdiction under Article III, they are properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1)." *Ritchie*, 2014 WL 6980236, at *8 (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)). Additionally, "[a]n Eleventh Amendment sovereign immunity defense is 'quasi-jurisdictional' in nature and may be raised in either a Rule 12(b)(1) or 12(b)(6) motion." *Grindling v. Hawaii*, No. 1:18-cv-00495-JMS-RT, 2019 WL 6255472, at *3 (D. Haw. Nov. 22, 2019) (citing *Sato v. Orange Cty. Dep't of Educ.*, 861 F.3d 923, 927 & n.2 (9th Cir. 2017)). "Dismissals for lack of subject matter jurisdiction ordinarily must be without prejudice." *Bosh v. United States*, 831 F. App'x 834, 834 n.1 (9th Cir. 2020) (unpublished).

## **ARGUMENT**

Plaintiffs' action against the Attorney General should be dismissed for lack of jurisdiction.  Dismissal is warranted for three independent reasons.

First, the claims against the Attorney General are barred by the Eleventh Amendment.  To start, it is well settled that the Eleventh Amendment bars any damages claims against the Attorney General in her official capacity.  Additionally, all claims against the Attorney General are also barred by the Eleventh Amendment because the *Ex parte Young* exception to Eleventh Amendment immunity does not apply.  The Complaint fails to establish either: (1) that the Attorney General has a sufficient enforcement nexus to the challenged provisions of law, or (2) the existence of any ongoing violation on the part of the Attorney General.

Second, Plaintiffs lack Article III standing with respect to their claims against the Attorney General.  The Attorney General does not enforce the licensing system for carrying firearms, has no authority to grant or deny carry license applications under the statute, and did not deny Plaintiffs' license applications.  The causation and redressability elements for Article III standing are not satisfied here.  Alternatively, to the extent that Plaintiffs have sought to sue the Attorney General based on the alleged possibility that the Attorney General might enforce one or more criminal statutes against Plaintiffs, that theory plainly fails as pleaded:  Plaintiffs have not alleged—and likely cannot establish—the essential elements for standing or

ripeness under Ninth Circuit case law governing pre-enforcement challenge to criminal statutes.

Third, and in any event, Plaintiffs' claims are moot.

**I.      Plaintiffs' Claims Against the Attorney General Are Barred by the Eleventh Amendment and *Ex parte Young* Does Not Apply.**

Plaintiffs have sued the Attorney General in her official capacity.  Unless an exception to Eleventh Amendment immunity applies, "an officer sued in h[er] official capacity is entitled to forms of sovereign immunity that the entity, *qua* entity, may possess."  *Pistor v. Garcia*, 791 F.3d 1104, 1112 (9th Cir. 2015) (quotation omitted).  "The State of Hawaii has not waived its sovereign immunity from suit in federal court for civil rights actions," *Branstetter v. Lorenzo*, No. 1:20-cv-00573-HG-WRP, 2021 WL 5568155, at *4 (D. Haw. Nov. 29, 2021), and "Congress did not abrogate the States' Eleventh Amendment immunity when enacting 42 U.S.C. § 1983," *Oyama v. Univ. of Hawaii*, No. 1:12-cv-00137-HG-BMK, 2013 WL 1767710, at *6 (D. Haw. Apr. 23, 2013); *see also Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983.").

To start, Plaintiffs' claim for damages is plainly barred by the Eleventh Amendment.  Plaintiffs allege that "[a]n award of money damages for the unconstitutional deprivation of Plaintiffs' rights is appropriate pursuant to 42 U.S.C. 1983."  Complaint at ¶ 19; *see also* Complaint, Prayer at G.  The Eleventh

8

Amendment squarely forecloses any such relief against the Attorney General.  "The Eleventh Amendment bars suits for money damages in federal court against . . . state officials acting in their official capacities."  *Aholelei v. Dep't of Pub. Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007).[2]  Similarly, the Supreme Court has rejected the premise that State "officials acting in their official capacities are 'persons' under § 1983" when sued for damages.  *Will*, 491 U.S. at 71.

With respect to Plaintiffs' non-damages claims, those are barred by the Eleventh Amendment as well.  To be sure, *Ex parte Young*, 209 U.S. 123 (1908)— when it applies—can provide a "narrow exception" to Eleventh Amendment immunity.  *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 76 (1996).  "[U]nder *Ex parte Young*," Eleventh Amendment "immunity is subject to an exception for 'actions for prospective declaratory or injunctive relief against state officers in their official capacities for their alleged violations of federal law so long as the state officer has some connection with enforcement of the act."  *Mecinas v. Hobbs*, 30 F.4th 890, 903 (9th Cir. 2022) (quotation omitted).  But "[t]he Supreme Court has limited the *Young* exception to suits for prospective relief against *ongoing* violations of federal law[.]"  *Nakamura v. Honolulu Cmty. Coll.*, No. 1:13-cv-00054-JMS-BMK, 2013 WL 3147266, at *4 (D. Haw. June 18, 2013) (emphasis added).  To fall

---

[2] This includes nominal damages.  *See, e.g.*, *Laird v. United Tchrs. Los Angeles*, No. 2:21-cv-02313-FLA-ASX, 2022 WL 2976824, at *6 (C.D. Cal. July 20, 2022).

within *Ex parte Young*, a plaintiff must meet their burden[3] to establish at least three criteria: (1) the alleged violation of federal law must be ongoing; (2) the action must be limited to prospective declaratory and injunctive relief; and (3) there must be a sufficiently close and direct enforcement nexus to the state official who is sued.

Here, Plaintiffs have not alleged—and cannot establish—that the Attorney General is responsible for enforcing any of the licensing provisions of chapter 134. As the Ninth Circuit has explained, under *Ex parte Young* "the state officer sued must have" a "fairly direct" "connection with the enforcement of the allegedly unconstitutional act." *Los Angeles Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992) (quotation omitted).  In contrast, "a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit." *Id.*  "Broad generalizations, such as a governor or state attorney general's obligation to enforce all state laws, do *not* have a sufficient nexus for an *Ex parte Young* claim." *Young v. Hawaii*, 911 F. Supp. 2d 972, 984 (D. Haw. 2012) (emphasis added), *vacated and remanded on other grounds*, 45 F.4th 1087 (9th Cir. 2022); see also *id.* (concluding that the Attorney General

_____

[3] A defendant bears "the initial burden of establishing their Eleventh Amendment defense[.]"  *D'Agostino v. Arizona Dep't of Econ. Sec.*, No. 2:21-cv-01292-SPL, 2022 WL 3682003, at *2 (D. Ariz. Aug. 25, 2022).  That burden is satisfied because the Attorney General is a state official sued in her official capacity.  *See* Complaint at ¶ 11.  "[O]nce that burden is met, the burden shifts to Plaintiff to demonstrate that an exception to Eleventh Amendment immunity applies." *D'Agostino*, 2022 WL 3682003, at *2 (citation omitted).

does "not have a sufficient nexus to the enforcement of Hawaii's Firearm Carrying Laws"); *Young v. Hawaii*, 548 F. Supp. 2d 1151, 1164 (D. Haw. 2008) ("Allegations of general oversight of State laws are insufficient to establish the required nexus between the State officials, the Governor and the Attorney General, and the alleged violation of Plaintiff's civil rights through the enforcement of HRS Chapter 134.").

Plaintiffs' Complaint offers only broad generalizations regarding the Attorney General's role. *See* Complaint at ¶ 11 (alleging in conclusory fashion that "[the Attorney General] is responsible for enforcing the laws of Hawaii, including HRS s 134-9(a)"). That is not sufficient. Nor is the fact that the Attorney General issues "reports" regarding chapter 134 (Complaint at ¶ 11) sufficient, or indeed even relevant: Whether the Attorney General issues reports has no bearing on whether Plaintiffs obtain a license to carry firearms.

And even if it were true that a sufficient enforcement nexus existed here, Plaintiffs seek a determination regarding the lawfulness of certain licensing decisions that were taken in 2019. That is not a request for prospective relief; rather, it is a request for retrospective declaratory relief. "The Eleventh Amendment does not permit retrospective declaratory relief." *Lund v. Cowan*, 5 F.4th 964, 969 (9th Cir. 2021). When—as here—the declaratory relief sought "involve[s] past conduct and past harm," *id*. at 970, rather than "serv[ing] directly to bring an end to a *present violation of federal law*," *id*. (quotation omitted; emphasis added), the relief sought is retrospective in nature. *Cf. Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326,

1337 (11th Cir. 1999) (because "the *Ex parte Young* doctrine applies only to ongoing

and continuous violations of federal law," "a plaintiff may not use the doctrine to

adjudicate the legality of past conduct").[4] *Ex parte Young* does not apply because

there is no "ongoing" or "present" violation on the part of the Attorney General.

Additionally, as discussed in greater detail below, Plaintiffs have failed to

allege or establish any of the three elements for bringing a pre-enforcement

challenge to a state criminal statute in federal court, required under Ninth Circuit

law: (1) a concrete plan to violate the law in question; (2) the communication of

specific warning or threat to initiate criminal proceedings; and (3) a history of past

prosecution or enforcement under the challenged statute.  *See Thomas v. Anchorage*

*Equal Rights Com'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc).  "A plaintiff

must establish all three elements in its favor in order to survive a motion to dismiss

on ripeness grounds."  *Ass'n. of Am. R.R. v. Cal. Off. of Spill Prevention & Response*,

113 F.Supp. 3d 1052, 1058 (E.D. Cal. June 18, 2005) [*Spill Prevention*].  By contrast,

the "mere possibility of criminal sanctions" does not satisfy the case or controversy

requirement of Article III.  *San Diego Gun Rights*, 98 F.3d at 1126.

---

[4] *See also Bristol v. Peters*, No. 3:17-cv-00788-SB, 2018 WL 6183274, at *9 (D. Or. Nov. 27, 2018) ("The declaratory relief [plaintiff] seeks here—a declaration that the State Defendants violated the Fourteenth Amendment—is retrospective, not prospective.  As such, the *Ex parte Young* exception to Eleventh Amendment immunity does not apply."); *Look v. Harris*, 3:16-cv-05465-CRB, 2017 WL 345992, at *4 (N.D. Cal. Jan. 24, 2017) (dismissing claim for declaratory relief because the allegations related to the defendants' past actions).

## II.     Plaintiffs Lack Article III Standing and Any Pre-Enforcement Challenge to Criminal Provisions of Chapter 134 Is Not Ripe.

Plaintiffs fail to allege facts sufficient to establish the existence of Article III standing with respect to their claims against the Attorney General.  It is incumbent upon "a plaintiff to demonstrate the irreducible constitutional minimum of standing." *Viernes v. DNF Assocs.*, LLC, 582 F. Supp. 3d 738, 748 (D. Haw. 2022) (quotation omitted).  Moreover, "[a] plaintiff exclusively seeking declaratory and injunctive relief is required to additionally 'show a very significant possibility of future harm.'" *Borja*, 2021 WL 4005990, at *3 (quoting *San Diego Gun Rights*, 98 F.3d at 1126).  "At the pleading stage of a case, the plaintiff must clearly allege facts demonstrating each element" required for standing, and "must demonstrate standing separately for each form of relief sought[.]" *Id*. at *3 (quotation omitted).  Here, Plaintiffs apparently sue the Attorney General under two separate legal theories.  First, Plaintiffs suggest that the Attorney General "is responsible for enforcing the laws of Hawaii, including HRS § 134-9(a)"—the firearms licensing provision.  Complaint at ¶ 11.  Second, Plaintiffs suggest that "in her capacity as Attorney General, [the Attorney General] could criminally prosecute plaintiffs for carrying a handgun beyond the home without a carry license."  Complaint at ¶ 11 (citing HRS §§ 134-9(c), 134-25(b), and 134-26).  As explained below, these theories both fail.

13

A. Regarding Plaintiffs' claims against the Attorney General based on HRS § 134-9(a), Plaintiffs lack Article III standing because they have not alleged—and cannot establish—the causation/traceability and redressability elements.

To the extent that Plaintiffs' lawsuit is premised on the Attorney General having any role in firearms licensing, Plaintiffs' challenge fails for lack of Article III standing. With respect to the Attorney General, neither the causation/traceability element of standing nor the redressability element is satisfied.

"A plaintiff seeking relief in federal court must establish the three elements that constitute the 'irreducible constitutional minimum' of Article III standing." *Hornish v. King Cnty.*, 899 F.3d 680, 691-92 (9th Cir. 2018) (quotation and alterations omitted). "[T]he plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* (quotation omitted). "A plaintiff must demonstrate standing for each claim he or she seeks to press and for each form of relief sought," *Wash. Envtl. Council v. Bellon*, 732 F.3d 1131, 1139 (9th Cir. 2013), and "the standing inquiry must be evaluated separately as to each defendant," *Disability Rts. S.C. v. McMaster*, 24 F.4th 893, 900 (4th Cir. 2022).

"To establish traceability, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the

challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Mecinas v. Hobbs*, 30 F.4th 890, 899 (9th Cir. 2022). To satisfy redressability, "[p]laintiffs need not demonstrate that there is a guarantee that their injuries will be redressed by a favorable decision," but "they do need to show that there would be a change in a legal status as a consequence of a favorable decision and that a practical consequence of that change would amount to a significant increase in the likelihood that the plaintiff would obtain relief that directly redresses the injury suffered." *Novak v. United States*, 795 F.3d 1012, 1019-20 (9th Cir. 2015) (quotations omitted). By contrast, a claim "lacks redressability if the plaintiff will nonetheless suffer the claimed injury if a court rules in its favor." *Ctr. for Biological Diversity v. Exp.-Imp. Bank of the United States*, 894 F.3d 1005, 1013 (9th Cir. 2018).

Here, Plaintiffs' alleged injury is not traceable to the actions of the Attorney General. The Attorney General does not administer or manage the firearms licensing system, nor does the Attorney General process, grant, or deny licenses to carry firearms. That is the role of "the chief of police of the appropriate county[.]" HRS § 134-9(a). Nor is Plaintiffs' alleged injury capable of being redressed by a favorable decision against the Attorney General. Even if Plaintiffs were successful in winning some sort of injunctive relief against the Attorney General regarding HRS § 134-9(a), that still could not translate into the Plaintiffs obtaining a license to carry. The Attorney General simply has no statutory authority to grant such a

license.  Just as there is an insufficient enforcement nexus to the Attorney General

for purposes of the *Ex parte Young* exception, Plaintiffs also lack Article III standing

with respect to their claims against the Attorney General.

    B.  Regarding Plaintiffs' claims against the Attorney General based on HRS
        §§ 134-9(c), 134-25, 134-26, or other criminal statutes, Plaintiffs lack
        standing and any challenge to criminal statutes is unripe.

Insofar as Plaintiffs seek to sue the Attorney General based on the existence of

certain criminal statutes—in particular, HRS §§ 134-9(c), 134-25, and 134-26

(Complaint at ¶ 11)[5]—or based on some other alleged generalized criminal

enforcement role on the part of the Attorney General (Complaint at ¶ 11), Plaintiffs

are "not currently subject to an enforcement action" under those criminal statutes

"and therefore raise[] a pre-enforcement challenge[.]"  *Wolfson v. Brammer*, 616

F.3d 1045, 1058 (9th Cir. 2010).  For a pre-enforcement challenge "to be ripe, the

plaintiff must be subject to a *genuine* threat of *imminent* prosecution."  *Id*. (quotation

omitted; emphasis added).[6]  "Ripeness is an Article III doctrine designed to ensure

that courts adjudicate live cases or controversies and do not issue advisory opinions

or declare rights in hypothetical cases."  *Bishop Paiute Tribe v. Inyo Cnty.*, 863 F.3d

---

[5] HRS § 134-9(c) provides that "[n]o person shall carry concealed or unconcealed on
the person a pistol or revolver without being licensed to do so under this section or
in compliance with sections 134-5(c) or 134-25."  Sections 134-25 and 134-26 are
criminal statutes addressing the public carry of firearms, but these statutes do not
apply to persons holding licenses issued pursuant to section 134-9.

[6] *See Beram v. City of Sedona*, No. 3:21-cv-08063-DJH, 2022 WL 596796, at *3 n.3
(D. Ariz. Feb. 28, 2022) (in the context of a pre-enforcement challenge, "the injury
in fact and ripeness query are virtually the same").

1144, 1153 (9th Cir. 2017) (quotation omitted; cleaned up).  Under Ninth Circuit law, "[f]or purposes of a preenforcement challenge . . . the constitutional ripeness inquiry focuses on (1) whether the plaintiffs have articulated a concrete plan to violate the law in question, (2) whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and (3) the history of past prosecution or enforcement under the challenged statute." *Alaska Right to Life Pol. Action Comm. v. Feldman*, 504 F.3d 840, 849 (9th Cir. 2007) (quotation omitted). "A plaintiff must establish all three elements in its favor in order to survive a motion to dismiss on ripeness grounds." *Spill Prevention*, 113 F. Supp. 3d at 1058.

"Neither the mere existence of a proscriptive statute nor a generalized threat of prosecution satisfies the case or controversy requirement," *Wolfson*, 616 F.3d at 1058, and "the Ninth Circuit has routinely rejected arguments claiming that the mere existence of a statute creates an injury." *Zentmyer v. United States*, No. 3:20-cv-02240-JAH-NLS, 2022 WL 959806, at *3 (S.D. Cal. Mar. 30, 2022) (citing cases). Similarly, "[t]o the extent that Plaintiff[s] [are] arguing that the existence of the statute creates a 'chilling effect' on [the] exercise of Second Amendment rights, in turn creating a constitutionally sufficient injury, that argument has been rejected by various courts." *Id*. at *3.  Just as the plaintiff's claims in *Zentmyer* were properly subject to dismissal, so too should Plaintiffs' claims against the Attorney General here be dismissed.

17

      i.  Plaintiffs have not established the existence of a "concrete plan" to violate any provision of HRS chapter 134.

Plaintiffs have not alleged or established the existence of any concrete plan to violate provisions of Hawaiʻi law. "A general intent to violate a statute at some unknown date in the future does not rise to the level of an articulated, concrete plan." *Thomas*, 220 F.3d at 1139. Additionally, the Ninth Circuit has held that an assertion that plaintiffs "wish and intend to engage in activities prohibited by" a gun control law is too vague to support a finding of an injury-in-fact. *San Diego Gun Rights*, 98 F.3d at 1127; *see also Antonyuk v. Bruen*, 1:22-cv-0734-GTS-CFH, 2022 WL 3999791, at *17 (N.D.N.Y. Aug. 31, 2022) (plaintiff "must indicate his intent to violate the law"). The Complaint does not include any allegations of a concrete plan or of an intent to violate any provisions of HRS chapter 134.

     ii.  Plaintiffs have not alleged any warning or threat to initiate criminal proceedings against Plaintiffs by the Attorney General.

Plaintiffs have not alleged or established that they were the subject of any warnings or threats from the Attorney General to initiate criminal proceedings under HRS chapter 134. "Pre-enforcement review is permitted under circumstances that render the threatened enforcement sufficiently imminent," *Spill Prevention*, 113 F. Supp. 3d 1059, but "[g]eneralized threats of prosecution do not confer constitutional ripeness." *Unified Data Servs., LLC v. Fed. Trade Comm'n*, 39 F.4th 1200, 1210 (9th Cir. 2022) (quotations omitted). Notably, the Ninth Circuit has rejected a pre-enforcement challenge where, *inter alia*, "Plaintiffs ha[d] not pleaded any facts

showing past . . . enforcement against them or any future warning of prosecution."
*Id*. at 1211;[7] *San Diego Gun Rights*, 98 F.3d at 1127 (contrasting "specific warning
of an intent to prosecute" with "general threat of prosecution").

There are no factual allegations in the Complaint that establish that criminal
prosecution of Plaintiffs by the Attorney General is imminent, or that a threat of
prosecution was even made. *Cf. Steffel v. Thompson*, 415 U.S. 452, 459-60 (1974)
(finding a credible threat of enforcement when the plaintiff had been warned to stop
handbilling, threatened with prosecution if he disobeyed, stated his desire to
continue handbilling, and had a companion who was prosecuted for the same
offense), *as described in Spill Prevention*, 113 F. Supp. 3d at 1059-60. If Plaintiffs
wish to sue the Attorney General based on an alleged fear of criminal prosecution,
Plaintiffs "are required to show a 'genuine threat of imminent prosecution'"—but
the Complaint "fails to make any relevant allegations regarding threats of
enforcement." *Zentmyer*, 2022 WL 959806, at *4 (citations omitted). The "mere
'possibility of criminal sanctions applying does not of itself create a case or
controversy." *Id.* (quoting *Boating Industry Ass'ns v. Marshall*, 601 F.2d 1376,
1385 (9th Cir. 1979)). Here, Plaintiffs' Complaint advances the conclusory assertion

---

[7] *See id*. at 1211 ("Plaintiffs have not pleaded any facts showing past FTC
enforcement against them or any future warning of prosecution. Their complaint
merely says that they face 'serious civil penalties' from violation of the challenged
policies, without any indication that such penalties are imminent or realistic. This
conclusory assertion fails to show a reasonable likelihood that the government will
enforce the challenged law against them." (footnote and quotations omitted)).

that "in her capacity as Attorney General, [the Attorney General] could criminally prosecute plaintiffs for carrying a handgun beyond the home without a carry license."  Complaint at ¶ 11.  That is not sufficient.

      iii.  Plaintiffs have not included any allegations regarding past prosecution or enforcement of any criminal provisions of chapter 134 by the Attorney General.

Plaintiffs also fail to include any allegations regarding any history of past prosecution or enforcement by the Attorney General regarding chapter 134.[8]  Absent such allegations, an action against the Attorney General based on an alleged criminal enforcement role is not ripe.  Here, Plaintiffs have failed "to explain or discuss the past prosecution or enforcement of" the statute—despite the fact that "it is [their] burden to do so[] to the extent [they] seek[] to establish standing[.]"  *Zentmyer*, 2022 WL 959806, at *5.

Accordingly, Plaintiffs' Complaint fails to satisfy any of the elements that courts consider when deciding whether a plaintiff has standing to assert a pre-enforcement challenge—no concrete plans, no specific warning or enforcement threats directed at Plaintiffs by the Attorney General, and no allegations establishing a history or pattern of prosecution or enforcement under the statute.  Thus, dismissal is warranted on ripeness grounds.  *See Zentmyer*, 2022 WL 959806, at *5 ("Because

---

[8] As the Hawaiʻi Supreme Court has explained, "[t]he public prosecutor," not the Attorney General, "has been delegated the primary authority and responsibility for initiating and conducting criminal prosecutions within his county jurisdiction." *Amemiya v. Sapienza*, 63 Haw. 424, 427, 629 P.2d 1126, 1129 (1981).

Plaintiff's operative complaint does not articulate (1) a concrete plan to violate the statute, (2) a threat of enforcement, or (3) an explanation of the past prosecution or enforcement of [the statute], the Court finds that the threat of prosecution does not provide Plaintiff with standing.").

## III.   Any Claims Against the Attorney General Are Also Moot.

As explained above, Plaintiffs' claims against the Attorney General cannot succeed because, among other things, the Attorney General has no role in granting or denying licenses to carry firearms—the focus of Plaintiffs' lawsuit.  Nor do Plaintiffs have standing to sue based on the mere existence of criminal statutes.  But even if it were true that the Attorney General was a proper defendant in this case, any claims against the Attorney General would in any event be moot.  In *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), the Supreme Court held that New York's "'may-issue' licensing regime for carrying handguns for self-defense violates the Second Amendment."  *Id*. at 2161 (Kavanaugh, J., concurring).  As Justice Kavanaugh stated in his concurring opinion, New York's "may-issue regime [was] constitutionally problematic because it grant[ed] open-ended discretion to licensing officials and authorizes licenses only for those applicants who can show some special need apart from self-defense."  *Id.*  "[S]hall-issue licensing regimes," by contrast, "are constitutionally permissible[.]"  *Id.*  Shall-issue regimes "do not require applicants to show an atypical need for armed self-defense[.]"  *Id*. at 2138.  Government entities that administered "may-issue"

licensing regimes "may continue to require licenses for carrying handguns for self-defense so long as those States employ objective licensing requirements like those used by the 43 shall-issue States." *Id*. at 2162.

On July 7, 2022, the Attorney General issued a formal opinion regarding the interpretation of HRS § 134-9 following *Bruen*. *See* State of Haw., Dep't of the Att'y Gen., Opinion No. 22-02, *Public Carry Licensing Under Hawaiʻi Law Following* New York State Rifle & Pistol Association v. Bruen (July 7, 2022), https://ag.hawaii.gov/wp-content/uploads/2022/07/Attorney-General-Opinion-22-02.pdf (attached as McLean Decl. Ex. 1).  In particular, the Attorney General opined that "[f]ollowing *Bruen*, the language in Hawaiʻi Revised Statutes ('HRS') § 134-9 requiring that an applicant '[i]n an exceptional case . . . show[] reason to fear injury to the applicant's person or property' in order to obtain a concealed carry license *should no longer be enforced*." *Id*. at 2 (emphasis added);[9] *see also* McLean Decl. ¶ 4 ("[I]t is the position and policy of the Attorney General that the language of HRS § 134-9(a) providing that an applicant '[i]n an exceptional case . . . show[] reason to fear injury to the applicant's person or property' to obtain a concealed carry license is no longer applicable and is no longer being applied on a going-forward basis with respect to applications for concealed carry licenses.").

---

[9] "It is proper to take judicial notice of the opinions of State Attorneys General." *Sperling v. Stein Mart, Inc.*, No. 5:15-cv-01411-AB-KK, 2016 WL 8925347, at *3 (C.D. Cal. Jan. 26, 2016).  Judicial notice of Ex. 1 is requested per FRE 201.

Accordingly, even if the Attorney General *were* a proper defendant, there would no longer be a live dispute between Plaintiffs and the Attorney General regarding the applicability or enforceability of the "exceptional case" or "reason to fear" provisions with respect to concealed carry licenses.

"Mootness is jurisdictional." *Gilroy v. Hawaii*, No. 1:20-cv-00037-JMS-RT, 2020 WL 622778, at *2 (D. Haw. Feb. 10, 2020) (citing *Koppers Indus. v. U.S.E.P.A.*, 902 F.2d 756, 758 (9th Cir. 1990)). "The fundamental issue in deciding mootness is whether there is a current controversy to which effective relief can be granted." *Id*. "If an event occurs that prevents the court from granting effective relief, the claim is moot and must be dismissed." *Am. Rivers v. Nat'l Marine Fisheries Serv.*, 126 F.3d 1118, 1123 (9th Cir. 1997). "[T]hroughout the litigation, the Plaintiff must have suffered, or be threatened with, an actual injury *traceable to the defendant* and likely to be redressed by a favorable judicial decision." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (emphasis added).

Where, as here, "[t]he specific question that gave rise to the suit" is no longer in controversy, "a concrete case or controversy" no longer exists; thus, any "claims for declaratory and injunctive relief" against the Attorney General should be recognized as moot and dismissed. *Am. Cargo Transp., Inc. v. United States*, 625 F.3d 1176, 1180 (9th Cir. 2010).[10] Following *Bruen* and the Attorney General's July

---

[10] *See id.* ("The government's change of policy presents a special circumstance in the world of mootness."). *See also id.*:

7 opinion, there is no live dispute between Plaintiffs and the Attorney General on whether the "exceptional case" language in HRS § 134-9 (a) is to be applied consistent with *Bruen*.  Because there is no longer adversity between Plaintiffs and the Attorney General regarding the applicability of this provision, "any declaratory judgment would be an advisory opinion." *Hartnett v. Pennsylvania State Educ. Ass'n*, 963 F.3d 301 (3d Cir. 2020).  "[F]ederal courts do not issue advisory opinions." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021).

## **CONCLUSION**

The Court should dismiss Plaintiffs' Complaint against the Attorney General.

---

[U]nlike in the case of a private party, we presume the government is acting in good faith. Our prior cases are consistent with this principle, *see, e.g.*, *White v. Lee*, 227 F.3d 1214, 1243 (9th Cir. 2000) (holding that permanent change in HUD's policy with respect to Fair Housing Act investigations was sufficient to render plaintiff's claim moot); *Lyons v. City of Los Angeles*, 615 F.2d 1243, 1245-46 & n. 4 (9th Cir. 1980) (finding "[t]he city attorney has now announced an official policy" and that "given the change in policy, there is not a strong possibility of a recurrence of the behavior of which the appellant complains"), and our sister circuits abide by this presumption.

DATED:  Honolulu, Hawaiʻi, November 1, 2022.

HOLLY T. SHIKADA
Attorney General, State of Hawaiʻi

*/s/ Nicholas M. McLean*
KIMBERLY T. GUIDRY
ROBERT T. NAKATSUJI
KALIKOʻONĀLANI D. FERNANDES
NICHOLAS M. MCLEAN
KENDALL J. MOSER
Deputy Attorneys General

Attorneys for Defendant HOLLY T. SHIKADA,
in her official capacity as the
Attorney General of the State of Hawaiʻi

25